1    DECHERT LLP

2    FREDERICK G. HEROLD (CSBN 229239)
     (frederick.herold@dechert.com)
3    RICHARD J. CUTLER (CSBN 146180)
     (richard.cutler@dechert.com)
4    2440 W. El Camino Real, Suite 700
     Mountain View, CA 94040-1499
5    Telephone: (650) 813-4800
     Facsimile: (650) 813-4848
6
     ANDREW J. LEVANDER (*pro hac*
7    *pending*)
     (andrew.levander@dechert.com)
8    MICHAEL Z. GOLDMAN (*pro hac*
     *pending*)
9    (michael.goldman@dechert.com)
     30 Rockefeller Plaza
10   New York, NY 10112
     Telephone: (212) 698-3500
11   Facsimile:  (212) 698-3599

12   *Attorneys for Defendant Jerry Murdock, Jr.*

13                    UNITED STATES DISTRICT COURT

14                   CENTRAL DISTRICT OF CALIFORNIA

15                          SOUTHERN DIVISION

16

17   MIDDLESEX RETIREMENT              Case No.  CV06-6863 DOC (RNB)
     SYSTEM, Individually and on
18   Behalf of All Others Similarly
     Situated,
19                                     **MEMORANDUM OF POINTS AND**
                    Plaintiff,         **AUTHORITIES IN SUPPORT OF**
20                                     **DEFENDANT JERRY MURDOCK,**
     v.                                **JR.'S MOTION TO DISMISS THE**
21                                     **SECOND AMENDED COMPLAINT**
     QUEST SOFTWARE, INC.,             **FOR FAILURE TO STATE A**
     VINCENT C. SMITH, M.              **CLAIM**
22   BRINKLEY MORSE, MICHAEL J.
     LAMBERT, DOUGLAS F. GARN,         CTRM:    9D
23   DAVID M. DOYLE, JERRY             JUDGE:   Hon. David O. Carter
     MURDOCK, JR., and KEVIN
24   BROOKS,
                                       DATE: May 12, 2008
25                  Defendants.        TIME: 8:30 A.M.

26

27

28

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................ii

PRELIMINARY STATEMENT ............................................................................ 1

FACTUAL BACKGROUND .................................................................................. 2

ARGUMENT ........................................................................................................... 3

I.     PLAINTIFF FAILS TO STATE A CLAIM AGAINST MR.
MURDOCK FOR VIOLATION OF SECTION 10(b) OF THE
SECURITIES AND EXCHANGE ACT OF 1934 ....................................... 4

     A.     Plaintiff Has Failed To Allege Facts Linking The Alleged
Misstatements In Quest's Public Filings To Mr. Murdock. ............... 6

     B.     Plaintiff Has Failed To Allege Facts Constituting "Strong
Circumstantial Evidence of Conscious Misbehavior" By Mr.
Murdock. ............................................................................................. 8

          1.     Plaintiff Fails To Allege Facts Demonstrating That Mr.
Murdock Had Motive To Commit The Securities Fraud
Pleaded In The Complaint. ...................................................... 10

          2.     Plaintiff's Allegations Of Wrongdoing Flowing From Mr.
Murdock's Membership On Quest Committees Are
Wholly Conclusory. ................................................................. 11

          3.     Mr. Murdock's Signature On Certain Quest Public Filings
Does Not Lead To A Strong Inference of Scienter. ................. 13

          4.     The Totality Of The SAC's Allegations Against Mr.
Murdock Fail To State With Particularity Facts Giving
Rise To A Strong Inference of Scienter. .................................. 14

II.     PLAINTIFF FAILS TO STATE A CLAIM AGAINST MR.
MURDOCK FOR VIOLATING SECTION 20(a) OF THE
SECURITIES AND EXCHANGE ACT OF 1934 ..................................... 15

III.    PLAINTIFF FAILS TO STATE A CLAIM AGAINST MR.
MURDOCK FOR VIOLATION OF SECTION 20A OF THE
SECURITIES AND EXCHANGE ACT OF 1934 ..................................... 17

CONCLUSION .................................................................................................... 19

# TABLE OF AUTHORITIES

*In re Atmel Corp. Derivative Litig.,*
    No. C 06-4592, 2007 WL 2070299 (N.D. Cal. July 16, 2007) .................... 15

*In re Autodesk, Inc. Sec. Litig.,*
    132 F. Supp. 2d 833 (N.D. Cal. 2000) .................................................. 12, 13

*Balistreri v. Pacifica Police Dept.,*
    901 F.2d 696 (9th Cir. 1988) ....................................................................... 3

*Brody v. Transitional Hospitals Corp.,*
    280 F.3d 997 (9th Cir. 2002) ..................................................................... 18

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,*
    511 U.S. 164 (1994) ..................................................................................... 6

*Communications Workers of Am. Plan for Employees' Pensions
& Death Benefits v. CSK Auto Corp.,*
    No. CV06-1503, 2007 WL 951968 (D. Ariz. Mar. 28, 2007)....................... 6

*Dura Pharms., Inc. v. Broudo,*
    544 U.S. 336 (2005) ..................................................................................... 4

*Eminence Capital, LLC v. Aspeon, Inc.,*
    316 F.3d 1048 (9th Cir. 2003) ................................................................. 5, 8

*Gompper v. VISX, Inc.,*
    298 F.3d 893 (9th Cir. 2002) ....................................................................... 9

*In re Gupta Corp. Sec. Litig.,*
    900 F. Supp. 1217 (N.D. Cal. 1994) .................................................. 6, 7, 17

*In re Hansen Natural Corp. Sec. Litig.*
    --- F. Supp. 2d ---, 2007 WL 3244646 (C.D. Cal. Oct. 16, 2007) .... 6, 7, 8, 14

*Howard v. Everex Sys., Inc.,*
    228 F.3d 1057 (9th Cir. 2000) ............................................................... 7, 15

*Howard v. Hui,*
    No. C 92-3742, 2001 WL 1159780 (N.D. Cal. Sept. 24, 2001) ................... 16

*Neubronner v. Milken,*
    6 F.3d 666 (9th Cir. 1993) ......................................................................... 18

*In re Nextcard, Inc. Sec. Litig.,*
    No. C 01-21029, 2006 WL 708663 (N.D. Cal. Mar. 20, 2006)............. 16, 17

*In re Oak Tech. Sec. Litig.,*
    No. 96-20552, 1997 WL 448168 (N.D. Cal. Aug 1, 1997) ................... 16, 17

*In re Peerless Sys., Corp. Sec. Litig.,*
    182 F. Supp. 2d 982 (S.D. Cal. 2002) ....................................................... 13

