DECHERT LLP

FREDERICK G. HEROLD (CSBN 229239)
(frederick.herold@dechert.com)
RICHARD J. CUTLER (CSBN 146180)
(richard.cutler@dechert.com)
2440 W. El Camino Real, Suite 700
Mountain View, CA 94040-1499
Telephone: (650) 813-4800
Facsimile: (650) 813-4848

ANDREW J. LEVANDER (*admitted pro hac vice*)
(andrew.levander@dechert.com)
MICHAEL Z. GOLDMAN (*admitted pro hac vice*)
(michael.goldman@dechert.com)
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 698-3500
Facsimile: (212) 698-3599

*Attorneys for Defendant Jerry Murdock, Jr.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MIDDLESEX RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>QUEST SOFTWARE, INC., VINCENT C. SMITH, M. BRINKLEY MORSE, MICHAEL J. LAMBERT, DOUGLAS F. GARN, DAVID M. DOYLE, JERRY MURDOCK, JR., and KEVIN BROOKS,<br><br>Defendants. | Case No. CV06-6863 DOC (RNB)<br><br>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT JERRY MURDOCK, JR.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>DATE: May 12, 2008<br>TIME: 8:30 a.m.<br>CTRM: 9D<br>JUDGE: Hon. David O. Carter |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

ARGUMENT ............................................................................................................................ 4

I. PLAINTIFF FAILS TO STATE A CLAIM AGAINST MR. MURDOCK FOR VIOLATION OF SECTION 10(b) OF THE SECURITIES AND EXCHANGE ACT OF 1934 ................................................................................................................ 4

    A. Plaintiff Has Failed To Allege Facts Linking The Alleged Misstatements In Quest's Public Filings To Mr. Murdock. .......................................................... 4

    B. Plaintiff Has Failed To Allege Facts Constituting "Strong Circumstantial Evidence Of Conscious Misbehavior" By Mr. Murdock. ................................ 5

        1. Plaintiff Fails To Allege Facts Demonstrating That Mr. Murdock Had Motive To Commit The Securities Fraud Pleaded In The Complaint. ....................... 5

        2. Plaintiff's Allegations Of Wrongdoing Flowing From Mr. Murdock's Membership On Quest Committees Are Wholly Conclusory. ....................... 7

        3. Plaintiff Has Not Alleged A Prima Facie Violation Of The 1999 Quest Stock Incentive Plan. ................................................................................................ 9

        4. The "Nature Of The Misconduct" Does Not Support Mr. Murdock's Scienter. ........... 11

II. PLAINTIFF FAILS TO STATE A CLAIM AGAINST MR. MURDOCK FOR VIOLATING SECTION 20(a) OF THE SECURITIES AND EXCHANGE ACT OF 1934 .............................................................................................................. 11

III. PLAINTIFF FAILS TO STATE A CLAIM AGAINST MR. MURDOCK FOR VIOLATION OF SECTION 20A OF THE SECURITIES AND EXCHANGE ACT OF 1934 .............................................................................................................. 13

CONCLUSION ...................................................................................................................... 14

## TABLE OF AUTHORITIES

*Brody v. Transitional Hospital Corp.*,
    280 F.3d 997 (9th Cir. 2002)...................................................................... 16-17

*In re Comverse Technology, Inc. Sec. Litig.*,
    No. 06-CV-1825, 2008 WL 495547 (E.D.N.Y. Feb. 19, 2008)....................... 11

*In re Cornerstone Propane Partners, L.P. Sec. Litig.*,
    355 F. Supp. 2d 1069 (N.D. Cal. 2005) ......................................................... 11

*Fishbaum v. Liz Claiborne, Inc.*,
    No. 98-9396, 189 F.3d 460 (2d Cir. July 27, 1999) ....................................... 11

*In re Gupta Corp. Sec. Litig.*,
    900 F. Supp. 1217 (N.D. Cal. 1994) ............................................................... 15

*In re Hansen Natural Corp. Sec. Litig.*,
    527 F. Supp. 2d 1142 (C.D. Cal. 2007) ................................................. 5, 7, 15

*Howard v. Everex Sys., Inc.*,
    228 F.3d 1057 (9th Cir. 2000)........................................................................ 14

