1  BLAKE MUIR HARPER, SBN: 115756
   e-mail:  bmh@hulettharper.com
2  SARAH P. WEBER, SBN: 239979
   e-mail: sweber@hulettharper.com
3  HULETT HARPER STEWART LLP
   525 B Street, Suite 760
4  San Diego, CA  92101
   Telephone:  (619) 338-1133
5  Facsimile:    (619) 338-1139

6

7  MARIAN P. ROSNER (admitted *pro hac vice*)
   e-mail:  mrosner@wolfpopper.com
8  PATRICIA I. AVERY (admitted *pro hac vice*)
   e-mail:  pavery@wolfpopper.com
9  CHET B. WALDMAN (admitted *pro hac vice*)
   e-mail: cwaldman@wolfpopper.com
10 ANTHONY D. GREEN (admitted *pro hac vice*)
   e-mail: agreen@wolfpopper.com
11 WOLF POPPER LLP
   845 Third Avenue
12 New York, New York 10022
   Telephone: (212) 759-4600
13 Facsimile:  (212) 486-2093
   Firm E-mail:      IRRep@wolfpopper.com

14 Attorneys for Lead Plaintiff

15              UNITED STATES DISTRICT COURT
              CENTRAL DISTRICT OF CALIFORNIA
16                 SOUTHERN DIVISION

17 | MIDDLESEX RETIREMENT | Case No. 06-06863-DOC(RNBx) |
18 | SYSTEM, on behalf of itself and all others similarly situated, | CLASS ACTION |
19 |                    | |
   | Plaintiff, | **MEMORANDUM OF POINTS** |
20 |                    | **AND AUTHORITIES IN SUPPORT** |
   | v. | **OF LEAD PLAINTIFF'S MOTION** |
21 |                    | **FOR CLASS CERTIFICATION** |
22 | QUEST SOFTWARE, INC., VINCENT C. SMITH, M. BRINKLEY | <u>Hearing</u>: |
   | MORSE, MICHAEL J. LAMBERT, | Date:    July 6, 2009 |
23 | DOUGLAS F. GARN, DAVID M. | Time:    8:30 a.m. |
   | DOYLE, JERRY MURDOCK, JR., | Judge:   Hon. David O. Carter |
24 | and KEVIN BROOKS, | Ctrm:    9D |
   |                    | |
25 | Defendants. | |

26

27

28

Doc. 161458

1

**TABLE OF CONTENTS**

2  TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

3  I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4  II    SUMMARY OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5  III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

6        A.    THE GENERAL STANDARDS FOR CLASS CERTIFICATION . . 3

7        B.    THIS ACTION SATISFIES ALL THE REQUIREMENTS
               OF RULE 23 AND SHOULD BE PERMITTED TO
8              PROCEED AS A CLASS ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . 5

9              1.    The Proposed Class Satisfies Fed. R. Civ. P. 23(a) . . . . . . . . 5

10                   a.    The Members Of The Class Are So Numerous That
                           Joinder Of All Members Is Impracticable . . . . . . . . . . . 5
11
12                   b.    There Are Common Questions Of Law And Fact . . . . . 6

13                   c.    Plaintiff's Claims Are Typical Of Those Of
                           The Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

14                   d.    Plaintiff Will Fairly And Adequately Protect
                           The Interests Of The Class . . . . . . . . . . . . . . . . . . . . . . 11
15
16             2.    The Requirements Of Rule 23(b)(3) Are Also Satisfied . . . . 13

17                   a.    Common Questions Of Law And Fact Predominate . . 13

18                   b.    A Class Action Is Superior To Any Other
                           Available Method For Resolving This Controversy . . 20

19             3.    The Court Should Appoint Wolf Popper As Class Counsel . 21

20  IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

## FEDERAL CASES

3

*In re Accredo Health, Inc., Sec. Litig.*,
   2006 U.S. Dist. LEXIS 97621 (W.D. Tenn. Mar. 7, 2006) . . . . . . . . . 17-18

4

*Alfus v. Pyramid Technology Corp.*,
   764 F. Supp. 598 (N.D. Cal. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

5

6

*In re Applied Micro Circuits Corp. Sec. Litig.*,
   2003 U.S. Dist. LEXIS 14492 (S.D. Cal. Jul. 10, 2003) . . . . . . . . . . . 12, 13

7

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir.2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

8

9

*Basic, Inc. v. Levinson*,
   485 U.S. 224, 108 S. Ct. 978, 99 L. Ed. 2d 194 (1988) . . . . . . . . . . . . . 4, 15

10

*Berti v. Videolan Technologies*,
   1998 U.S. Dist. LEXIS 18066 (W.D. Ky. June 10, 1998) . . . . . . . . . . . . 18

11

12

*Binder v. Gillespie*,
   184 F.3d 1059 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

13

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . 4, 6-7, 9, 13, 14, 19

14

15

*Cammer v. Bloom*,
   711 F. Supp. 1264 (D.N.J. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

16

*In re Computer Memories Sec. Litig.*,
   111 F.R.D. 675 (N.D. Cal. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

17

18

*In re Connetics Corp. Sec. Litig.*,
   2009 WL 1309739 (N.D. Cal. May 12, 2009) . . . . . . . . . . . . . . . . . . . 16, 17

19

*In re Cooper Companies Inc. Sec. Litig.*,
   254 F.R.D. 628 (C.D. Cal. 2009) . . . . . . . . . . . . . . . . . . . . . 3, 5, 7, 8, 20, 21

20

21

*In re CornerStone Propane Ptnrs*,
   2006 U.S. Dist. LEXIS 25819 (N.D. Cal. May 3, 2006) . . . . . . . . . . . . . 14

22

*Danis v. USN Commc'ns., Inc.*,
   189 F.R.D. 391, 395-97 (N.D. Ill. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . 10

23

24

*Deposit Guaranty Nat'l Bank v. Roper*,
   445 U.S. 326, 100 S. Ct. 1166, 63 L. Ed. 2d 427 (1980) . . . . . . . . . . . . . 20

25

*In re Direct General Corp. Sec. Litig.*,
   2006 U.S. Dist. LEXIS 56128 (M.D. Tenn. Aug. 8, 2006) . . . . . . . . . . . 17

26

27

*Dukes v. Wal-Mart, Inc.*,
   509 F.3d 1168 (9th Cir.2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

28

*In re Emulex Corp.*,
   210 F.R.D. 717 (C.D. Cal. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 20

*Epstein v. MCA, Inc.*,
   50 F.3d 644 (9th Cir.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Freedman v. Louisiana-Pacific Corp.*,
   922 F. Supp. 377 (D. Or. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 9, 10, 20

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 19

*In re Heritage Bond Litig.*,
   2004 U.S. Dist. LEXIS 15386 (C.D. Cal. Jul. 12, 2004) . . . . . . . . . . 11, 13

*Herrgott v. United States Dist. Court for the N. Dist. Of Cal. (In re Cavanaugh)*,
   306 F.3d 726 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Holloway v. Full Spectrum Lending*,
   2007 U.S. Dist. LEXIS 59934 (C.D. Cal. June 26, 2007) . . . . . . . 4, 5, 7, 10

*Huberman v. Tag-It Pacific Inc.*,
   2009 WL 485053 (9th Cir. Feb. 11, 2009) . . . . . . . . . . . . . . . . . . . . . 9-10

*In re IPO Sec. Litig.*,
   544 F. Supp. 2d 277 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re IPO Sec. Litig.*,
   227 F.R.D. 65 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re LDK Solar Sec. Litig.*,
   255 F.R.D. 519 (N.D. Cal. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Levine v. Skymall, Inc.*,
   2001 U.S. Dist. LEXIS 24705 (D. Ariz. May 22, 2001) . . . . . . . . . . . . . . 18

*In re Lucent Techs., Inc. Sec. Litig.*,
   307 F. Supp. 2d 633 (D.N.J 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Magma Design Automation, Inc. Sec. Litig.*,
   2007 WL 2344992 (N.D. Cal. Aug. 16, 2007) . . . . . . . . . . . . . . . . . . . . 3-4