**TABLE OF AUTHORITIES**
(Continued)

*Ronconi v. Larkin,*
   253 F.3d 423 (9th Cir. 2001) ........................................................................ 11

*In re Ross Sys. Sec. Litig.,*
   No. C-94-0017, 1994 WL 583114 (N.D. Cal. July 21, 1994) ................ 6, 7, 8

*Sanders v. Brown,*
   504 F.3d 903 (9th Cir. 2007) ........................................................................ 3

*In re Silicon Graphics, Inc. Sec. Litig.,*
   183 F.3d 970 (9th Cir. 1999) ....................................................... 5, 9, 10, 15

*In re Splash Tech. Holdings, Inc. Sec. Litig.,*
   No. C 99-00109, 2000 WL 1727405 (N.D. Cal. Sept. 29, 2000) ............... 16

*Stack v. Lobo,*
   903 F. Supp. 1361 (N.D. Cal. 1995) .......................................................... 6, 7

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.,*
   --- U.S. ---, 128 S. Ct. 761 (Jan. 15, 2008) ............................................... 6, 8

*Syntex Corp. Sec. Litig.,*
   855 F. Supp. 1086 (N.D. Cal. 1994) ........................................................ 8, 17

*Tellabs, Inc. v. Makor Issuers & Rights, Ltd.,*
   --- U.S. ---, 127 S. Ct. 2499 (June 21, 2007) .................................. 3, 5, 9, 15

*In re Vantive Corp. Sec. Litig.,*
   283 F.3d 1079 (9th Cir. 2002) .................................................................. 11, 13

*In re VeriFone Sec. Litig.,*
   784 F. Supp. 1471 (N.D. Cal. 1992) ........................................................... 19

*In re Verisign, Inc., Derivative Litig.,*
   No. C 06-4165, 2007 WL 2705221 (N.D. Cal. Sept. 14, 2007) ........... 14, 15

*Weiss v. Amkor Tech., Inc.,*
   527 F. Supp. 2d 938 (D. Ariz. 2007) ...................................... 10, 11, 12, 13

*Wilson v. Comtech Telecommunications Corp.,*
   648 F.2d 88 (2d Cir. 1981) ...................................................................... 18, 19

*Wojtunik v. Kealy,*
   394 F. Supp. 2d 1149 (D. Ariz. 2005) .................................................. 6, 7, 13

**STATUTES**

15 U.S.C. § 78j(b) .............................................................................................. 4

15 U.S.C. § 78u-4(b) .............................................................................. 3, 5, 14

17 C.F.R. § 240.10b-5 ..................................................................................... 4, 5

DECHERT LLP
ATTORNEYS AT LAW

- iii -

Def. Mem. of P. & A. ISO OF MTD SAC
CV06-6863 DOC (RNB)
13114048.3

1    Jerry Murdock, Jr. ("Mr. Murdock") respectfully submits this Memorandum
2    of Points and Authorities in support of his Motion to Dismiss the Second Amended
3    Complaint ("SAC") for failure to state a claim pursuant to Federal Rule of Civil
4    Procedure 12(b)(6).

5                          **PRELIMINARY STATEMENT**

6        In response to this Court's Order Granting in Part and Denying in Part
7    Defendants' Motion to Dismiss First Amended Complaint (the "October 2007
8    Order"), Plaintiff Middlesex County Retirement System ("Plaintiff") filed a 248-
9    paragraph Second Amended Complaint alleging securities fraud against Quest
10   Software, Inc. ("Quest"), and a number of current and former individual directors
11   and officers of Quest, including Mr. Murdock.  Like the First Amended Complaint,
12   the crux of the SAC is that Quest and the individual defendants engaged in a
13   scheme to grant themselves backdated options of Quest stock which were later sold
14   at artificially inflated prices due to misstatements concerning Quest's compensation
15   practices in the Company's public filings.

16       Mr. Murdock, an independent outside director, joins in the arguments
17   presented in Defendants' Memorandum of Points and Authorities in Support of
18   Their Motion to Dismiss Plaintiff's Second Amended Complaint, submitted to the
19   Court on February 26, 2008.  Mr. Murdock writes separately, however, to highlight
20   to the Court additional facts related to his history at Quest.[1]  Those facts include:
21   (1) that Mr. Murdock *is not alleged to have received a single backdated stock*
22   *option from Quest* (SAC ¶¶ 53, 205); (2) that Mr. Murdock is an *Outside* Director,
23   non-employee of Quest (SAC ¶ 49); and (3) that Mr. Murdock's sales of Quest
24   stock largely occurred *more than two and a half years prior* to Lead Plaintiff's first
25   alleged trading in Quest stock.  (SAC ¶¶ 205, 246).  These undisputed facts belie

26
27   [1]   Dechert LLP entered an appearance in this action on behalf of Mr. Murdock on
          February 21, 2008.
28

Plaintiff's conclusory claim that Mr. Murdock possessed the requisite scienter to commit securities fraud, possessed sufficient power and responsibility at Quest to be liable as a "control person" and contemporaneously traded Quest stock with Plaintiff.  Simply put, the SAC does not allege, as is required by the law, strong circumstantial evidence that Mr. Murdock knew or was reckless in not knowing about any alleged fraud in connection with Quest's options granting process, or any purported falsity or misstatement located in Quest's public filings.  Because of these critical infirmities, Plaintiff's claims against Mr. Murdock have failed and the SAC should be dismissed as to Mr. Murdock with prejudice.

## FACTUAL BACKGROUND

Mr. Murdock has been an Outside Director, non-employee of Quest since April 1999, a member of Quest's Audit Committee from 1999 through the present and a member of Quest's Compensation Committee from 1999 through February 2005. (SAC ¶¶ 17, 18, 49).  From 2002 through 2005, Mr. Murdock signed a series of Quest Form 10-Ks filed with the SEC, in addition to a number of reports contained in proxy statements filed with the SEC.  (SAC ¶¶ 50-52).

The SAC conclusorily alleges that Mr. Murdock "approved or accepted" backdated stock option grants in connection with his membership on Quest's Compensation Committee, which was charged with "supervising the administration of the Company's 1999 Stock Incentive Plan." (SAC ¶¶ 17, 107).  Plaintiff has not and cannot allege, however, that Mr. Murdock received a single backdated option, had any knowledge of irregularities regarding Quest's compensation practices or profited in any way from the alleged scheme.  Likewise, the SAC also vaguely asserts that Mr. Murdock "approved or accepted . . . false and misleading financial statements" in connection with his membership on Quest's Compensation Committee, which was charged with "review[ing] and discuss[ing] with management and the independent auditor Quest's financial disclosure documents." (SAC ¶ 18,108).  But, once again, the SAC is void of specific allegations

concerning Mr. Murdock's knowledge of alleged misstatements located in Quest's public filings.