*Matthews v. Centex Mgmt., Inc.*
    No. C-92-1837, 1994 WL 269734 (N.D. Cal. June 8, 1994) ......................... 11

*Middlesex Retirement System v. Quest Software Inc.*,
    527 F. Supp. 2d 1164 (C.D. Cal. 2007)............................................................ 8

*In re Openwave Systems Sec. Litig.*,
    528 F. Supp. 2d 236 (S.D.N.Y. 2007) ............................................................ 11

*Ronconi v. Larkin*,
    253 F.3d 423 (9th Cir. 2001)............................................................................ 7

*SEC v. Todd*,
    No. 03CV2230, 2006 WL 1564892 (S.D. Cal. May 30, 2006) ..................... 11

*In re Silicon Graphics, Inc. Sec. Litig.*,
    183 F.3d 970 (9th Cir. 1999)............................................................................ 1

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    ___ U.S. ___, 127 S. Ct. 2499 (2007)............................................................... 2

*In re US Aggregates, Inc. Sec. Litig.*,
    235 F. Supp. 2d 1063 (N.D. Cal. 2002) ......................................................... 11

*In re Vantive Corp. Sec. Litig.*,
    283 F.3d 1079 (9th Cir. 2002).................................................................... 7-10

*Weiss v. Amkor Tech., Inc.*,
    527 F. Supp. 2d 938 (D. Ariz. 2007)......................................................... 6, 10

*Wojtunik v. Kealy*,
    394 F. Supp. 2d 1149 (D. Ariz. 2005) .......................................................... 9, 10

*Yanek v. Staar Surgical Co.*,
    388 F. Supp. 2d 1110 (C.D. Cal. 2005) ............................................................ 11

## PRELIMINARY STATEMENT

Defendant Jerry Murdock, Jr. respectfully submits this Reply Memorandum of Points and Authorities in Support of Motion to Dismiss the Second Amended Complaint for Failure to State a Claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

Mr. Murdock -- an independent, outside director of Quest who did not receive any allegedly backdated stock options -- is alleged to have committed securities fraud based solely on the allegations that he was a director of the Company and a member of its audit and compensation committees, in that capacity signed certain of the Company's public filings and certain unanimous written consents pursuant to which stock options were granted to the Company's employees, and sold Quest stock on two occasions during the five-year purported Class Period. Mr. Murdock's Opening Memorandum demonstrated that these routine allegations were insufficient, under this Circuit's well-establish standards, to show with "*great detail*, facts that constitute *strong circumstantial evidence*" of Mr. Murdock's "deliberately recklessness or conscious misconduct" in connection with Quest's options-granting process. *See In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999) (emphasis added). To the contrary, the facts that Mr. Murdock did not personally receive "backdated" stock options and that Quest's 1999 Plan in fact permitted the granting of "in-the-money" stock options lead to an inference of non-fraudulent intent that is vastly more compelling than plaintiff's conclusory accusation of fraud. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, ___ U.S. ___, 127 S. Ct. 2499, 2505 (2007).

Plaintiff does not dispute these critical facts or point to any other *factual*

---

[1] Unless otherwise indicated, capitalized terms herein shall have the same meaning given them in Mr. Murdock's Memorandum of Points and Authorities in Support of Motion to Dismiss the Second Amended Complaint for Failure to State a Claim, filed on March 4, 2008 ("Opening Mem." or "Murdock Mem.").

allegations in the SAC that, if true, would give rise to an inference of scienter against Mr. Murdock. Instead, plaintiff's Memorandum of Points and Authorities in Opposition to Mr. Murdock's Motion to Dismiss Second Amended Complaint ("Opp. Mem.") repeats the conclusory allegations of the SAC and asks the Court to disregard the strict pleading standards applicable to a securities fraud claim because this case involves options backdating. According to plaintiff, Mr. Murdock "must have known" that Quest backdated and improperly accounted for stock options between 1999 and 2002 because as a member of the compensation committee he allegedly signed some of the unanimous written consents pursuant to which the stock options were issued.

As an initial matter, plaintiff does not contend that Mr. Murdock himself made the allegedly false and misleading statements. Nor does plaintiff point to any facts that link Mr. Murdock to Quest's alleged misstatements by showing his personal involvement in the preparation or making of the misstatement. Rather, plaintiff's sole theory is that Mr. Murdock is responsible for Quest's public statements because he was an outside director and member of the compensation and audit committees. But it is well-settled that such allegations are insufficient to state a claim for a primary violation of the securities laws. *See* Point I(A), *infra*.