*McPhail v. First Command Fin'l Planning Inc.*,
   247 F.R.D. 598 (S.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 12

*In re Memorex Sec. Cases*,
   61 F.R.D. 88 (N.D. Cal. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Micron Tech., Inc. Sec. Litig.*,
   247 F.R.D. 627 (D. Ida. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Middlesex Retirement System v. Quest Software Inc., et al.*,
    527 F. Supp. 2d 1164 (C.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Middlesex Retirement System v. Quest Software Inc., et al.*,
    2008 U.S. Dist. LEXIS 68419 (C.D. Cal. July 10, 2008) . . . . . . . . . 1, 8, 19

*In re Monster Worldwide, Inc. Sec. Litig.*,
    251 F.R.D. 132 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . 8-9, 11, 15, 19

*Nursing Home Pension Fund v. Oracle Corp.*,
    2006 U.S. Dist. LEXIS 94470 (N.D. Cal. Dec. 20, 2006) . . . . . . . 11, 13, 19

*Oscar Private Equity Investments v. Allegiance Telecom, Inc.*,
    487 F.3d 261 (5th Cir.2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Peil v. Speiser*,
    806 F.2d 1154 (3d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Plumbers & Pipe-fitters Local 572 Pension Fund v. Cisco Systems, Inc.*,
    2004 WL 5326262 (N.D. Cal. May 27, 2004) . . . . . . . . . . . . . . . . . . . . . . . 4

*In re: Ravisent Technologies, Inc. Sec. Litig.*,
    2005 U.S. Dist. LEXIS 6680 (E.D. Pa. Apr. 18, 2005) . . . . . . . . . . . . . . . 18

*In re Retek Inc., Sec. Litig.*,
    236 F.R.D. 431 (D. Minn. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Schaefer v. Overland Express Family of Funds*,
    169 F.R.D. 124 (S.D. Cal. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13, 14

*Schlagal v. Learning Tree Int'l*,
    1999 U.S. Dist. LEXIS 2157 (C.D. Cal. Feb. 23, 1999) . . . . . . . . . . . . . . 10

*Schwartz v. Harp*,
    108 F.R.D. 279 (C.D. Cal. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Scorpion Techs., Inc. Sec. Litig.*,
    1994 U.S. Dist. LEXIS 21413 (N.D. Cal. Aug. 1, 1994) . . . . . . . . . . . . . . 4

*Stevelman v. Alias Research Inc.*,
    2000 U.S. Dist. LEXIS 9115 (D. Conn. June 22, 2000) . . . . . . . . . . . . . . 18

*In re Terayon Communs. Sys.*,
    2003 U.S. Dist. LEXIS 2852 (N.D. Cal. Feb. 24, 2003) . . . . . . . . . . . . . . 11

*In re THQ, Inc. Sec. Litig.*,
    2002 U.S. Dist. LEXIS 7753 (C.D. Cal. Mar. 22, 2002) . . . . . . . . 4, 6, 7, 13

*In re Unioil Sec. Litig.*,
    107 F.R.D. 615 (C.D. Cal. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.*,
    122 F.R.D. 251 (C.D. Cal. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 14

Doc. 161458

*Wehner v. Syntex Corp.*,
   117 F.R.D. 641 (N.D. Cal. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Weinberger v. Thornton*,
   114 F.R.D. 599 (S.D. Cal. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Welling v. Alexy (In re Cirrus Logic Sec.)*,
   155 F.R.D. 654 (N.D. Cal. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## OTHER AUTHORITIES

*In re Brocade Sec. Litig.*,
   05-cv-02042-CRB, slip order (N.D. Cal. Oct. 12, 2007) . . . . . . . . . . . . . . . 8

## STATUES AND RULES

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  passim

   Fed. R. Civ. P. 23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  passim

   Fed. R. Civ. P. 23(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  passim

Private Securities Litigation Reform Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 19

Securities Exchange Act of 1934 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

   §10(b), 15 U.S.C. §78j(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

   §20(a), 15 U.S.C. § 78t(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

   §20A, 15 U.S.C. §78t-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

# I.    **INTRODUCTION**

Lead Plaintiff Middlesex Retirement System ("Middlesex") respectfully submits this Memorandum of Law in support of its Motion for an Order pursuant to Rule 23 certifying this case as a class action on behalf of the following class:

> All persons and entities who purchased Quest Software, Inc. ("Quest") common stock during the period November 9, 2001 through July 3, 2006, inclusive (the "Class Period") and who were damaged thereby (the "Class").[1]

Here, Plaintiff alleges that Defendants engaged in the backdating of the grant of stock options.  This Court has sustained Plaintiff's complaint twice already concerning allegations that, <u>inter alia</u>, Defendants did not properly account for issuing stock option grants at prices which were below fair market value on the actual date that the grant was approved, which caused, among other things, Quest's operating and net income to be overstated, and expenses understated, on financial statements issued by Quest during the Class Period.[2]  Plaintiff alleges that, as a result of Defendants' conduct, the price for Quest common stock was artificially inflated, and once the truth was revealed, the resulting market reaction and drop in price caused damage to members of the Class who purchased the common stock in reliance on the integrity of the market.  Further, Plaintiff alleges that certain of the Individual Defendants profited during the Class Period by trading on the basis of inside information concerning their fraud.

This action satisfies each of the four prerequisites for class certification under

---

[1]  Excluded from the Class are (i) Defendants; (ii) directors and officers of Quest; (iii) subsidiaries and affiliates of Quest; (iv) members of the immediate families of each of the Individual Defendants and Quest's officers and directors;(v) any entity in which any Defendant has a controlling interest; and (vi) the legal representatives, heirs, successors and assigns of any such excluded person.

[2]  *See Middlesex Retirement System v. Quest Software Inc.*, 527 F. Supp. 2d 1164 (C.D. Cal. 2007) and *Middlesex Retirement System v. Quest Software Inc.*, 2008 U.S. Dist. LEXIS 68419 (C.D. Cal. July 10, 2008), which opinions detail many of the facts and the background of this litigation.

1   Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of

2   representation. Thus, it is ideally suited for class action treatment pursuant to Rule

3   23(a). This action also satisfies the core requirements for certification under Rule

4   23(b)(3) – namely, predominance of common questions of law or fact and the

5   superiority of a class action as a method of adjudication. Middlesex purchased Quest

6   common stock during the Class Period and suffered damages as a result.[3] Plaintiff

7   overwhelmingly satisfies the requirements of Rule 23.

8   Plaintiff also seeks the confirmation of Lead Counsel, Wolf Popper LLP ("Wolf

9   Popper"), as Class Counsel. Plaintiff and his Court-appointed Lead Counsel have

10  fairly and adequately protected the interests of the Class thus far and will continue to

11  do so upon class certification.

12  **II.    SUMMARY OF FACTS**

13  This action is a securities class action on behalf of persons who purchased

14  Quest common stock during the Class Period of November 9, 2001 through July 3,

15  2006 (the date on which Quest issued a press release revealing, based on the

16  preliminary analysis of a "Special Committee" it created, that previous stock options

17  which were granted to Quest employees were improperly dated and, as a result, the

18  Company would restate its historical financial statements for the periods from 2000

19  through 2005 and for the quarter ended March 31, 2006). Plaintiff's Second Amended

20  Complaint alleges that Defendants engaged in the deliberate backdating of stock

21  option grants, and Quest has conceded that it knowingly backdated stock options.[4]

22  Plaintiff further alleges that Defendants simultaneously falsified records and

23  documents so as to avoid the proper accounting rules requiring the taking of

24  compensation expense for the options. *Consequently, every annual and quarterly*

25  *financial statement issued by Quest during its entire public history, from 1999 until*

---

[3] *See, e.g.*, the certification form attached to the accompanying Declaration of Thomas Gibson in Support of Motion for Class Certification ("Middlesex Decl.").