Mr. Murdock, an outside investor, sold 200,000 shares of Quest stock in April 2003 and an additional 2,274 shares of Quest stock in March 2005, for proceeds of approximately $2,189,454.29. (SAC ¶¶ 53, 205). These sales preceded the sales of Plaintiff by many months and, in large part, many years.

### ARGUMENT

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court must accept all factual allegations pled in a complaint as true. *Tellabs, Inc. v. Makor Issuers & Rights, Ltd.*, --- U.S. ---, 127 S. Ct. 2499, 2509 (June 21, 2007). A court may grant a motion to dismiss, however, based on a complaint's "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). In addition, a court considering a motion to dismiss should not credit a plaintiff's allegations that are conclusory. *See Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007) ("Conclusory allegations and unreasonable inferences, however, are insufficient to defeat a motion to dismiss.").

Furthermore, as the Supreme Court has recently instructed, a complaint arising under the federal securities laws is subject to the "exacting pleading requisites" of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. No. 104-67, 109 Stat. 737 (1995). *Tellabs*, 127 S. Ct. at 2504. Among other things, the PSLRA "requires plaintiffs to state with particularity both the facts constituting the alleged violation and the facts evidencing scienter . . . ." *Id.* In particular, "plaintiffs must 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Id.* (quoting 15 U.S.C. § 78u-4(b)(2)). That stringent standard, the Supreme Court explained in *Tellabs*, dictates dismissal of a complaint alleging a violation of Section 10(b) and Rule 10b-5 unless the inference of scienter is "cogent and at least as compelling as

1   any opposing inference of nonfraudulent intent." *Id.* at 2505.

2          Application of these standards to the SAC compels the conclusion that each

3   of the three claims against Mr. Murdock fails to state a claim.  First, the SAC's

4   10b-5 claim is not supported by facts establishing that Mr. Murdock made a false

5   statement of material fact and also fails to plead that Mr. Murdock acted with the

6   requisite level of scienter.  *See* Point I, *infra*.  Second, the SAC fails to allege

7   "control person liability" pursuant to Section 20(a) of the Exchange Act because the

8   SAC does not allege facts demonstrating Mr. Murdock's "actual power or control"

9   over Quest.  *See* Point II, *infra*.  Finally, the SAC fails to demonstrate that Mr.

10  Murdock committed "insider trading" subject to Section 20A of the Exchange Act

11  because none of the alleged sales of Quest stock made by Mr. Murdock were even

12  remotely "contemporaneous" with Plaintiff's trading.  *See* Point III, *infra*.

13  **I.   PLAINTIFF FAILS TO STATE A CLAIM AGAINST MR. MURDOCK**
14  **     FOR VIOLATION OF SECTION 10(b) OF THE SECURITIES AND**
**     EXCHANGE ACT OF 1934**

15         Plaintiff's allegations in the SAC that Mr. Murdock violated Section 10(b) of

16  the Securities and Exchange Act of 1934 and 17 C.F.R. § 240.10b-5 ("Rule 10b-5")

17  fail to state a claim.  To state a cause of action under Section 10(b) and Rule 10b-5,

18  a plaintiff must allege: (1) a misstatement or omission; (2) of material fact; (3)

19  made with scienter; (4) on which the plaintiff relied; (5) which proximately caused

20  the plaintiff's injury.  *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341, 125 S.

21  Ct. 1627, 1630-31 (2005).[2]  A securities fraud complaint is, of course, subject to the

22  _____
[2] Section 10(b) makes it unlawful:

23              [t]o use or employ, in connection with the purchase or
24              sale of any security registered on a national securities
              exchange or any security not so registered . . . any
              manipulative or deceptive device or contrivance in
25              contravention of such rules and regulations as the
              Commission may prescribe as necessary or appropriate in
26              the public interest or for the protection of investors.

27  15 U.S.C. § 78j(b).  Rule 10b-5 makes it unlawful for any person to use interstate
commerce:

28              (a) To employ and device, scheme, or artifice to defraud,

PSLRA.  As indicated above, the PSLRA requires plaintiffs to allege with particularity the "untrue statements of material fact" attributable to a specific defendant.  *See* 15 U.S.C. § 78u-4(b)(1).  In addition, the PSLRA demands that scienter be pled with heightened specificity, requiring that a complaint demonstrate "*in great detail*, facts that constitute *strong circumstantial evidence* of deliberately reckless or conscious misconduct."  *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999) (emphasis added); *see, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, *supra*.  The PSLRA's tough guidelines "require[] a plaintiff to plead a complaint of securities fraud with an unprecedented degree of specificity and detail."  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  As the Ninth Circuit has made clear, the PSLRA standard of review "is not an easy standard to comply with – it is not intended to be," but that "plaintiffs must be held to it."  *See id.*

Here, Plaintiff has not satisfied its difficult burden of establishing how Mr. Murdock has violated Section 10(b) and Rule 10b-5.  *First*, the SAC fails to demonstrate a single "untrue statement[]" attributable to Mr. Murdock.  *See* 17 C.F.R. § 240.10b-5.  Indeed, the only allegation in the SAC connecting Mr. Murdock with an alleged false or misleading statement is Mr. Murdock's signature on a series of publicly-filed Quest corporate documents.  Under well settled precedent, that ordinary circumstance is not enough to "link" Mr. Murdock to the alleged false statements contained in such filings.  *See* Point I.A, *infra*.  *Second*, the SAC fails to allege facts constituting "strong circumstantial evidence" of Mr.

---

> (b) To make any untrue statements of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

1  Murdock's "conscious misbehavior or recklessness." To the contrary, the

2  conclusory nature of the SAC's allegations against Mr. Murdock, in conjunction

3  with the facts that Mr. Murdock *did not receive backdated stock options* and is an

4  *outside* director at Quest (and the only outside director named in the SAC), fail to

5  raise a compelling inference of scienter. *See* Point I.B, *infra*.

6  **A.  Plaintiff Has Failed To Allege Facts Linking The Alleged Misstatements In Quest's Public Filings To Mr. Murdock.**

7

8  To be liable as a primary violator of Section 10(b) and Rule 10b-5, "[a]

9  defendant must actually make a false or misleading statement." *In re Hansen*

10  *Natural Corp. Sec. Litig.* --- F. Supp. 2d ---, 2007 WL 3244646, at *8 n.3 (C.D.