Moreover, aside from repeating the conclusory allegations of wrongdoing, the Opposition Memorandum does nothing to establish Mr. Murdock's conscious misconduct or even his motive to commit securities fraud. That Mr. Murdock may have signed unanimous written consents does not suffice to show *impropriety* because it is the *failure to account for allegedly backdated options* -- not the issuance of the options -- that is allegedly wrongful. That is especially true here, where Quest's stock option plan *explicitly allowed the granting of "in-the-money" stock option grants to its employees*. *See* Point I(B), *infra*.

Similarly, plaintiff concedes that Mr. Murdock himself did not receive a single backdated or in-the-money stock option. And plaintiff does not even attempt

to explain how Mr. Murdock's two stock sales during the five-year Class Period -- 200,000 shares in 2003 and an additional 2,274 shares two years later, in 2005 -- were suspicious in timing or amount. Instead, plaintiff asks the Court to disregard binding Ninth Circuit precedent and hold that any stock sale, not only unusual and suspicious sales, gives rise to an inference of scienter. *See* Point I(B), *infra*.

The Section 20(a) claim for control person liability fails because the SAC does not allege facts that show Mr. Murdock's "actual power or control" over Quest. *See* Point II, *infra*. And the Section 20A insider trading claim fails both because the SAC fails to state a primary violation by Mr. Murdock and because plaintiff did not trade contemporaneously with Mr. Murdock. Once again, plaintiff asks the Court simply to disregard binding authority on the "contemporaneous trading" requirement and allow the claim to process even though Mr. Murdock's stock sales were two and a half years and nine months prior to plaintiff's first purchase of Quest stock, respectively. The Court should not tolerate plaintiff's blatant disregard of binding precedent. *See* Point III, *infra*.[2]

---

[2] Plaintiff also suggests that Mr. Murdock's motion is improper because she claims that counsel did not engage in sufficient pre-motion meet and confer sessions to satisfy Local Rule 7.3. This argument is specious. First, current counsel, which first entered an appearance on February 21, 2008, had at least two telephone conversations with plaintiff's counsel, on February 22, 2008 and February 25, 2008, before filing the motion to dismiss on March 4, 2008. *See* e-mail correspondence between Michael Goldman and Patricia Avery, annexed as Ex. JJ to the Declaration of Patricia I. Avery in Support of Plaintiff's Request for Judicial Notice in Support of Plaintiff's Opposition to Defendants' Three Motions to Dismiss Second Amended Complaint ("Avery Dec."). And prior counsel had at least two additional conversations with plaintiff's counsel, on January 22, 2008 and January 24, 2008. *See* Notice of Motion and Motion to Dismiss Second Amended Complaint ("This motion is made following various conferences of counsel pursuant to L.R. 7.3, which took place beginning on January 22, 2008 and January 24, 2008."). In any event, plaintiff does not even suggest that additional conversations or meetings would have avoided the need for motion practice.

# ARGUMENT

## I. PLAINTIFF FAILS TO STATE A CLAIM AGAINST MR. MURDOCK FOR VIOLATION OF SECTION 10(b) OF THE SECURITIES AND EXCHANGE ACT OF 1934

### A. Plaintiff Has Failed To Allege Facts Linking The Alleged Misstatements In Quest's Public Filings To Mr. Murdock

The Opening Memorandum demonstrated that plaintiff's 10b-5 claim fails because the SAC does not allege that Mr. Murdock made any of the allegedly false statements nor does it sufficiently "link" him to any allegedly false or misleading statement in Quest's public filings. *See* Murdock Mem. at 6-8. It is well-established that a plaintiff cannot simply rely on an outside director's signature on a company's public filings to establish the necessary link, but must allege facts showing the director's "substantial participation or intricate involvement in the preparation of [the] fraudulent statements." *See id.* (collecting authority).

In response, Plaintiff ignores the "substantial participation or intricate involvement" standard. *See* Opp. Mem. at 13-14. Instead, plaintiff argues that Mr. Murdock's signature on Quest's public filings that contained allegedly false statements and on the reports of the compensation committee and audit committee contained within the public filings constitutes a statement by Mr. Murdock. *See id.* at 13. But the mere signature of an outside director on public filings is not enough to "link" the director to the allegedly false statement, *see* Murdock Mem. at 6 (collecting authority), and plaintiff cites no authority to the contrary.