[4] Plaintiff asserts claims under §§10(b), 20(a), and 20A of the Securities Exchange Act of 1934.

1  *the fraud was partially revealed in mid-2006, misstated Quest's income and expenses.*

2  Every such financial statement Quest issued violated Generally Accepted Accounting

3  Principles ("GAAP").  And once Quest issued the restatement of its financial results

4  for 1999 through 2005, in December 2007 ("Restatement"), it became clear that *had*

5  *the truth been told by Quest, its income from 1999 through 2005 would have been*

6  *wiped out and, for those periods when it reported losses, those losses would have been*

7  *far worse.*

8       The  Class  members  purchased  Quest  stock  at  prices  that  were  artificially

9  inflated as a result of Defendants' false and misleading financials and other statements

10  issued during the Class Period.  Further, certain of the Defendants sold stock and

11  profited handsomely thereby.

12       As indicated above, Defendants' motions to dismiss already have been largely

13  denied (*see* note 2, *supra*).[5]

14  **III.  ARGUMENT**

15  **A.    THE GENERAL STANDARDS FOR CLASS CERTIFICATION**

16       District courts in this Circuit have consistently endorsed the use of class action

17  procedures to resolve securities fraud claims.  *See, e.g., In re Cooper Cos. Inc. Sec.*

18  *Litig.*, 254 F.R.D. 628, 632 (C.D. Cal. 2009) ("As the Ninth Circuit has so aptly stated,

19  securities fraud cases fit Rule 23 'like a glove.'"), *quoting Epstein v. MCA, Inc.*, 50

20  F.3d 644, 668 (9th Cir.1995); *In re Magma Design Automation, Inc. Sec. Litig.*, 2007

21

22  [5]  The Securities and Exchange Commission ("SEC") has reached similar conclusions to that of
Plaintiff.  In fact, the SEC filed a complaint in March 2009, against, and entered into settlements

23  with, Defendants Quest, Vincent C. Smith, and Kevin Brooks, as well as the Company's former
Chief Financial Officer, John Laskey ("Laskey"), regarding the same allegations raised by Plaintiff

24  here (Laskey is not a defendant due to the applicable statute of limitations).  The SEC charged these
Defendants with numerous securities violations for the significant wrongdoing which occurred at

25  Quest.  The SEC has settled with Quest, Smith, Brooks, and Laskey for, *inter alia*, fines, injunctions
against further violations of the securities laws, and a five-year suspension against Brooks from

26  appearing or practicing as an accountant before the SEC.  Quest, Smith, Brooks, and Laskey each
consented to the entry of a final judgment approving those settlements, and the Court recently

27  entered judgment against them on April 1, 2009. *See* accompanying Declaration of Patricia I. Avery
in support of Lead Plaintiff's Motion for Class Certification ("Avery Decl."), Exh. A at 4-69.

28

1  WL 2344992, at *1 (N.D. Cal. Aug. 16, 2007) ("As in almost all lawsuits by

2  shareholders of public companies, the investors in this case easily satisfy the

3  requirements of Rule 23", *quoting Weinberger v. Thornton*, 114 F.R.D. 599, 602 (S.D.

4  Cal. 1986)); *McPhail v. First Command Fin'l Planning Inc.*, 247 F.R.D. 598, 609

5  (S.D. Cal. 2007) ("Ninth Circuit decisions favor a liberal use of class actions to

6  enforce federal securities laws"); *Plumbers & Pipe-fitters Local 572 Pension Fund v.*

7  *Cisco Systems, Inc.*, WL 5326262, at *4 (N.D. Cal. May 27, 2004) (Ware, J.), *citing*

8  *to Basic, Inc. v. Levinson*, 485 U.S. 224, 108 S. Ct. 978, 99 L.Ed. 2d 194 (1988).

9       Indeed, in recognition of the significant role that class actions play in protecting

10  investors, the courts liberally construe the requirements of Rule 23 in favor of class

11  certification. *E.g. In re THQ, Inc. Sec. Litig.*, 2002 U.S. Dist. LEXIS 7753, at *8-9

12  (C.D. Cal. Mar. 22, 2002) ("the law in the Ninth Circuit is very well established that

13  the requirements of Rule 23 should be liberally construed in favor of class action cases

14  brought under the federal securities laws"); *In re Scorpion Techs., Inc. Sec. Litig.*,

15  1994 U.S. Dist. LEXIS 21413, at *10 (N.D. Cal. Aug. 1, 1994) ("the Ninth Circuit

16  favors a liberal use of class actions to enforce federal securities laws") (citations

17  omitted); *see also Blackie v. Barrack*, 524 F.2d 891, 903 (9th Cir. 1975)("[T]he

18  ultimate effectiveness of [the securities anti-fraud laws] may depend on the

19  applicability of the class action device.") (citation omitted).

20       "In determining whether a plaintiff has satisfied the requirements of *Rule 23*,

21  a court may not inquire into whether the plaintiff will prevail on the merits of the

22  case." *Holloway v. Full Spectrum Lending*, 2007 U.S. Dist. LEXIS 59934, at *6-7

23  (C.D. Cal. June 26, 2007).

24       As demonstrated below, Plaintiff has properly satisfied all of the prerequisites

25  of Rule 23(a), and the requirements of Rule23(b)(3).  Class certification is therefore

26  appropriate, and Plaintiff's motion should be granted.

27

28

**B.    THIS ACTION SATISFIES ALL THE REQUIREMENTS OF RULE 23 AND SHOULD BE PERMITTED TO PROCEED AS A CLASS ACTION**

    **1.    The Proposed Class Satisfies Fed. R. Civ. P. 23(a)**

        **a.    The Members Of The Class Are So Numerous That Joinder Of All Members Is Impracticable**

Under Rule 23(a)(1), the proposed class must be so numerous that joinder of all class members is "impracticable." Precise quantification of the number of class members is not necessary. Impracticability does not mean impossibility, but only the difficulty or inconvenience of joining all the members of the class into a single litigation. Indeed, "[a]lthough the numerosity requirement is satisfied based on the facts of each case, the requirement is generally satisfied where the class size exceeds forty (40) members." *Holloway*, 2007 U.S. Dist. LEXIS 59934, at *7. *See also Cooper*, 254 F.R.D. at 634 ("During the Class Period, Cooper had more than 36 million shares of stock outstanding. The Court certainly may infer that, when a corporation has millions of shares trading on a national exchange, more than 40 individuals purchased stock over the course of more than a year."); *Welling v. Alexy* (*In re Cirrus Logic Sec.*), 155 F.R.D. 654, 656 (N.D. Cal. 1994). Additionally, the exact size of the class need not be known so long as general knowledge and common sense indicate that the class is large. *Id.*; *see also Schwartz v. Harp*, 108 F.R.D. 279, 281-82 (C.D. Cal. 1985) ("A failure to state the exact number in the proposed class does not defeat class certification, and plaintiff's allegations plainly suffice to meet the numerosity requirement of Rule 23.") (citation omitted).

In this case, during the Class Period, Quest had more than 100 million shares of common stock outstanding[6] and well over 60 million shares of Quest common

---

[6] *See*, *e.g.*, Avery Decl., Exh. B at 70-80 (selected excerpts from Quest's Forms 10-K at various points during the Class Period indicating numbers of shares of common stock outstanding and that the Quest shares traded on the NASDAQ).

1    stock traded[7] on the NASDAQ National Market System.  (SAC ¶ 69)[8]  Numerous

2    institutions also held Quest shares at various times during the Class Period, *e.g.*,

3    Avery Decl. Exh. E at 117 (¶38) (and, hence many purchased shares).  In light of the

4    number of shares outstanding and traded during the Class Period, it is reasonable to

5    assume that the Class has thousands of members, at least.  *See In re THQ, Inc. Sec.*

6    *Litig.*, 2002 U.S. Dist. LEXIS 7753, at *9-10 (where proposed class consists of

7    potentially thousands of shareholders, common sense dictates the proposed class is

8    sufficiently large to make joinder impracticable).  Classes of this size are so numerous

9    as to make individual joinder extremely impracticable, if not logistically impossible,

10   especially because members are located throughout the country.  *Hanlon v. Chrysler*

11   *Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (certifying a nationwide class where class

12   members are dispersed throughout the country).  Accordingly, the proposed Class

13   satisfies the numerosity requirement of Rule 23(a).