11  Cal. Oct. 16, 2007); *see also Stoneridge Inv. Partners, LLC v. Scientific-Atlanta,*

12  *Inc.*, --- U.S. ---, 128 S. Ct. 761, 768-69 (Jan. 15, 2008); *Central Bank of Denver,*

13  *N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177 (1994).  When a

14  complaint alleges false or misleading statements appearing in publicly-filed

15  corporate documents, the mere signature of an *outside director* on a document is

16  insufficient to "link" that outside director to the alleged misstatement. *See Wojtunik*

17  *v. Kealy*, 394 F. Supp. 2d 1149, 1165 (D. Ariz. 2005) ("The Court, however,

18  concurs with the arguments of the outside directors that the Amended Complaint is

19  insufficient to the extent that it alleges that their mere signatures on the 1999 10-K

20  sufficiently links them to any misrepresentations and omissions contained in that

21  form."); *Stack v. Lobo*, 903 F. Supp. 1361, 1376 (N.D. Cal. 1995) ("[A]n outside

22  director does not become liable for the contents of a group published document

23  merely by signing it."); *see also In re Ross Sys. Sec. Litig.*, No. C-94-0017, 1994

24  WL 583114, at *6 (N.D. Cal. July 21, 1994) (same); *In re Gupta Corp. Sec. Litig.*,

25  900 F. Supp. 1217, 1241 (N.D. Cal. 1994) (same).

26  Instead, a complaint must allege, in non-conclusory fashion, the outside

27  director's "'substantial participation or intricate involvement in the preparation of

28  [the] fraudulent statements.'" *See Communications Workers of Am. Plan for*

1  *Employees' Pensions & Death Benefits v. CSK Auto Corp.*, No. CV06-1503, 2007

2  WL 951968, at *3 (D. Ariz. Mar. 28, 2007) (quoting *Howard v. Everex Sys., Inc.*,

3  228 F.3d 1057, 1061 n.5 (9th Cir. 2000)); *see also In re Hansen Natural Corp.*,

4  *supra*, at *8 n.3 (same).  No such allegation appears in the SAC.  Rather, Plaintiff

5  seeks to attribute the misstatements allegedly made in Quest's 2001-2005 Form 10-

6  Ks and Quest's 2002-2005 proxy statements to Mr. Murdock solely through the fact

7  that Mr. Murdock as an outside director signed the Form 10-Ks and certain reports

8  contained in Quest's proxy statements.  *See* SAC ¶¶ 125, 126, 130, 137, 139-141.

9  Such paltry allegations are insufficient as a matter of law.  *See Wojtunik*, 394 F.

10 Supp. 2d at 1165; *Stack*, 903 F. Supp. at 1376; *In re Ross Sys. Sec. Litig.*, 1994 WL

11 583114, at *6; *In re Gupta Corp. Sec. Litig.*, 900 F. Supp. at 1241.

12        Notably, this Court recently faced a similar complaint alleging that three

13 outside directors of a corporation were involved in the backdating of options based

14 on the fact that the directors signed corporate disclosure documents containing

15 alleged misstatements.  *See In re Hansen Natural Corp.*, *supra*, at *8.  Judge Walter

16 dismissed the securities fraud claims against the three outside directors, stating:

17             although Plaintiff alleges that Epstein, Taber, and
              Vidergauz signed Hansen's annual reports as well as a
18            single Form S-8, *there are no specific allegations that . . .
              Epstein, Taber or Vidergauz played any role whatsoever
19            in the preparation or dissemination* of any allegedly false
              statements. . . . Accordingly, Plaintiff has failed to set
20            forth in his Complaint the alleged misstatements with the
              requisite particularity, with respect to the Individual
21            Defendants.

22 *Id.* (emphasis added).  The decision in *Hansen Natural Corp.* is consistent with a

23 well established line of cases dismissing Rule 10b-5 claims made against outside

24 directors of a corporation whose principal connection to an alleged misstatement is

25 a signature.  *See Wojtunik*, 394 F. Supp. 2d at 1165 (dismissing Rule 10b-5 claim

26 against outside director where alleged "link" to misstatement was director's

27 signature on publicly-filed document); *Stack*, 903 F. Supp. at 1376 (same); *In re*

28 *Ross Sys. Sec. Litig.*, 1994 WL 583114, at *6 (same); *In re Gupta Corp. Sec. Litig.*,

1  900 F. Supp. at 1241-42 (same).[3]

2      Because the only evidence "linking" Mr. Murdock with the alleged

3  misstatements contained in Quest's Form 10-Ks and proxy statements is his

4  signature, the SAC has not sufficiently demonstrated that Mr. Murdock "made" a

5  false or misleading statement.  As a result, Mr. Murdock cannot be considered a

6  "primary violator" of Section 10(b) and Rule 10b-5.  *See Stoneridge Inv. Partners*,

7  128 S. Ct. at 768-69.  Consequently, the SAC's securities fraud claim against Mr.

8  Murdock should be dismissed.

9   **B.    Plaintiff Has Failed To Allege Facts Constituting "Strong**
        **Circumstantial Evidence of Conscious Misbehavior" By Mr.**
10       **Murdock.**

11      In addition, the SAC fails to plead Mr. Murdock's scienter with the

12  "unprecedented degree of specificity and detail" required by the PSLRA.  *See*

13  *Eminence Capital,* 316 F.3d at 1052.  To demonstrate Mr. Murdock's scienter, the

14  SAC must plead "in great detail, facts that constitute strong circumstantial evidence

15  _____

16  [3]    The SAC's conclusory allegation that Mr. Murdock "served on the Audit
       Committee and approved or accepted those false and misleading statements"
17     (SAC ¶ 18) fares no better.  *See Syntex Corp. Sec. Litig.*, 855 F. Supp. 1086,
       1100 (N.D. Cal. 1994) (dismissing Rule 10b-5 allegations against outside
18     director who also chaired corporate finance and trust revenue committees and
       allegedly controlled the issuance of corporate filings containing misstatements;
19     "these facts . . . . indicate nothing more than boardroom titles, not operational
       involvement.  In addition, Plaintiffs have alleged no facts to establish that
20     Carton participated in the preparation of the documents . . . containing the
       alleged misrepresentations."), *aff'd* 95 F.3d 922 (9th Cir. 1996); *In re Ross Sys.*
21     *Sec. Litig.*, 1994 WL 583114, at *6 (dismissing Rule 10b-5 allegations against
       outside directors who were also members of corporate audit, compensation and
22     stock option committees who signed and allegedly "controlled the contents" of
       public filings containing alleged misstatements; "even under group pleading, it
23     is generally not enough to base allegations on general job descriptions of
       corporate positions and allege knowledge or actions flowing primarily from an
24     interpretation of those positions"); *In re Gupta Corp. Sec. Litig.*, 900 F. Supp. at
       1241-42 (dismissing Rule 10b-5 allegations that three outside directors
25     "controlled the contents of" and "had the ability and opportunity to prevent the
       issuance of" corporate filings that allegedly contained misstatements as "simply
26     conclusory . . . unsupported by assertions of specific day-to-day involvement in
       the management of [the corporation]"); *see also In re Hansen Natural Corp.*,
27     *supra*, at *8 (dismissing Rule 10b-5 allegations against three outside directors
       who signed corporate filings and were also members of corporation's audit and
28     compensation committees).