Plaintiff's argument that Mr. Murdock "helped cause Quest to file" its public filings, Opp. Mem. at 13, fares no better. The SAC does not allege any facts to show how Mr. Murdock "caused" Quest to make its public filings, other than the insufficient allegations that he signed the public filings as an outside director, as required by SEC rules. *See, e.g.*, SAC ¶¶ 132, 133, 136, 142. These general, unsupported allegations are not enough to demonstrate Mr. Murdock's

"participation or intricate involvement in the preparation" of the statements at issue. *See In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1153 n.3 (C.D. Cal. 2007) (dismissing securities fraud claims against three outside directors where there were no "specific allegations" that the directors "played any role whatsoever in the preparation or dissemination of any allegedly false statements"); *see also* Murdock Mem. at 7-8 (collecting additional authority).

Because the SAC fails factually and legally to link Mr. Murdock to the alleged misstatements contained in Quest's corporate filings, the SAC fails to state a claim against Mr. Murdock as a primary violator of Section 10(b) and Rule 10b-5.

**B.     Plaintiff Has Failed To Allege Facts Constituting "Strong Circumstantial Evidence Of Conscious Misbehavior" By Mr. Murdock**

**1.     Plaintiff Fails To Allege Facts Demonstrating That Mr. Murdock Had Motive To Commit The Securities Fraud Pleaded In The Complaint**

The Opening Memorandum also demonstrated that the SAC fails to allege that Mr. Murdock had scienter because it does not allege that he had any motive to commit securities fraud. Specifically, plaintiff admits that Mr. Murdock never received backdated stock options from Quest. *See* Murdock Mem. at 10-11; *see also Weiss v. Amkor Tech., Inc.*, 527 F. Supp. 2d 938, 951 & n.2 (D. Ariz. 2007) ("[T]he SAC fails to allege that the outside directors Churchill and George received any options. The absence of such allegations defeats an inference of motive to Messrs. Churchill and George."). And, the SAC does not allege, and the Opposition Memorandum makes no effort to argue, that Mr. Murdock's two Class Period stock sales were unusual in timing or amount.

Plaintiff argues that "[w]hether or not [Murdock] received backdated options is *irrelevant*" because Mr. Murdock sold stock at a time when the stock price was

allegedly artificially inflated as a result of the backdating. *See* Opp. Mem. at 16 (emphasis added). Plaintiff thus entirely disregards well-settled law that stock sales by officers or directors give rise to an inference *only* where such sales are unusual in timing or amount when compared to the individual's prior trading history, the timing of the sales, and the amount of percentage of shares sold by that individual and by other insiders. *See In re Vantive Corp. Sec. Litig.*, 283 F.3d at 1092 ("Insider stock sales are not inherently suspicious."); *Ronconi v. Larkin*, 253 F.3d 423, 435 (9th Cir. 2001) (sale of stock by an insider becomes suspicious "only when it is dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information"); *In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d at 1160 (declining to find, in options backdating case, that insider stock sales lead to an inference of scienter where "Plaintiff simply has alleged that every publicly filed document by Hansen during the Class Period contains misstatements, and [that], accordingly, stock sales during the Class Period must give rise to a strong inference of scienter").[3]

      Plaintiff's argument rests entirely on this Court's prior decision holding that *Vantive* does not apply where the stock sales at issue resulted from the exercise of backdated options and therefore the insider was "virtually guaranteed" of reaping "significant profits" on the exercise and sale. *See Middlesex Ret. Sys. v. Quest Software Inc.*, 527 F. Supp. 2d 1164, 1186 (C.D. Cal. 2007). Putting aside the issue whether the exercise and sale of backdated options excuses the requirement of alleging that the stock sales were unusual, this holding cannot apply to Mr. Murdock because *plaintiff admits that Mr. Murdock never received backdated*

---

[3] Plaintiff's argument that Mr. Murdock's stock sales should lead to an inference of improper motive is especially weak here, where Plaintiff has alleged an "unusually long" class period of approximately 240 weeks (SAC ¶ 1). *See In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d at 1160 (Plaintiff's "unusually long" class period of "260 weeks" weakens the inference of scienter that can be drawn from an insider's stock sales); *see also In re Vantive Corp. Sec. Litig.*, 283 F.3d at 1092 (criticizing "unusually long" class period of "sixty-three weeks").