14   **b.    There Are Common Questions Of Law And Fact**

15       The "commonality" provision of Rule 23(a)(2) requires that the allegations of

16   the complaint involve common questions of law or fact.  The SAC here describes a

17   common course of conduct, the hallmark of open-market securities fraud actions

18   certified as class actions under Rule 23.  As the Ninth Circuit stated in *Blackie*:

19           The overwhelming weight of authority holds that repeated

20           misrepresentations of the sort alleged here satisfy the

21           'common question' requirement. Confronted with a class of

22           purchasers allegedly defrauded over a period of time... that

23           the class is united by a common interest in determining

24

25   [7]  *See* Avery Decl., Exh. C at 81-103 (chart listing Quest's trading volume during the Class Period)

26   and Exh. D at 104-107 (Defendants' admission that chart accurately reflects trading volume in Quest
     stock); Exh. E at 115-16 (¶30) (millions of shares of Quest traded) and at 118 (¶44) (Quest common

27   stock listed and traded on the NASDAQ).

28   [8]  References to Plaintiff's Second Amended Complaint ("SAC") are made as "SAC ¶ __."

1          whether a defendant's course of conduct is in its broad

2          outlines actionable, which is not defeated by slight

3          differences in class members' positions . . . .

4    524 F.2d at 902 (citations omitted).

5          It is not necessary that all questions of fact or law be common, only that some

6    questions are common and that they predominate over individual issues. *See Hanlon*,

7    150 F.3d at 1019; *Holloway*, 2007 U.S. Dist. LEXIS 59934, at *8-9; *THQ*, 2002 U.S.

8    Dist. LEXIS 7753, at *11.  Even a single issue common to all members of the class

9    will fulfill the requirement of Rule 23(a)(2).  *Id.*; *Wehner v. Syntex Corp.*, 117 F.R.D.

10   641, 644 (N.D. Cal. 1987).  The commonality requirement is met, and a class action

11   thus particularly appropriate, where, as here, "alleged misrepresentations fit within a

12   common course of conduct" (i.e., defendants' concealment of the improper accounting

13   for stock option grants by the Company) and claims of misrepresentation arise from

14   "a common core of documents" (e.g., the Company's proxy statements, Form 10-Qs,

15   and Form 10-Ks).  *In re United Energy Corp. Solar Power Modules Tax Shelter Inv.*

16   *Sec. Litig.*, 122 F.R.D. 251, 254 (C.D. Cal. 1988).

17         In this case, every member of the Class was damaged as a result of the

18   accounting fraud and course of wrongful conduct perpetrated by Defendants.  This

19   common core of facts rendered Quest's financial statements false.  Just as in *Cooper*,

20   254 F.R.D. at 635, where a securities class was recently certified, Plaintiff here raises

21   the following common questions of fact and law: "(1) whether Defendants violated

22   the Securities and Exchange Act; (2) whether Defendants falsely represented material

23   facts; (3) whether the Individual Defendants caused [the defendant corporation] to

24   issue false and misleading statements during the Class Period; (4) whether Defendants

25   knew that their statements were false and misleading; and (5) whether the price of [the

26   defendant corporation's] publicly traded securities was artificially inflated."[9]  As the

27

28

_____

[9]  This Court's statement in denying Defendants' motion to dismiss on the grounds of scienter
(continued...)

1    *Cooper* Court stated, "These common questions form the core of a case for securities

2    fraud; they are also extremely similar to questions of law and fact that other courts

3    have found to be common in previous securities fraud cases.  If they chose to press

4    this action as individuals, all class members would still have to prove these questions.

5    Accordingly, the Court finds that there is sufficient commonality of questions of law

6    and fact to certify the class." *Id.*  These same questions, with the addition of the

7    common question as to the proper measure of damages, which is also present in this

8    case, were also presented by the plaintiff in the stock options backdating-related class

9    action, *In re Brocade Sec. Litig.*, 05-cv-02042-CRB (N.D. Cal.), in which the Court

10   certified the class without issuing an opinion on October 12, 2007.  *See* Avery Decl.,

11   Exh. F at 312-36 (Opening memorandum of points and authorities of plaintiff in

12   *Brocade*, filed on June 22, 2007) and at 337 (Oct. 12, 2007 Minute Opinion in

13   *Brocade* certifying class); *see also In re Monster Worldwide, Inc. Sec. Litig.*, 251

14   F.R.D. 132, 133-34 (S.D.N.Y. 2008) (stock options backdating class action that has

15   now settled, Plaintiff in this case was also certified as the class representative in

16   *Monster* and the Court found that, as here, similar common questions of law and fact

17   were presented).[10] Plaintiff also presents the additional common questions among the

18

19   [9] (...continued)
     illustrates that the issues of, for example, scienter and the impact of Defendants' backdating of stock

20   options on Quest's financial statements, will be common to the Class:

21       Defendants' knowledge of intentional backdating of stock options supports a strong
         inference that Defendants knew their SEC filings were misleading. Defendants knew

22       that they were backdating stock options and were certainly aware of the large profits
         they were reaping from those options. Defendants were also aware that the financial

23       statements they submitted to the SEC included figures, which were based in part, on
         those backdated stock options. Therefore, it is highly implausible that Defendants

24       were not aware that their prolonged practice of backdating stock options would have
         a material and misleading effect on their public financial statements.

25

26   *Middlesex Retirement System*, 2008 U.S. Dist. LEXIS 68419, at 15.

27   [10]    Nor do defendants contest that the following questions of law or fact are common to

28                                                                        (continued...)

1  members of the Class as to whether the Individual Defendants should be considered

2  "controlling persons" and whether those who engaged in insider selling should be

3  forced to disgorge their profits.

4       Thus, courts have consistently certified classes in securities fraud cases

5  involving similar common questions.

6       **c.    Plaintiff's Claims Are Typical Of Those Of The Class**

7       Subsection (3) of Rule 23(a) requires that the claims or defenses of the

8  representative parties are typical of the claims or defenses of the class. Fed. R. Civ.

9  P. 23(a)(3).    The purpose of the "typicality" requirement is to ensure that the

10 representative's interests align with those of the class.  *See Hanon v. Dataproducts*

11 *Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  Generally, claims are typical if they arise

12 from the same or similar injury, if the action is based on conduct which is not unique

13 to the named plaintiffs, and if other class members have been injured by the same or

14 similar course of conduct.  *Id.*; *see also Blackie*, 524 F.2d at 905.  Typicality does not

15 require that all members of the class be identically situated.  *See Hanlon*, 150 F.3d at

16 1020.  The Ninth Circuit also does not require the named plaintiff's injuries to be

17 "identical with those of the other class members, only that the unnamed class members

18 have injuries similar to those of the named plaintiffs and that the injuries result from

19 the same injurious course of conduct." *Armstrong v. Davis*, 275 F.3d 849, 869 (9th

20 Cir.2001).  "'Under [Rule 23(a)'s] permissive standards, representative claims are

21 'typical' if they are reasonably coextensive with those of absent class members; they

22 need not be substantially identical.'" *See Huberman v. Tag-It Pacific Inc.*, 2009 WL

23 ───────────────
[10] (...continued)

24       all members of the proposed class: (a) whether federal securities laws were violated
         by defendants' acts and omissions as alleged in the Complaint; (b) whether
25       defendants misrepresented material facts about the business, operations, and
         management of Monster including how the company granted and accounted for stock
26       options; (c) whether defendants participated in the course of conduct alleged in the
         Complaint; (d) whether defendants acted with scienter; and (e) whether members of
27       the class sustained damage as a result of defendants' conduct.