1  of [Mr. Murdock's] deliberately reckless or conscious misconduct." *See In re*

2  *Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d at 974.  In analyzing whether the SAC

3  has successfully done so, the Court must consider "not only inferences urged by the

4  plaintiff . . . but also competing inferences rationally drawn from the facts alleged."

5  *See Tellabs*, 127 S. Ct. at 2504; *see also Gompper v. VISX, Inc.*, 298 F.3d 893, 897

6  (9th Cir. 2002) (a Court "must consider *all* reasonable inferences to be drawn from

7  the allegations, including inferences unfavorable to the plaintiffs") (emphasis

8  added).  Thus, to survive a motion to dismiss, a complaint's inference of scienter

9  "must be more than merely plausible or reasonable – it must be cogent and at least

10  as compelling as any opposing inference of nonfraudulent intent." *See Tellabs*, 127

11  S. Ct. at 2505.

12      The SAC's allegations against Mr. Murdock utterly fail to satisfy the

13  PSLRA's requirements.  The SAC alleges:

14  - that Mr. Murdock has been a Quest Outside Director since April 1999 (SAC ¶ 49);

15  - that Mr. Murdock was a member of Quest's Compensation Committee from 1999 through February 2005; the responsibilities of the Compensation

16    Committee include "supervising the administration of the Company's 1999 Stock Incentive Plan" and Mr. Murdock therefore "approved or accepted"

17    backdated stock option grants (SAC ¶¶ 17, 49, 107, 208);

18  - that Mr. Murdock has been a member of Quest's Audit Committee from 1999 through the present; the responsibilities of the Audit Committee

19    include "review[ing] and discuss[ing] with management and the independent auditor Quest's financial disclosure documents" and Mr.

20    Murdock therefore "approved or accepted . . . false and misleading financial statements" (SAC ¶ 18, 49, 108, 199);

21  - that Mr. Murdock signed and "caused" Quest to file each Quest Form 10-K and 10-K405 filed during the Class Period and signed certain reports

22    contained in and "caused" Quest to file proxy statements filed in years 2002 through 2005, all of which contained "untrue statements of material fact"

23    (SAC ¶¶ 50-52, 121, 125, 126, 128, 130, 132, 133, 136, 137, 139-142); and

24  - that Mr. Murdock sold 200,000 shares of Quest stock in April 2003 and 2,274 shares in March 2005 for proceeds of approximately $2,189,454.29.

25    (SAC ¶¶ 53, 205).

26      The SAC's collective allegations against Mr. Murdock summarized above

27  are largely conclusory and fail to demonstrate with "great detail, facts that

28  constitute strong circumstantial evidence of [Mr. Murdock's] deliberately reckless

or conscious misconduct." *See In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d at

974.  As will now be shown, a thorough analysis of these allegations reveal that an

inference of *nonfraudulent* intent on the part of Mr. Murdock is vastly more

compelling than anything which can be drawn from Plaintiff's pleadings.

> **1.     Plaintiff Fails To Allege Facts Demonstrating That Mr. Murdock Had Motive To Commit The Securities Fraud Pleaded In The Complaint.**

Despite Plaintiff's best efforts, the undeniable truth is that *Mr. Murdock*

*never received backdated stock options from Quest*.  Indeed, the SAC does not

allege otherwise.  *See* SAC ¶ 53.  Nonetheless, the SAC subtly tries to lump Mr.

Murdock in with his co-Defendants in an attempt to create an impression of

impropriety surrounding his stock sales.  *See* SAC ¶¶ 201-207.  For example, in the

first paragraph of the SAC section titled, "Motive and Profit from the Misconduct,"

Plaintiff describes Defendants' "Motive," writing that "defendants Smith, Morse,

Garn, Doyle, and Brooks all received backdated stock option grants and . . . knew

or . . . disregarded the fact that the Company was falsely reporting the grant dates of

those options in order to avoid reporting a higher compensation expense and to

enrich these defendants."  SAC ¶ 201.  The SAC then lists the collective stock sales

of Smith, Morse, Garn, Doyle and Brooks, slipping *Mr. Murdock's* sales in between

those of Garn and Brooks without further explanation.  SAC ¶¶ 202-206.[4]

No inference of fraudulent intent may reasonably be gleaned from Mr.

Murdock's stock sales.  Since Mr. Murdock received no stock options and no

benefit from the alleged scheme (*see, e.g.*, SAC ¶¶ 91-104), it cannot be reasonably

---

[4]   The Court's October 2007 Order did not address whether the other Defendants' receipt of allegedly backdated stock options supports an inference of scienter as to Mr. Murdock.  Neither logic nor the PSLRA permit such a result.  *See Weiss v. Amkor Tech., Inc.*, 527 F. Supp. 2d 938, 951 & n.2 (D. Ariz. 2007) (complaint's failure to allege that two defendant outside directors received any backdated options "defeats an inference of motive" as to the two outside directors).

argued how or why Mr. Murdock's sales of long held stock leads to an inference of motive, knowledge, awareness or fraudulent intent on Mr. Murdock's part concerning a scheme to backdate options at Quest.  *See Weiss*, 527 F. Supp. 2d at 951 n.2 ("[T]he SAC fails to allege that the outside directors Churchill and George received any options.  The absence of such allegations defeats an inference of motive to Messrs. Churchill and George.").  Nor can Plaintiff link Mr. Murdock's sales, which largely occurred three years before the backdating issue was raised, to any aspect of the alleged backdating scheme.  Moreover, in the absence of any particulars regarding the percentage, timing and prior sales history of Mr. Murdock, the bare allegation of a sale of stock in 2003 and a far smaller sale of stock in 2005 does not support a strong inference of scienter.  *See, e.g.*, *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1093 (9th Cir. 2002); *Ronconi v. Larkin*, 253 F.3d 423, 435 (9th Cir. 2001).[5]  Because there is a complete absence of this relevant information in the SAC and because Mr. Murdock was not the recipient of allegedly backdated stock options, Plaintiff has utterly failed to plead any inference of fraudulent intent, much less the requisite strong inference.