*options and therefore his stock sales did not result from the exercise of backdated options.*[4] See Opp. Mem. at 8.

### 2. Plaintiff's Allegations Of Wrongdoing Flowing From Mr. Murdock's Membership On Quest Committees Are Wholly Conclusory

The Opening Memorandum explained that Mr. Murdock's membership on Quest's compensation and audit committees was insufficient to support an inference that he knowingly "approved or accepted" (SAC ¶¶ 17, 18) backdated stock option grants because the SAC is devoid of any factual allegation "identifying specific conversations, Board meetings, or reports where [Mr. Murdock] purportedly learned of the true and averse information.'" *See* Murdock Mem. at 11-13 (quoting *In re Peerless Sys., Corp. Sec. Litig.*, 182 F. Supp. 2d 982, 994 (S.D. Cal. 2002)); *see also In re Vantive Corp. Sec. Litig.*, 283 F.3d at 1091 (affirming dismissal of complaint that failed to allege "specific contemporaneous conditions known to the defendants that would strongly suggest that the defendants understood that their recognition of revenue on 'millions of dollars of software' was 'excessive'"); *Wojtunik v. Kealy*, 394 F. Supp. 2d 1149, 1169 (D. Ariz. 2005) ("what is missing from the Amended Complaint regarding the outside directors' scienter are factual allegations setting forth what information was presented to the outside directors about any of the alleged misrepresentations, omissions, GAAP violations, etc. that put them on actual constructive notice of fraudulent

---

[4] Indeed, plaintiff alleges that the backdating inflated the price of the stock before Quest went public. *See* Opp. Mem. at 17 n.25; *see also* SAC ¶ 175. Thus, under plaintiff's theory, Mr. Murdock *acquired* as well as sold inflated stock years before the alleged fraud was revealed. That sequence of events belies any claim of motive to commit securities fraud. *Cf. Matthews v. Centex Mgmt., Inc.*, No. C-92-1837, 1994 WL 269734, at *8 (N.D. Cal. June 8, 1994) ("Centex bought 209,500 shares of its own stock in the open market, at a total price of almost four million dollars. It would have made no sense to purchase that stock if defendants knew the prices to be inflated."); *see also Fishbaum v. Liz Claiborne, Inc.*, No. 98-9396, 189 F.3d 460, 1999 WL 568023, at *4 (2d Cir. July 27, 1999) (holding that complaint failed to establish scienter where defendants' stock sales were offset by larger purchases).

activity . . . .").

Plaintiff attempts to dismiss this argument as "ludicrous," arguing that because "Murdock can read" he "knew he was signing approvals with 'as of' backdated dates." Opp. Mem. at 11.[5] As an initial matter, plaintiff does not (because it cannot) allege or argue that the unanimous written consent with an "as of" date was itself improper, fraudulent or even incorrect. There is no allegation or suggestion that Mr. Murdock misdated (intentionally or otherwise) a unanimous written consent; to the contrary, plaintiff argues that he signed a unanimous written consent that accurately reflected that it was being dated "as of" a different date. Furthermore, Quest's stock option plan specifically permitted the grant of in-the-money stock options. There are no factual allegations to suggest that Mr. Murdock, who did not receive or "accept" any backdated options, somehow knew or was reckless in not knowing that these accurate documents would be put to an allegedly fraudulent use. *See In re Vantive Corp. Sec. Litig.*, 283 F.3d at 1090-91; *Wojtunik*, 394 F. Supp. 2d at 1169. Moreover, there are no allegations that Mr. Murdock knew how Quest was technically accounting for the options grants or that the accounting treatment that it was using was somehow wrong.[6] *See Defendants' Reply in Support of Motion to Dismiss Second Amended Complaint*, at 3-6 (collecting recent authority holding that it is improper to conflate a defendant's knowledge concerning a company's options-granting methodology with the defendant's knowledge of how that company is *accounting* for such a methodology).

---

[5] This allegation is made only in the Opposition Memorandum; the SAC does not allege who signed the unanimous written consents. See SAC ¶¶ 174-177.