28 *Id.*

1    485053 (9th Cir. Feb. 11, 2009), *quoting Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168,

2    1184 (9th Cir. 2007); *see also Holloway*, 2007 U.S. Dist. LEXIS 59934 at *16,

3    *quoting Hanlon*, 150 F.3d at 1020; *Schlagal v. Learning Tree Int'l*, 1999 U.S. Dist.

4    LEXIS 2157, at *8-9, *13 (C.D. Cal. Feb. 23, 1999); *Schaefer v. Overland Express*

5    *Family of Funds*, 169 F.R.D. 124, 128-29 (S.D. Cal. 1995).

6        In short, the typicality requirement is satisfied "'when each class member's

7    claim arises from the same course of events, and each class member makes similar

8    legal arguments to prove the defendant's liability.'" *Holloway*, at *16-17, *quoting*

9    *Armstrong v. Davis*, 275 F.3d at 868. Accordingly, differences in the amount of

10   damage, the size or manner of purchase, the nature of the purchaser, and the date of

11   purchase are insufficient to defeat class certification. *See Schlagel*, 1999 U.S. Dist.

12   LEXIS 2157, at *13; *Alfus v. Pyramid Technology Corp.*, 764 F. Supp. 598, 606 (N.D.

13   Cal. 1991). In other words, typicality exists "even where factual distinctions exist

14   between the claims of the named representative and the other class members." *Danis*

15   *v. USN Commc'ns., Inc.*, 189 F.R.D. 391, 395-97 (N.D. Ill. 1999).

16       Plaintiff purchased Quest common stock during the Class Period. Plaintiff's

17   theories of liability are identical to those of the Class. It asserts the same claims as the

18   members of the Class, and Defendants will make the same arguments against Plaintiff

19   and the members of the Class. The elements of the securities claims alleged, including

20   liability, causation, and damages (and Defendants defenses thereto), are premised on

21   the same facts for both Plaintiff and the members of the Class. Here, Plaintiff was

22   damaged as a result of the accounting fraud committed by Defendants concerning

23   Quest's stock options granting practices. Every member of the Class was similarly

24   damaged by Defendants' false and misleading statements. Accordingly, the claims

25   of Plaintiff are typical of the Class.

26

27

28

d. **Plaintiff Will Fairly And Adequately Protect The Interests Of The Class**

Pursuant to Rule 23(a)(4), class representatives must "fairly and adequately protect the interests of the class."[11]  As this Court noted in *Holloway*, 2007 U.S. Dist. LEXIS 59934, at *18 "[t]he adequacy of representation inquiry depends upon two questions: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class? (Citation omitted)." *See also Nursing Home Pension Fund v. Oracle Corp.*, 2006 U.S. Dist. LEXIS 94470, at *12 (N.D. Cal. Dec. 20, 2006); *In re Heritage Bond Litig.*, 2004 U.S. Dist. LEXIS 15386, at *26-27 (C.D. Cal. Jul. 12, 2004); *In re Emulex Corp.*, 210 F.R.D. 717, 719-720 (C.D. Cal. 2002).  Plaintiff easily meets both requirements.

There is no antagonism or conflict of interest between Lead Plaintiff and the absent members of the Class.  Plaintiff, like the members of the proposed Class, sustained damages as a result of Defendants' unlawful acts which artificially inflated the price of Quest's common stock.

Plaintiff is the ideal class representative in this case.  Indeed, Middlesex was previously certified as a class representative in the options backdating class action in *In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. at 133-134.  (The *Monster* options backdating class action settled in 2008 for $47.5 million.)

Plaintiff has been actively participating in this Action, reviewed drafts of pleadings and other documents, attending the mediation session, and communicating with Lead Counsel, etc.  *See, e.g.*, Middlesex Decl., ¶7.  Plaintiff is in regular contact with Lead Counsel and the Chairman of Plaintiff even attended the full-day mediation session held among the parties in May 2009.  *Id.*

---

[11]  The Private Securities Litigation Reform Act ("PSLRA") did not change this standard.  *See Herrgott v. United States Dist. Court for the N. Dist. Of Cal. (In re Cavanaugh)*, 306 F.3d 726, 738-39 (9th Cir. 2002); *In re Terayon Commc'ns. Sys.*, 2003 U.S. Dist. LEXIS 2852, at *10-11 (N.D. Cal. Feb. 24, 2003).

1   Like all Class members, Plaintiff seeks to prove that Defendants violated the
2   federal securities laws and that Defendants' conduct caused damages that injured all
3   Class members. The interests of Plaintiff in "obtaining the maximum possible
4   recovery is therefore coextensive with the interests of members of the class." *In re*
5   *Applied Micro Circuits Corp. Sec. Litig.*, 2003 U.S. Dist. LEXIS 14492, at *14 (S.D.
6   Cal. July 10, 2003) (citation omitted).

7   There can be no doubt that Plaintiff is ably prosecuting this case and is
8   represented by qualified counsel.  Plaintiff has survived two disputed motions to
9   dismiss.  Defendants (and third party Deloitte & Touche) have produced hundreds of
10  thousands of documents which are in the process of being reviewed.  The parties have
11  had numerous meet and confers regarding discovery disputes and, indeed, have
12  successfully resolved many such disputes without the necessity of intervention by this
13  Court.

14  Lead Counsel, Wolf Popper, has submitted its firm resume and that of Liaison
15  Counsel, Hulett Harper, to the Court in support of the motion, which set forth their
16  extensive experience and expertise in prosecuting securities fraud actions in this
17  District and throughout the Country.[12]  *See McPhail*, 247 F.R.D. at 611 ("The Court
18  finds plaintiffs satisfy the first prong by submitting the resumes of the five law firms
19  currently representing the class... Having reviewed those resumes, the Court finds that
20  the named plaintiffs are represented by qualified counsel with extensive experience
21  in class action litigation.") The work of Lead Counsel in identifying the claims in this
22  case, their extensive experience in handling class actions, particularly complex
23  securities litigation, and their knowledge of the law is amply demonstrated not only
24  in the firm resume, but in the briefing before this Court on the motions to dismiss both
25  complaints by the various groups of defendants.  Lead Counsel has and will continue
26  to commit the resources necessary to represent the class.

27
28  [12] *See* Avery Decl., Exhs. G at 338-54 and H at 355-61, firm resumes of Lead Counsel, Wolf Popper
    LLP, and Liaison Counsel, Hullett Harper Stewart LLP, respectively.

1    Having shown that its interests are not antagonistic to those of the other

2    members of the Class and that its counsel are fully qualified to prosecute this action,

3    Plaintiff has clearly demonstrated its adequacy pursuant to Rule 23(a)(4).

4           **2.    The Requirements Of Rule 23(b)(3) Are Also Satisfied**

5           In addition to meeting the prerequisites of Rule 23(a), the present action also

6    satisfies the requirements of Rule 23(b)(3), which requires that proposed class

7    representatives establish that common questions of law or fact predominate over

8    individual questions and that a class action is superior to other available methods of

9    adjudication. *See In re Applied Micro Circuits Corp. Sec. Litig.*, 2003 U.S. Dist.