### 2.   Plaintiff's Allegations Of Wrongdoing Flowing From Mr. Murdock's Membership On Quest Committees Are Wholly Conclusory.

The SAC alleges that Mr. Murdock, the only outside director, non-employee named in the SAC, was a member of Quest's Compensation Committee from 1999 through February 2005 and has been a member of Quest's Audit Committee from 1999 through the present.  SAC ¶ 49.  According to the SAC, the respective

---

[5]   The Court previously found this caselaw only applicable in a "prototypical" securities fraud case and less meaningful in an options backdating case such as here.  *See, e.g.,* October 2007 Order at 21-22 (describing why facts relating to the "timing" of a defendant's sales of stock are of "little significance" in an options backdating case because "regardless of when the stock is sold, the fact that the stock was granted at such a relatively low price virtually guarantees Defendants will reap significant profits").  But, once again, Mr. Murdock did not receive backdated options, and therefore possessed no "virtual guarantee" that he would reap "significant profits" because of his "relatively low" options grants.  As a result, the "prototypical" analysis should apply to him.

Def. Mem. of P. & A. ISO OF MTD SAC
CV06-6863 DOC (RNB)
13114048.3

responsibilities of these committees include "supervising the administration of the Company's 1999 Stock Incentive Plan" and "review[ing] and discuss[ing] with management and the independent auditor Quest's financial disclosure documents." SAC ¶¶ 17, 18.  The SAC further alleges that unnamed board members signed various unanimous written consents regarding unspecified option grants.  SAC ¶¶ 17, 18.  From these facts, the SAC asks the Court to infer that Mr. Murdock knowingly "approved or accepted" backdated stock option grants and "approved or accepted . . . false and misleading financial statements."  SAC ¶¶ 17, 18.

No such baseless leap of faith is permissible under the PSLRA.  The allegation that because Mr. Murdock sat on certain committees charged with certain responsibilities, he knowingly performed or failed to perform certain activities is the very definition of conclusory.  Plaintiff has failed to provide *any* detail (let alone "great detail") of Mr. Murdock's "deliberately reckless or conscious misconduct."  As the Court explained in similar circumstances in *Weiss, supra*, at 949:

> The Plaintiffs argue that the SAC alleges particularized facts to collectively establish that the Defendants were Amkor's gatekeepers when it came to administering, recommending and approving the terms of stock options grants; thus the backdating scheme could not have occurred without their individual knowledge and/or participation.  However, in essence, the Plaintiffs have done little more than alleged the Individual Defendants' respective board or executive positions.

*Accord, In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 844 (N.D. Cal. 2000) (a plaintiff "must do more than allege that . . . key officers had the requisite knowledge by virtue of their 'hands on' positions;" a ruling to the contrary "would eliminate the necessity for specially pleading scienter, as any corporate officer could be said to possess the requisite knowledge by virtue of his or her position").

Fundamentally, Plaintiff, despite these attempts, has provided none of the requisite factual detail – for example, "allegations identifying specific conversations, Board meetings, or reports where [Mr. Murdock] purportedly

learned of the true and adverse information." *See In re Peerless Sys., Corp. Sec. Litig.*, 182 F. Supp. 2d 982, 994 (S.D. Cal. 2002); *see also Wojtunik*, 394 F. Supp. 2d at 1169 ("What is missing from the Amended Complaint regarding the outside directors' scienter are factual allegations setting forth what information was presented to the outside directors about any of the alleged misrepresentations, omissions, GAAP violations, etc. that put them on actual or constructive notice of fraudulent activity . . . ."). Without allegations of "specific contemporaneous conditions known" to Mr. Murdock "that would strongly suggest" he was aware of problems associated with Quest's backdating methodology or of alleged falsities in Quest's public filings, it is impossible to infer that Mr. Murdock had knowledge of any alleged wrongdoing at Quest. *See In re Vantive Corp. Sec. Litig.*, 283 F.3d at 1090-91 (affirming dismissal of complaint that failed to allege "specific contemporaneous conditions known to the defendants that would strongly suggest that the defendants understood that their recognition of revenues on 'millions of dollars of software' was 'excessive'"). Because particularized facts alone will lead to a strong inference of scienter, the SAC's bare allegations of Mr. Murdock's membership on the Quest Audit and Compensation Committees fail to pass muster under the PSLRA. *See In re Vantive Corp. Sec. Litig.*, 283 F.3d at 1090-91; *In re Peerless Sys. Corp. Sec. Litig.*, 182 F. Supp. 2d at 993-94; *see also Weiss*, 527 F. Supp. 2d at 949-50; *Wojtunik*, 394 F. Supp. 2d at 1169; *In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d at 844.

### 3. Mr. Murdock's Signature On Certain Quest Public Filings Does Not Lead To A Strong Inference of Scienter.

The SAC also highlights the fact that Mr. Murdock signed and therefore purportedly "caused" Quest to file its Form 10-Ks, in addition to certain reports that became part of Quest proxy statements, all of which allegedly contained material misstatements. SAC ¶¶ 50-52, 121, 125, 126, 128, 130, 132, 133, 136, 137, 139-142. Neither Mr. Murdock's signature on these documents, nor the conclusory

allegation that Mr. Murdock "caused" the documents to be filed, gives rise to a strong inference of scienter.  "If that were true, 'scienter would be established in every case where there was an accounting error or auditing mistake made by a publicly traded company, thereby eviscerating the pleading requirements for scienter set forth in the PSLRA.'"  *In re Hansen Natural Corp. Sec. Litig., supra*, at *14 (quoting *Cent. Laborers' Pension Fund. v. Integrated Elec. Servs., Inc.*, 497 F.3d 546, 555 (5th Cir. 2007)).  Without any evidence that Mr. Murdock "knew" the public filings he signed contained misstatements -- evidence which the SAC does not offer -- his signature on such filings "does not give rise to a strong inference of scienter."  *See id.*

### 4.   The Totality Of The SAC's Allegations Against Mr. Murdock Fail To State With Particularity Facts Giving Rise To A Strong Inference of Scienter.