[6] Application of the rules governing the accounting treatment of stock options (*see* APB No. 25) is "complex and require[s] accounting expertise and judgment." *See Weiss*, 527 F. Supp. 2d at 949 (dismissing stock options backdating case). Plaintiff pleads no facts demonstrating that Mr. Murdock understood the application of these rules or was considered responsible by anyone at Quest for understanding, much less overseeing and implementing, such highly technical rules.

DECHERT LLP
ATTORNEYS AT LAW

- 8 -

DEF.'S REPLY MEM. ISO MTD SAC
CV06-6863 DOC (RNB)

Because the SAC does not allege that Mr. Murdock knew of *impropriety* in connection with the issuance of and accounting for backdated stock options, plaintiff has not stated a claim against him for violation of Section 10(b). *See SEC v. Todd*, No. 03CV2230, 2006 WL 1564892, at *7 (S.D. Cal. May 30, 2006) (rejecting securities fraud claim against CEO of public company and finding that "knowledge of the existence of the [challenged] transactions does not allow a reasonable fact-finder to draw an inference that [the CEO] had knowledge of *their impropriety*") (emphasis added); *In re Cornerstone Propane Partners, L.P. Sec. Litig.*, 355 F. Supp. 2d 1069, 1091 (N.D. Cal. 2005) ("In order to distinguish 'deliberate recklessness' from 'ordinary carelessness," allegations of GAAP violations must be augmented by 'facts that shed light on the mental state' of defendants, rather than conclusory allegations that defendant must have known of the accounting failures due to the degree of departure from established accounting principles."); *In re US Aggregates, Inc. Sec. Litig.*, 235 F. Supp. 2d 1063, 1073 (N.D. Cal. 2002) ("[E]ven an obvious failure to follow GAAP does not give rise to an inference of scienter.").[7]

### 3. Plaintiff Has Not Alleged A Prima Facie Violation Of The 1999 Quest Stock Incentive Plan

Plaintiff argues in the Opposition Memorandum that an inference of scienter should be drawn against Mr. Murdock from the fact that "[t]he backdated options

---

[7] Plaintiff's reliance on district court decisions from New York is inapposite because courts in the Ninth Circuit, unlike those in the Second Circuit, do not consider a defendant's presumed "duty to monitor" in determining scienter. *See Yanek v. Staar Surgical Co.*, 388 F. Supp. 2d 1110, 1125-26 (C.D. Cal. 2005) ("Plaintiffs assert that Defendants had a 'duty to monitor' their manufacturing facilities and thus 'were presumptively aware of deficiencies in STAAR's manufacturing.' Plaintiffs cite no Ninth Circuit law to support their proposition.") (citation omitted). Thus, *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825, 2008 WL 495547 (E.D.N.Y. Feb. 20, 2008), and *In re Openwave Sys. Sec. Litig.*, 528 F. Supp. 2d 236 (S.D.N.Y. 2007), do not support plaintiff's claims in this Court. Moreover, the *Comverse* and *Openwave* cases are factually distinguishable because both of those cases involved specific factual allegations that the options grants at issue actually violated the terms of the stock option plans. *See Comverse*, 2008 WL 495547, at *2 & n.4; *Openwave*, 528 F. Supp. 2d at 241.

violated the Plan and Mr. Murdock could not help but know that based on his personal role in connection with implementing Quest's stock option granting practices." *See* Opp. Mem. at 12. This claim arises out of the SAC's statement that "*all* of the options granted to Quest employees" were tax qualified incentive stock options that "would have an exercise price per share not to be less than one hundred percent (100%) of the fair market value per share of Quest common stock on the option grant date." SAC ¶ 88 (emphasis added). *But this statement is patently false, as the 1999 Plan makes clear.*

As demonstrated more fully by Defendants in their Memorandum of Points and Authorities in Support of Their Motion to Dismiss the SAC ("Def. Mem."), the 1999 Plan defined two types of stock options, Non-Statutory Stock Options ("NSOs") and Incentive Stock Options ("ISOs"), and significantly, only required a minimum fair market value exercise price for ISOs, and *not NSOs*. *See* 1999 Plan, Ex. C at 222, 224, 243;[8] *see also* Def. Mem. at 5-7. Moreover, the 1999 Plan allowed Quest broad discretion over the granting of NSOs, including over "the time or times when [stock option] awards are to be made." *See* 1999 Plan, Ex. C at 219; *see also* Def. Mem. at 5-7. The SAC does not and cannot allege that the options grants at issue involved ISOs. Since Quest and other public companies generally issue NSOs to their employees and not ISOs, the SAC does not state a prima facie violation of the 1999 Plan.[9]