10   LEXIS 14492, at *8; *Nursing Home Pension Fund v. Oracle Corp.*, 2006 U.S. Dist.

11   LEXIS 94470, at *7; *In re Heritage Bond Litig.*, 2004 U.S. Dist. LEXIS 15386, at

12   *27-28.   Common questions of law and fact predominate in this case, and a class

13   action is the superior (if not the only) method available to fairly and efficiently litigate

14   this securities action. *See THQ*, 2002 U.S. Dist. LEXIS 7753, at *29-30; *Schaefer*, 169

15   F.R.D. at 130-31.

16          **a.    Common Questions Of Law And Fact Predominate**

17          Where a complaint alleges a "common course of conduct" of

18   misrepresentations, omissions and other wrongdoings that affect all members of the

19   class in the same manner, common questions predominate. *Blackie*, 524 F.2d at 902;

20   *THQ*, 2002 U.S. Dist. LEXIS 7753, at *30; *In re Computer Memories Sec. Litig.*, 111

21   F.R.D. 675, 684 (N.D. Cal. 1986). In determining whether common questions

22   predominate, the Court's inquiry should be directed primarily toward the issue of

23   liability.  *See Blackie*, 524 F.2d at 902; *In re Memorex Sec. Cases*, 61 F.R.D. 88, 103

24   (N.D. Cal. 1973). As discussed above, there are a host of questions common to the

25   members of the Class.  The central questions, for example, of liability, Defendants'

26   knowledge, causation, damages – in short, what Defendants did, who knew what, what

27   Defendants' conduct caused and the effect, i.e., damages – are what each and every

28

1   class member would have to establish.  The issues here are not only common, they are

2   critical to the case for every member of the Class and clearly predominate over

3   individual questions. *See*, *e.g.*, *Freedman v. Louisiana-Pacific Corp.*, 922 F. Supp.

4   377, 399-400 (D. Or. 1996); *Schaefer*, 169 F.R.D. at 130-31; *United Energy*, 122

5   F.R.D. at 256; *In re Unioil Sec. Litig.*, 107 F.R.D. 615, 622 (C.D. Cal. 1985) ("As

6   plaintiffs' claim is based on a common nucleus of misrepresentations, material

7   omissions and market manipulations, the common questions predominate over any

8   differences between individual class members with respect to damages, causation or

9   reliance.") (citations omitted).

10        Even demonstrating damages is a predominant common issue.  The only

11   individual issue may be the amount of each Class member's claim at the end of the

12   day.  The fact that class members may not be identically situated is not critical.

13   Common issues can predominate when a common course of conduct has been alleged

14   even though different members of the Class may have invested at different times and

15   may have been exposed to different misrepresentations and/or omissions committed

16   by various Defendants. *See In re Lucent Techs., Inc. Sec. Litig.*, 307 F. Supp. 2d 633,

17   640 (D.N.J 2004) ("Rule 23 does not require that all class members be identically

18   situated, just that substantial, common questions of either law or fact exist. Courts

19   look to the 'common nucleus of operative facts' to determine predominance of

20   common questions.") (citations omitted); *accord Blackie*, 524 F.2d at 902; *In re*

21   *CornerStone Propane Ptnrs*, 2006 U.S. Dist. LEXIS 25819, at *23 (N.D. Cal. May

22   3, 2006).

23        Further, Plaintiff's purchases of Quest do not raise any unique issues.  The last

24   day of the Class Period is July 3, 2006.  Defendants had been dribbling out partial

25   information over several months.  The truth began to emerge in May 2006, when

26   analysts stunned the market by revealing that research flagged Quest for having

27   unusually well-timed option grants.  (e.g., SAC ¶152.)  The market instantly reacted

28

1    and Quest's common stock plummeted 11.39%. (SAC ¶153.) On May 22, 2006,

2    Quest issued a press release announcing the formation of a Special Committee to

3    investigate the stock option grant dates prompted by the release of the information in

4    the Goldman Sachs report of May 19, 2006. (SAC ¶154.) In response to that press

5    release, Quest's common stock plummeted by an additional $0.84 per share, leaving

6    its stock down a total of 16.65% since the close of May 18, 2006. (SAC ¶155.)

7    Plaintiff sold on May 19 and 22, 2006. Plaintiff was just one of the hundreds, if not

8    thousands, of Class members who sold over 9 million shares of Quest stock on May

9    19, 2006 and over 2.3 million shares of Quest stock on May 22, 2006.

10    Plaintiff had no inside information during the Class Period and relied upon the

11    information presented to the public, and thus, is entitled to the presumption of fraud-

12    on-the-market reliance just like the other Class members. *See In re Monster*

13    *Worldwide*, 251 F.R.D. at 134 ("[I]n a case, like this, where plaintiff's theory of

14    liability is premised on the 'fraud on the market' presumption that 'an investor's

15    reliance on any public material misrepresentations ... may be presumed for purposes

16    of a Rule 10b-5 action.'") (internal citations omitted). The SAC and this motion more

17    than adequately demonstrate that there are common issues, not individual issues of

18    reliance, and that the fraud-on-the-market presumption of reliance applies. The fraud-

19    on-the-market presumption is "based on the hypothesis that, in an open and developed

20    securities market, the price of a company's stock is determined by the available

21    material information regarding the company and its business . . . . Misleading

22    statements will therefore defraud purchasers of stock even if the purchasers do not

23    directly rely on the misstatements . . . ." *Basic Inc. v. Levinson*, 485 U.S. at 241-42,

24    108 S. Ct. 978, 99 L. Ed. 2d 194, *quoting Peil v. Speiser*, 806 F.2d 1154, 1160-61 (3d

25    Cir. 1986).

26    Here, Lead Plaintiff will ultimately rely on common legal and factual arguments

27    to prove the reliance element through the fraud on the market theory at trial.

28

1    However, a comprehensive showing of market efficiency is not required at the class

2    certification stage.  Indeed, the various factors looked at in considering whether a

3    market is efficient, *e.g.*, *Binder v. Gillespie*, 184 F.3d 1059, 1064-65 (9th Cir. 1999)

4    (referencing factors which the lower court had found helpful from *Cammer v. Bloom*,

5    711 F. Supp. 1264, 1286-87 (D.N.J. 1989)), arose in the summary judgment context,

6    not class certification.  Nevertheless, even if they were applicable here, Plaintiff

7    already more than satisfies these factors.  Such factors include, for example:  the

8    existence of sufficient trading volume during the class period (for example, average

9    weekly trading of 1-2%); that securities analysts follow the company's stock; the

10   existence of market makers; the company's eligibility to file an S-3 Registration

11   Statement; and that there are empirical facts showing a cause and effect relationship

12   between unexpected corporate events and a response in the market for the stock.

13   *Binder*, 184 F.3d at 1065, citing *Cammer*, 711 F. Supp. at 1286-87.[13]

14        Further, Plaintiff has retained an expert who will testify at trial to the fact that

15   Quest traded in an efficient market.  *See In re Connetics Corp. Sec. Litig.*, 2009 WL

16   1309739, at *6 (N.D. Cal. May 12, 2009) ("[L]ead plaintiff need show only that it

17   traded on an efficient market.  Here, Lead Plaintiff cites the declaration of expert [],

18   who opines that the market for Connetics common stock was efficient during the class

19   period... lead plaintiff has met its burden at this stage in the litigation by

20   demonstrating that it traded on an efficient market and is therefore entitled to the

21   presumption of reliance.") (internal references and citations omitted).  Plaintiff here

22   submits the Expert Report of Professor Steven P. Feinstein, PH.D., CFA on Market

23   Efficiency, attached as Exh. E to the Avery Declaration.  Professor Feinstein opines,

24   supported by comprehensive statistical analyses, that "Quest stock traded in an

25

26   _____

     [13]  It should be noted, however, that in *Binder*, the stock was traded exclusively in the OTC market

27   on "pink sheets" during the relevant time period, *Id.*, at 1065, and that afterwards when the stock
     traded on the Boston Stock Exchange, there was no indication it was an inefficient market, but there

28   was no causation, and so no claim, *Id.*  Further, the issue arose in a summary judgment context.