These are the specific, particularized allegations facing *Mr. Murdock*: that (i) he sold a *de minimis* amount of Quest stock during the class period, (ii) that he was a member on certain board committees, and (iii) that he signed certain Quest public filings allegedly containing material misstatements.  In evaluating Plaintiff's claims against Mr. Murdock, the Court may fairly consider only these allegations.  *See In re Verisign, Inc., Derivative Litig.*, --- F. Supp. 2d ---, No. C 06-4165, 2007 WL 2705221, at *30 (N.D. Cal. Sept. 14, 2007) ("It is not sufficient under the PSLRA to allege scienter against defendants as a group.");  *see also* 15 U.S.C. § 78u-4(b)(2) (plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind").

As demonstrated above, Mr. Murdock's stock sales and signature reveal little, while the allegations that Mr. Murdock "approved or accepted" backdated stock option grants and "approved or accepted . . . false and misleading financial statements" are conclusory and unsupported by factual detail.  It is virtually impossible, after reading the SAC, to conclude with a sufficient level of certainty "what role[] [Mr. Murdock] played in the alleged back-dating scheme."  *See In re*

*Atmel Corp. Derivative Litig.*, No. C 06-4592, 2007 WL 2070299, slip. op. at *6 (N.D. Cal. July 16, 2007) ("[I]t appears almost certain that some of the options at issue here were backdated.  However, that apparent fact does not permit the Consolidated Plaintiffs to name any number of individual defendants without providing adequate detail regarding their role and knowledge of the alleged backdating."); *see also In re Verisign, Inc., Derivative Litig.*, --- F. Supp. 2d ---, 2007 WL 2705221, at *30 (granting motion to dismiss; "[t]his lack of factual specificity is particularly striking because none of the director defendants is alleged to have received any of the backdated options").

The SAC's allegations against Mr. Murdock do not demonstrate with "great detail, facts that constitute strong circumstantial evidence of [Mr. Murdock's] deliberately reckless or conscious misconduct."  *See In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d at 974.  Because the SAC's inference of scienter as to Mr. Murdock is at best "merely plausible" and is not "at least as compelling as any opposing inference of nonfraudulent intent," *see Tellabs*, 127 S. Ct. at 2504, the securities fraud claim against Mr. Murdock should be dismissed.

## II.    PLAINTIFF FAILS TO STATE A CLAIM AGAINST MR. MURDOCK FOR VIOLATING SECTION 20(a) OF THE SECURITIES AND EXCHANGE ACT OF 1934

In order to prove a prima facie case of "control person liability" under Section 20(a), a plaintiff must prove: (1) a primary violation of federal securities laws; and (2) that the defendant exercised "actual power or control over the primary violator."  *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000).  When the alleged "primary violator" is a corporate entity, a demonstration of a defendant's "general control" over the corporation is insufficient; instead, a plaintiff must allege that the defendant "was active in the day-to-day affairs" of the corporation or that he "exercised any *specific* control over the preparation and release" of the corporation's financial statements.  *Id.* at 1067 & n.13 (emphasis added).  Moreover, the circumstances surrounding a defendant's "power or control

over the primary violator" must be pled with particularity.  *See Howard v. Hui*, No. C 92-3742, 2001 WL 1159780, at *4 (N.D. Cal. Sept. 24, 2001) ("[A] plaintiff must plead the circumstances of the control relationship with sufficient particularity to satisfy rule 9(b)."); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, No. C 99-00109, 2000 WL 1727405, at *15 (N.D. Cal. Sept. 29, 2000) ("In order to adequately plead the second element of a control person liability claim, the complaint must plead the circumstances of the control relationship with particularity."); *In re Oak Tech. Sec. Litig.*, No. 96-20552, 1997 WL 448168, at *14-15 (N.D. Cal. Aug 1, 1997) ("Plaintiffs . . . fail to recognize the requirement that the circumstances of that 'control relationship' be pled with particularity.").

The SAC fails to allege that Mr. Murdock "was active in the day-to-day affairs" of Quest or that he "exercised *specific* control over the preparation and release" of Quest's financial statements with any particularity.[6]  Indeed, the SAC speaks to Mr. Murdock's *lack* of power and control at Quest.  As noted above, Mr. Murdock is an *outside* director at Quest.  *See In re Nextcard, Inc. Sec. Litig.*, No. C 01-21029, 2006 WL 708663, at *5 (N.D. Cal. Mar. 20, 2006) ("The Court is unaware of any authority for the proposition that an outside director may be held liable under § 20(a).").  Moreover, Mr. Murdock is not an officer or full-time employee at Quest.  Not surprisingly then, Plaintiff has not and cannot allege that Mr. Murdock had any day-to-day responsibilities at the Company.  *See In re Nextcard, Inc. Sec. Litig.*, 2006 WL 708663, at *5 (dismissing § 20(a) claim against outside director who also was a member of the audit and compensation committees;

---

[6]   Mr. Murdock's position presupposes that the SAC establishes a "primary violation" of the federal securities laws by Quest (as the Court found in its October 2007 Order).  If the Court finds that the SAC *does not* allege a primary violation of the securities laws by Quest, then the Section 20(a) claim against Mr. Murdock must be dismissed as moot, since there is a compete absence of allegations in the SAC that Mr. Murdock exercised "power or control" over any of his individual co-defendants.

DECHERT LLP
ATTORNEYS AT LAW

Def. Mem. of P. & A. ISO OF MTD SAC
CV06-6863 DOC (RNB)
13114048.3

"Plaintiffs do not allege that [Defendant] was involved in the day to day management of the company"); *In re Oak Tech.*, 1997 WL 448168, at \*14 (dismissing § 20(a) claim against outside director in absence of allegations that director "participated in [the corporation's] day-to-day operations" or had the "power to control [the corporation's] corporate actions"); *Cf. In re Syntex Corp. Sec. Litig.*, 855 F. Supp. at 1100 ("By definition, outside directors do not participate in [a] corporation's day-to-day affairs.").

In sum, the SAC's conclusory allegations do not establish, under any pleading standard, how Mr. Murdock exercised "power or control" over Quest. Therefore, Plaintiff has failed to establish Mr. Murdock's liability as a Quest "control person."  Hence, the SAC's Section 20(a) claim against Mr. Murdock should be dismissed.  *See In re Nextcard,* 2006 WL 708663, at \*5; *In re Oak Tech.*, 1997 WL 448168, at \*14; *In re Gupta Corp. Sec. Litig.*, 900 F. Supp. at 1241-43 (dismissing as "conclusory" plaintiff's Section 20(a) claim against one outside director who signed annual report and another outside director who was a member of the audit and compensation committees, both who were alleged to have "controlled" the contents of corporate financial reports).