Even assuming that Mr. Murdock signed unanimous written consents for options grants, there are *no* well-pled facts in the SAC demonstrating that Mr. Murdock knowingly approved the grant of a single ISO by way of unanimous written consent or otherwise (or that Mr. Murdock was aware that anyone else

---

[8] The 1999 Plan is attached as Exhibit C to the Appendix submitted with the Def. Mem.

[9] Plaintiff now claims, without factual support, that "*virtually*" every option grant was issued in violation of the Plan. *See* Opp. Mem. at 12 (emphasis added).

approved the granting of an ISO). There is thus no support for plaintiff's assertion that "Mr. Murdock could not help but know that [options were allegedly issued in violation of the plan] based on his personal role in connection with implementing Quest's stock option granting practices." Opp. Mem. at 12. Accordingly, the SAC has failed to establish a violation of the 1999 Plan, much less allege specific facts sufficient to support an inference of scienter as to Mr. Murdock.

### 4. The "Nature Of The Misconduct" Does Not Support Mr. Murdock's Scienter

Plaintiff's final argument, that an inference of scienter can be drawn from the fact that Mr. Murdock "had to have known" that the options were backdated because "Defendants were granted stock options" on the "most or second most favorable [dates] in the month" (Opp. Mem. at 18), is likewise defeated by the actual facts admitted by plaintiff in the SAC. Plaintiff concedes that Mr. Murdock was *never* granted backdated stock options. There is thus no basis for the conclusion that he had to have known of options backdating by virtue of his repeated receipt of favorably priced options.

## II. PLAINTIFF FAILS TO STATE A CLAIM AGAINST MR. MURDOCK FOR VIOLATING SECTION 20(a) OF THE SECURITIES AND EXCHANGE ACT OF 1934

In his Opening Memorandum, Mr. Murdock demonstrated that plaintiff's "control person liability" claim under Section 20(a) should be dismissed because, among other things, plaintiff failed to demonstrate how Mr. Murdock, an outside director at Quest, exercised "actual power or control over the primary violator [Quest]" with the required specificity. *See* Murdock Mem. at 15-17 (collecting authority); *see also Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1067 & n.13 (9th Cir. 2000) (dismissing Section 20(a) claim against director where there was "no showing that Wong was active in the day-to-day affairs of Everex or that he exercised any specific control over the preparation and release of the financial

statements").

Plaintiff acknowledges that it must demonstrate "that [Murdock] exercised actual power or control over [Quest]." Opp. Mem. at 20 (quoting *Howard*, 228 F.3d at 1065). And plaintiff recognizes that "Murdock may not have been active in the 'day to day' business affairs of Quest." *Id.* at 21. Plaintiff nevertheless argues that Mr. Murdock's lack of involvement at Quest is irrelevant because the case involves options backdating and therefore Mr. Murdock could have been aware of the issues even without involvement in the day-to-day affairs of the Company. *See id.* Plaintiff cites no authority to support a reduced standard for a Section 20(a) claim because the action involves allegations of options backdating, and this argument should be rejected. *See, e.g., In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d at 1147, 1163 (dismissing Section 20(a) claim in a "backdating options" case against three outside directors who signed corporate filings and were also members of corporation's audit and compensation committees).

Nor is there merit to plaintiff's argument that Mr. Murdock "had the power to control the affairs underlying the claims in the SAC" because his "approval was a requirement for the issuance of the backdated options under the Plan." *See* Opp. Mem. at 22. Contrary to this argument, the SAC does not allege that Mr. Murdock's "approval" was a "requirement" for the issuance of options at Quest. *See* SAC ¶¶ 17, 49, 90, 107. In any event, as explained above, the claims in the SAC are based on allegations that Quest improperly accounted for options grants, not that the grants themselves were improper or illegal. *See In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d at 1148, 1163 (dismissing Section 20(a) claims against outside director-compensation committee members that allegedly had the "authority to grant options to the members of the Executive Committee"); *In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217, 1241-43 (N.D. Cal. 1994); Murdock Mem. at 15-16 (collecting additional authority). Because the SAC does not demonstrate with specificity Mr. Murdock's "actual power or control" over Quest,

Plaintiff's Section 20(a) claim against Mr. Murdock should be dismissed.