1   efficient market throughout the Class Period."[14]  Avery Decl., Exh. E at 111 (¶15) and

2   at 134 (¶121).[15]

3       As amply demonstrated in Professor Feinstein's report, the facts here irrefutably

4   demonstrate that Quest traded in an efficient market:  there was trading volume on a

5   national exchange (i.e., the NASDAQ National Market System [see SAC, ¶71c.];[16] the

---

[14]  Professor Feinstein summarizes as follows (Avery Decl., Exh. E at 133-34 (¶¶118-121):

> 118.  Over the course of the Class Period, Quest was a large company whose stock was listed and actively traded on the NASDAQ exchange. Numerous market makers provided liquidity and fostered the efficiency of the market for Quest stock. The Company was widely covered by securities analysts and the news media. Quest filed an S-3 registration prior to the Class Period and was eligible to file S-3 registrations during the Class Period. Trading volume was consistently high, both in terms of the absolute number of shares traded daily and in terms of the percent of outstanding shares traded weekly.
>
> 119.  The statistical results from event study analysis, an F-test, and an Ansari-Bradley test prove that there was a cause-and-effect relationship between material information and movements in the stock price.
>
> 120.  Quest stock satisfied all of the *Cammer* factors, which consistent with financial economic principles and empirical research indicate market efficiency.
>
> 121.  Given these facts, I conclude that Quest stock traded in an efficient market over the course of the Class Period.

[15]  Additionally, loss causation need not be proven at the class certification stage to benefit from the fraud-on-the-market presumption.  *See In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 530-31 (N.D. Cal. 2009), rejecting the minority approach mentioned in the Fifth Circuit (which Defendants might cite) in *Oscar Private Equity Investments v. Allegiance Telecom, Inc.*, 487 F.3d 261 (5th Cir. 2007), which injects an analysis of the merits at the class certification stage; *see also Connetics Corp.*, 2009 WL 1309739, at *6 ("District courts in this district have rejected the Fifth Circuit's requirement that plaintiffs prove loss causation at class certification."); *In re Micron Tech., Inc. Sec. Litig.*, 247 F.R.D. 627, 634 (D. Idaho 2007) ("*Oscar* has not been considered or adopted by the Ninth Circuit. It is unlikely that it would be adopted in this Circuit because it misreads *Basic*.").

[16]  The NASDAQ National Market System is an efficient market.  *E.g.*, *Cammer*, 711 F. Supp. at 1292 (citation omitted); *see also In re IPO Sec. Litig.*, 544 F. Supp. 2d 277, 297 (S.D.N.Y. 2008) ("the federal courts are unanimous in their agreement that a listing on the NASDAQ or a similar national market is a good indicator of efficiency"); *In re Direct General Corp. Sec. Litig.*, 2006 U.S. Dist. LEXIS 56128, at *20 (M.D. Tenn. Aug. 8, 2006) (granting class certification, "Nasdaq, [] is a recognized efficient market."); *In re Accredo Health, Inc., Sec. Litig.*, 2006 U.S. Dist. LEXIS 97621, at *25-26 (W.D. Tenn. Mar. 7, 2006) (trading on NASDAQ is indicia of market efficiency, "based on this court's research, the overwhelming case authority holds that securities listed on the NASDAQ trade in an efficient market.") (citations omitted); *In re Retek Inc., Sec. Litig.*, 236 F.R.D. 431, 436 (D. Minn. 2006) (granting class certification; trading on NASDAQ indicative of market
(continued...)

1    average trading volume during the Class Period was almost a million shares daily (and

2    ranged as high as over 9 million shares on a single day) and weekly trading volume

3    greatly exceeded 1-2% of the float throughout the class period, *see* Avery Decl., Exh.

4    E at 115-16 (¶¶30-33); the stock was followed by dozens of brokerage/research

5    firms;[17] Quest filed an S-3 registration statement (on September 26, 2000) and an

6    amendment to the S-3 (on October 20, 2000), prior to the class period and was eligible

7    to file S-3 registration statements during the Class Period *see* Avery Decl., Exh. E at

8    119-20 (¶¶50-55); and the objective facts show a cause and effect relationship

9    between corporate events and financial releases and a response thereto in the market

10   for Quest (e.g., the sudden drops in Quest's stock price following reports about

11   backdating at Quest and appointment of Special Committee to investigate backdating

12   and additional revelations concerning and then detailing the consequences of its stock

13   options backdating), *see* Avery Decl., Exh. E at 120-33 (¶¶56-117).   Therefore,

14   Plaintiff is entitled to the fraud on the market presumption and individual issues do

15   not predominate.  Indeed, evidence of market efficiency, as well as any rebuttal by

16

17   [16] (...continued)

18   efficiency for a stock); *In re: Ravisent Technologies, Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 6680,
     at *19 (E.D. Pa. Apr. 18, 2005) (Re-affirming previous grant of class certification, noting "Plaintiffs

19   are entitled to a presumption of reliance under a "fraud on the market" theory because during the
     class period, Ravisent common stock was listed on NASDAQ, a highly efficient market"); *In re IPO*

20   *Sec. Litig.*, 227 F.R.D. 65, 107 n.324 (S.D.N.Y. 2004) ( "listing on NASDAQ or a similar national
     market is a good indicator of efficiency"); *Levine v. Skymall, Inc.*, 2001 U.S. Dist. LEXIS 24705,

21   at *13 (D. Ariz. May 22, 2001) (granting class certification, trading on NASDAQ contributes to
     finding that the market is efficient.); *Stevelman v. Alias Research Inc.*, 2000 U.S. Dist. LEXIS 9115,

22   at *12-13 (D. Conn. June 22, 2000) (NASDAQ is an efficient market; "For stocks like Alias that

23   trade on a listed exchange such as NASDAQ, this reliance element of a 10b-5 cause of action is
     presumed."); *Berti v. Videolan Technologies*, 1998 U.S. Dist. LEXIS 18066, at *8 n.4 (W.D. Ky.

24   June 10, 1998) ("The Court takes judicial notice of the fact that the NASDAQ is an efficient stock

25   market").

26   [17]  During all or part of the Class Period, well over 30 research firms followed Quest, including, for
     example: RBC Capital Markets; Credit Suisse First Boston; JP Morgan Securities; Morgan Stanley;

27   Merrill Lynch; Deutsche Bank Research; Goldman Sachs; Smith Barney Citigroup; USB Piper
     Jaffray; Prudential; Wachovia Securities; Janney Montgomery Scott; CIBC World Markets; and

28   Stifel Nicolaus and Company.  *See*, *e.g.*, Avery Aff., Exh. E at 116-17 (¶¶34-37).

1    Defendants later in the litigation, will also be common to the Class.

2        As in *Monster Worldwide*, 251 F.R.D. at 137, this case is not "remotely

3    analogous to those where reliance arguments have defeated motions for class

4    certification or precluded plaintiffs from relying on the *Basic* presumption" and, "none

5    of the public information regarding options backdating is so blatant and so directly

6    addressed to" Plaintiff "as to be facially sufficient to preclude [Plaintiff] from relying

7    on the *Basic* presumption for purposes of this motion for class certification." Also,

8    as in *Monster Worldwide*, the SAC has been sustained by this Court and was found

9    to present material misrepresentations such that "there is a sufficient showing of

10   materiality as to warrant the application of *Basic*." *See Middlesex Ret. Sys. v. Quest*

11   *Software, Inc.*, 2008 U.S. Dist. LEXIS 68419, at *20-21 ("Defendants either knew or

12   were deliberately reckless in not knowing that their accounting procedures would

13   render Quest's financial statements materially misstated.").

14       Additionally, although Plaintiff is an institutional investor, this Circuit has

15   made clear that its sophistication is irrelevant. *See Hanon v. Dataproducts Corp.*, 976

16   F.2d at 506 ("'[d]ifferences in sophistication, etc., among purchasers have no bearing

17   in the impersonal market fraud context because dissemination of false information

18   necessarily translates through market mechanisms into price inflation which harms

19   each purchaser identically'") (citing the seminal case of *Blackie v. Barrack*, 524 F.2d

20   at 905); *Nursing Home Pension Fund v. Oracle Corp.*, 2006 U.S. Dist. LEXIS 94470.

21   Further, the PSLRA encourages sophisticated investors to serve as class

22   representatives.

23       Here, the false and misleading statements disseminated by Defendants damaged

24   all Class members. As such, common issues of law and fact clearly predominate over

25   any individual issues.