## III. PLAINTIFF FAILS TO STATE A CLAIM AGAINST MR. MURDOCK FOR VIOLATION OF SECTION 20A OF THE SECURITIES AND EXCHANGE ACT OF 1934

In its October 2007 Order, the Court held in abeyance Defendants' Motion to Dismiss Plaintiff's claim of insider trading under Section 20A of the Exchange Act while granting Plaintiff the opportunity to add allegations demonstrating the dates that it purchased Quest stock.  October 2007 Order at 32-33.  In doing so, the Court endorsed Judge Brieant of the Southern District of New York's interpretation of Section 20A's "contemporaneous trading" requirement:

> the better rule with respect to standing seems to be that a class action may be maintained on behalf of all persons who purchased stock on an exchange during the period that defendants were selling that stock on the basis of insider information.

1   *See id.* (quoting *In re Am. Bus. Computers Corp. Sec. Litig.*, MDL No. 913, 1994

2   WL 848690, *4 (S.D.N.Y. Feb. 24, 1994)).  The Court also observed, after

3   reviewing other pleadings in this action, that "Plaintiff traded on the same day as

4   Smith, within eight days of Garn, and within three days of Brooks."  *Id*. at 33.  The

5   Court did not refer to the trading of Plaintiff in relation to Mr. Murdock's sales of

6   Quest stock.

7        It cannot be reasonably argued that Plaintiff purchased Quest stock "during

8   the period" that Mr. Murdock was selling his -- to do so stretches the definition of

9   "contemporaneous" beyond recognition.  The SAC alleges that Mr. Murdock sold

10  202,000 shares on April 30, 2003 – *more than two and a half years* before Lead

11  Plaintiff's first purchase of stock on November 28, 2005.  SAC ¶¶ 205, 246.  Mr.

12  Murdock sold an additional 2,274 shares of Quest stock on March 9, 2005, close to

13  nine months before Plaintiff's first purchase of Quest stock.  SAC ¶¶ 205, 246.  Mr.

14  Murdock's sales of Quest stock simply did not occur in the same "period" as

15  Plaintiff's purchases.

16        Indeed, the Ninth Circuit has held that a two month gap in trading bars a

17  claim of "contemporaneous trading."  As the Court observed in *Brody v.*

18  *Transitional Hospitals Corp.*, 280 F.3d 997, 1002 (9th Cir. 2002) (*emphasis*

19  *added*):

20        Because the two-month time period presented by the facts
       of this case exceeds *any possible delineation of a*

21        *contemporaneous trading period*, it is not necessary in
       this case either to define the exact contours of the period.

22        *We simply note that a contemporaneous trading period of*
       *two months would gut the contemporaneous trading rule's*

23        *premise*-that there is a need to filter out plaintiffs who
       could not possibly have traded with the insider, given the

24        manner in which public trades are transacted.

25  Similarly, in *Neubronner v. Milken*, the Ninth Circuit specifically "adopt[ed]" and

26  found "persuasive" the Second Circuit's interpretation of the "contemporaneous

27  trading" requirement as set forth in *Wilson v. Comtech Telecommunications Corp.*,

28  648 F.2d 88 (2d Cir. 1981), which held that trades by the respective plaintiff and

1  defendant that were approximately *one month* apart were not "contemporaneous."

2  *See* 6 F.3d 666, 669-70 (9th Cir. 1993) (discussing *Wilson*).  Hence, dismissal of

3  the Section 20A claim against Mr. Murdock is also well warranted.[7]

4  **CONCLUSION**

5          For the foregoing reasons, Defendant Jerry Murdock, Jr. respectfully requests

6  that the Court dismiss the Second Amended Complaint with prejudice as to him and

7  grant such further and other relief as the Court deems just and proper.

8

9  Dated:  March 4, 2008                    DECHERT LLP

10

11                                          By:/s/ Richard J. Cutler
12                                              RICHARD J. CUTLER
                                                FREDERICK G. HEROLD
13                                              2440 W. El Camino Real, Suite 700
                                                Mountain View, CA 94040-1499
14                                              Telephone: (650) 813-4800
                                                Facsimile: (650) 813-4848

15                                              ANDREW J. LEVANDER
16                                              (*pro hac pending*)
                                                MICHAEL Z. GOLDMAN
17                                              (*pro hac pending*)
                                                30 Rockefeller Plaza
18                                              New York, NY 10112
                                                Telephone: (212) 698-3500
19                                              Facsimile:  (212) 698-3599

20                                              *Attorneys for Defendant*
21                                              *Jerry Murdock, Jr.*

22

23

24  ────────────────
     [7] The Section 20A claim against Mr. Murdock should also be dismissed because the
25  SAC fails to demonstrate that Mr. Murdock committed an "independent violation of
     another provision of the securities laws."  *See In re VeriFone Sec. Litig.*, 784 F.
26  Supp. 1471, 1488 (N.D. Cal. 1992) ("A careful parsing of the somewhat tangled
     initial sentence of [Section] 20A discloses that an insider – one who trades while in
27  the possession of material, nonpublic information – is liable only where an
     independent violation of another provision of the securities laws has occurred."),
28  *aff'd* 11 F.3d 865 (9th Cir. 1993); *see also* Points I-II, *supra*.

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on March 4, 2008, I electronically filed the following

3

document(s) with the Clerk of the Court using the CM/ECF system, which will

4

5

send an email notification of such filing to the attorney(s) of record listed below.

6

**1.     MEMORANDUM OF POINTS AND AUTHORITIES IN**

7

**SUPPORT OF DEFENDANT JERRY MURDOCK, JR.'S MOTION TO**
**DISMISS THE SECOND AMENDED COMPLAINT FOR FAILURE TO**

8

**STATE A CLAIM.**

9

| | |
|---|---|
| Blake Muir Harper | bmh@hulettharper.com |
| Sara P. Weber | sweber@hulettharper.com |
| Marian P. Rosner | mrosner@wolfpopper.com |
| Patricia I. Avery | pavery@wolfpopper.com |
| Chet B. Waldman | cwaldman@wolfpopper.com |
| Anthony E. Green | agreen@wolfpopper.com |
| Aaron F. Olsen | aolsen@cooley.com |
| Kenji F. Fukumura | kfukumura@cooley.com |

10

11

12

13

14

15

16

17

18

19

/s/ Richard J. Cutler

20

RICHARD J. CUTLER

21

DECHERT LLP

22

2440 W. El Camino Real, Suite 700
Mountain View, CA 94040-1499

23

Telephone: (650) 813-4800
Facsimile: (650) 813-4848

24

E-mail: richard.cutler@dechert.com

25

26

27

28