## III. PLAINTIFF FAILS TO STATE A CLAIM AGAINST MR. MURDOCK FOR VIOLATION OF SECTION 20A OF THE SECURITIES AND EXCHANGE ACT OF 1934

The Opening Memorandum demonstrated that Plaintiff's insider trading claim under Section 20A of the Exchange Act should be dismissed because Plaintiff did not trade "contemporaneously" or "during the [same] period" with Murdock. *See* Murdock Mem. at 17-19 (demonstrating that "contemporaneous trading" requirement was not satisfied where Mr. Murdock sold the vast majority of his stock *more than two and a half years* before Plaintiff's first purchase of stock, in addition to selling a small number of shares close to *nine months* before Plaintiff's first purchase of Quest stock).[10]

In response, Plaintiff argues that Mr. Murdock's argument relies "primarily on authority that long predates the PSLRA." Opp. Mem. at 22-23. This simply ignores the controlling Ninth Circuit precedent decided seven years *after* the PSLRA cited in the Opening Memorandum, *Brody v. Transitional Hospital Corp.*, 280 F.3d 997 (9th Cir. 2002). In *Brody*, the Court rejected an insider trading claim that was based on a *two-month* lag between the purchase of stock by the parties because a "*two-month time period . . . exceeds any possible delineation of a contemporaneous trading period.*" *See id.* at 1002 (emphasis added). Hence, plaintiff's reliance on out-of-circuit district court decisions, *see* Opp. Mem. at 23-24, is irrelevant. Nor can plaintiff's Section 20A claim against Mr. Murdock be saved simply because plaintiff traded closer in time to a different defendant. Controlling Ninth Circuit authority forecloses Plaintiff's Section 20A claim. *See Brody*, 280 F.3d at 1002. Accordingly, plaintiff's insider trading claim against Mr.

---

[10] Moreover, the Section 20A claim against Mr. Murdock fails for the independent reason that the SAC fails to allege a Section 10(b) claim against Mr. Murdock and therefore fails to allege that he committed a predicate violation of the securities laws.

1 | Murdock should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant Jerry Murdock, Jr. respectfully requests that the Court dismiss the Second Amended Complaint with prejudice as to him and grant such further and other relief as the Court deems just and proper.

Dated: May 2, 2008                    DECHERT LLP


By:/s/ Richard J. Cutler
RICHARD J. CUTLER
FREDERICK G. HEROLD
2440 W. El Camino Real, Suite 700
Mountain View, CA 94040-1499
Telephone: (650) 813-4800
Facsimile: (650) 813-4848

ANDREW J. LEVANDER
(*admitted pro hac vice*)
MICHAEL Z. GOLDMAN
(*admitted pro hac vice*)
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 698-3500
Facsimile: (212) 698-3599

*Attorneys for Defendant Jerry Murdock, Jr.*

# CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2008, I electronically filed the following document(s) with the Clerk of the Court using the CM/ECF system, which will send an email notification of such filing to the attorney(s) of record listed below.

1. **REPLY MEMORANDUM IN SUPPORT OF DEFENDANT JERRY MURDOCK, JR.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT.**

| | |
|---|---|
| Blake Muir Harper | bmh@hulettharper.com |
| Sara P. Weber | sweber@hulettharper.com |
| Marian P. Rosner | mrosner@wolfpopper.com |
| Patricia I. Avery | pavery@wolfpopper.com |
| Chet B. Waldman | cwaldman@wolfpopper.com |
| Anthony E. Green | agreen@wolfpopper.com |
| Aaron F. Olsen | aolsen@cooley.com |
| Kenji F. Fukumura | kfukumura@cooley.com |

/s/ Richard J. Cutler
RICHARD J. CUTLER

DECHERT LLP
2440 W. El Camino Real, Suite 700
Mountain View, CA 94040-1499
Telephone: (650) 813-4800
Facsimile: (650) 813-4848
E-mail: richard.cutler@dechert.com