26

27

28

**b. A Class Action Is Superior To Any Other Available Method For Resolving This Controversy**

Rule 23(b)(3) also requires that class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The superiority inquiry involves a determination as to whether the objectives of the class action procedure will be achieved in the particular case and a comparison of alternative mechanisms of dispute resolution. *See Hanlon*, 150 F.3d at 1022.

Here, class certification promotes judicial efficiency by permitting common claims and issues to be tried once with a binding effect on all parties. Likewise, certification facilitates settlement by permitting agreements which may potentially bind all parties. Most importantly, class certification is the only way to afford relief to those whose claims are too small to justify individual lawsuits. *See Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 339, 100 S. Ct. 1166, 63 L. Ed. 2d 427 (1980). In *Hanlon*, the Ninth Circuit concluded that:

> [e]ven if efficacious, [separate actions] . . . would prove uneconomic for potential plaintiffs. . . . litigation costs would dwarf potential recovery. In this sense, the proposed class action is paradigmatic. A fair examination of alternatives can only result in the apodictic conclusion that a class action is the clearly preferred procedure . . .

150 F.3d at 1023. In a fraud-on-the-market case like this one, where securities fraud claims are based on misstatements leading to identical claims shared by numerous members of a class, "a class action is superior to individual litigation for adjudicating the controversy." *In re Emulex Corp.*, 210 F.R.D. at 721; *see also Cooper*, 254 F.R.D. at 641-42 ("District courts have consistently recognized that the common liability issues involved in securities fraud cases are ideally suited for resolution by way of a

1    class action.").

2        There is no interest of class members in individually controlling the prosecution

3    of separate actions.  It is certainly desirable to concentrate the litigation of the claims

4    in this forum where Quest and many of the witnesses and documents are located.  And

5    Plaintiff knows of no difficulty in the management of this litigation that would

6    preclude its maintenance as a class action.    Management difficulties are of

7    significance only if they make the class action less fair and efficient than other

8    available techniques.  *See Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d

9    1301, 1304-05 (9th Cir. 1990).  Management problems are rarely a significant concern

10   in securities actions.  *Cooper*, 254 F.R.D. at 642 ("Finally, the Court does not foresee

11   any great difficulties in managing this securities fraud case as a class action.  The

12   securities laws are not overly technical or complex.  The individual questions of law

13   and fact are limited in number.  They certainly do not predominate over the common

14   questions of law and fact.  Counsel for both the class and Defendants are highly

15   experienced and skilled.  The Court is confident that it can manage this class action

16   in a fair and efficient manner.").  This action clearly lies in the mainstream of class

17   actions alleging violations of the securities laws which satisfy the "superiority"

18   requirement of Rule 23(b)(3).  The class action device is the only available mechanism

19   that provides an adequate remedy to persons injured by Defendants' fraudulent

20   conduct.  Any notion that such claims could be litigated individually is wholly

21   unrealistic and contrary to the intent and purpose behind the enactment of Rule 23.

22   Thus, the class action device is, without question, the superior method for adjudicating

23   the claims of the Plaintiff and of all those similarly situated.

24        **3.    The Court Should Appoint Wolf Popper As Class Counsel**

25        Plaintiff also seeks to have the Court confirm Lead Plaintiff's choice of Wolf

26   Popper as Class Counsel and for Hulett Harper to serve as Liaison Counsel.  Wolf

27   Popper was appointed Lead Counsel and Hulett Harper was appointed Liaison

28

1  Counsel by this Court on January 22, 2007.  Wolf Popper, as indicated *supra* at 12-13,

2  has fairly and adequately represented the interests of the Class since the

3  commencement of this litigation and will continue to do so.  The work of Lead

4  Counsel in identifying the claims in this case, their extensive experience in handling

5  class actions, particularly complex securities litigation, and their knowledge of the law

6  is amply demonstrated not only in the firm resume, but also in the complaints filed in

7  this litigation, in the comprehensive briefing before this Court on the motions to

8  dismiss both complaints by the various groups of defendants, as well as the success

9  (by counsel for both sides attempting to work cooperatively) in resolving many

10  discovery disputes without the necessity of Court intervention.  Lead Counsel has and

11  will continue to commit the resources necessary to represent the class.  Accordingly,

12  the Court should confirm Wolf Popper as Class Counsel and Hulett Harper as Liaison

13  Counsel.

14  **IV.  <u>CONCLUSION</u>**

15      For the foregoing reasons, Plaintiff requests entry of an Order certifying this

16  action as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) and appointing

17  Plaintiff as representative of the Class, Wolf Popper as Class Counsel, and Hulett

18  Harper as Liaison Counsel.

19  Dated: June 12, 2009              Respectfully submitted,

20                                    WOLF POPPER LLP

21
                                      By   /s/ Patricia I. Avery
22                                    Marian P. Rosner
                                      Patricia I. Avery
23                                    Chet B. Waldman
                                      Anthony D. Green
24                                    845 Third Avenue
                                      New York, New York 10022
25                                    Telephone: (212) 759-4600
                                      Facsimile:  (212) 486-2093
26                                    E-mail:     IRRep@wolfpopper.com

27                                    *Lead Counsel*

28

1  |  HULETT HARPER STEWART LLP
2  |  BLAKE MUIR HARPER
   |  SARAH P. WEBER
3  |  525 B Street, Suite 760
   |  San Diego, CA  92101
4  |  Telephone:   (619) 338-1133
   |  Facsimile:    (619) 338-1139
5  |  E-mail: bmh@huletthharper.com

*Liaison Counsel*

1    <u>**PROOF OF SERVICE**</u>

2    *Middlesex Retirement Sys. v. Quest Software Inc., Case No.06-06863-DOC(RNBx)*

3        I, the undersigned, declare under penalty of perjury that I am over the age of

4    eighteen years and not a party to this action.  I am employed with Wolf Popper LLP,

5    whose offices are located in the City and State of New York.  My business address is:

6    845 Third Avenue, New York, NY  10022.

7        That on June 12, 2009, I served the foregoing document(s) entitled:

8    **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD**

9    **PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** in this action, in

10   particular on the following counsel for Defendant:

| | | |
|---|---|---|
| COOLEY GODWARD KRONISH LLP<br>Koji F. Fukumura<br>4401 Eastgate Mall<br>San Diego, CA 92121-1909 | DECHERT LLP<br>Richard J. Cutler<br>Frederick G. Herold<br>Robert A. Robertson<br>4675 MacArthur Court<br>Suite 1400<br>Newport Beach, CA 92660-8842<br>*-and-*<br>Andrew J. Levander<br>Michael Z. Goldman<br>30 Rockefeller Plaza<br>New York, NY 10112 | SHEPPARD MULLIN, RICHTER & HAMPTON LLP<br>Robert D. Rose<br>Vincent J. Brown<br>501 West Broadway, 19th Floor<br>San Diego, CA 92101-3598 |
| STROOCK AND STROOCK AND LAVAN LLP<br>Zulaikha Aziz<br>Wrenn E. Chais<br>Cary J. Economou<br>2029 Century Park East<br>Los Angeles, CA 90067 | MUNGER TOLLES AND OLSON<br>Shoshana E. Bannett<br>Brad D. Brian<br>Luis Li<br>355 South Grand Avenue<br>Los Angeles, CA 90071 | LATHAM AND WATKINS LLP<br>Terri Lea Lilley<br>355 South Grand Avenue<br>Los Angeles, CA 90071-1560 |

    BY ELECTRONIC MEANS:  I caused the above-referenced document to be uploaded onto the ECF system for the United States District Court, Central District of California, Southern Division.

1        I declare under penalty of perjury under the laws of the United States and the

2    State of California that the foregoing is true and correct.  Executed on June 12, 2009,

3    at New York, New York.

4

5                                Anthony D. Green

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMO OF P's & A's IN SUPPORT OF PLTF'S MTN FOR CLASS CERTIFICATION
Case No. 06-06863-DOC(RNBx)                    -25-