UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES--GENERAL

Case No.  **CV 06-6863-DOC (RNBx)**                              Date: **July 08, 2009**

Title:  **Middlesex Retirement System v. Quest Software, Inc., et al.**

**DOCKET ENTRY**

PRESENT:

**HON. ROBERT N. BLOCK, UNITED STATES MAGISTRATE JUDGE**

| Kerri Glover | n/a |
|---|---|
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS:             ATTORNEYS PRESENT FOR DEFENDANTS:
     None present                                              None present

**PROCEEDINGS:  (IN CHAMBERS)**

## Plaintiff's Motion to Compel Production by Quest Software

It appearing to the Court from the Joint Stipulation ("Jt Stip") that there are four legal issues in dispute, the Court now rules as follows with respect to those legal issues.

Issue No. 1: Whether communications between Quest and the Government (i.e., the SEC and/or the USAO) may be withheld on the ground of the "settlement privilege"

According to plaintiff, this issue relates to the documents that are referenced in the Quest Privilege Log dated November 12, 2008 by "control numbers" 3253-3281 and 3284,[1] and to the first ten documents referenced in Quest's Second Supplemental Privilege Log dated March 26, 2009.  (See Jt Stip at 4).  However, according to Quest, it already has produced Document 3284 (see Jt Stip at 46 n.14) and the tenth document on the Second Supplemental Privilege Log (see Jt Stip at 54 n.22).  Therefore, the propriety of Quest's invocation of the "settlement privilege" to justify the withholding of those documents has been rendered moot.[2]

---

[1]     As Quest points out, Document Nos. 3281 and 3284 also were withheld on the ground of attorney work product.

[2]     The Court notes that plaintiff maintains that "it cannot independently verify that these documents [that Quest maintains it already has produced] have been

(continued...)

MINUTES FORM 11                                                        Initials of Deputy Clerk     klg
CIVIL-GEN

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES--GENERAL

Case No.: SACV 06-6863-DOC (RNBx)　　　　　　　　　　　　　　　　July 10, 2009
**Middlesex Retirement System v. Quest Software, Inc., et al.**　　　　　　　　Page 2

-------------------------------------------------------------------------------------------------------------------

     After duly considering the cases upon which both sides are relying in support of their respective positions, the Court has decided to adopt the view of those courts that have held that there is no federal settlement privilege that may be invoked to prevent the discovery of written communications made during the course of settlement discussions. See, e.g., Board of Trustees of Leland Stanford Junior University v. Tyco Intern. Ltd., 253 F.R.D. 521, 523 (C.D. Cal. 2008); JZ Buckingham Invest. LLC v. United States, 78 Fed. Cl. 15, 22-24 (Fed. Cl. 2007); Matsushita Elec. Indus. Co., Ltd. v. Mediatek, Inc., 2007 WL 963975, *2-*4 (N.D. Cal. March 30, 2007); In re Subpoena Issued to Commodity Futures Trading Commission, 370 F. Supp. 2d 201, 209-12 (D.D.C. 2005).

     As pointed out in those decisions, Fed. R. Evid. 408 on its face is directed to the admissibility of evidence at trial and does not limit discovery. See also 2 Weinstein's Federal Evidence § 408.07 at 408-26 (2005) (noting that "a party is not allowed to use Rule 408 as a screen for curtailing his adversary's right of discovery."). Although the Sixth Circuit recognized a settlement privilege pursuant to Fed. R. Evid. 501 in Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc., 332 F.3d 976, 980 (6th Cir. 2003), one of the two cases upon which Quest principally is relying, the Court concurs with the Magistrate Judge in Matsushita that the Sixth Circuit decision does not reflect the detailed analysis required for the creation of a new federal privilege under Jaffe v. Redmond, 518 U.S. 1, 9, 116 S. Ct. 1923, 135 L. Ed. 2d 337 (1996). Such a detailed analysis is reflected in the Commodity Futures Trading Commission case, where the District Judge declined to follow Goodyear Tire & Rubber Co. and instead concluded that a federal settlement privilege does not exist. See In re Subpoena Issued to Commodity Futures Trading Commission, 370 F. Supp. 2d at 208-12.

     The other case upon which Quest principally is relying is Folb v. Motion Picture Industry Pension & Health Plans, 16 F. Supp. 2d 1164 (C.D. Cal. 1998), aff'd, 216 F.3d 1082 (2000). There, the District Judge did conduct a detailed analysis before concluding that a "mediation privilege" existed. However, the "mediation privilege" recognized in

---

     [2](...continued)
produced." Accordingly, to the extent that the four disputed issues relate to the production of any documents that Quest maintains it already has produced, Quest is ordered to produce those documents again.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES--GENERAL

Case No.: SACV 06-6863-DOC (RNBx)                                                            July 10, 2009
**Middlesex Retirement System v. Quest Software, Inc., et al.**               Page 3

---

Folb expressly was limited "only to information disclosed in conjunction with mediation proceedings with a neutral." See id. at 1180. As the District Court observed in Molina v. Lexmark Intern., Inc., 2008 WL 4447678,*8 n.59 (C.D. Cal. Sept. 30, 2008):

> "In limiting the privilege it recognized in this manner, the Folb court distinguished between mediation, which is not addressed in the Federal Rules of Evidence, and settlement negotiations, which are governed by Rule 408 of the Federal Rules of Evidence. See Fed. R. Evid. 408 (evidence of settlement offers and compromise negotiations is not admissible 'to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction'); Folb, 16 F. Supp. 2d at 1180 ('Any interpretation of Rule 501 must be consistent with Rule 408. To protect settlement communications not related to mediation would invade Rule 408's domain; only Congress is authorized to amend the scope of protection afforded by Rule 408. Consequently, any post-mediation communications are protected only by Rule 408's limitations on admissibility.')."

Since the written communications at issue here are not settlement communications related to mediation proceedings (or even settlement proceedings) with a neutral, neither Folb nor the other cases cited by Quest as following Folb have any applicability to their discoverability.

The Court therefore finds and concludes that the answer to the question posed by Issue No. 1 is no.

> Issue No. 2: Whether the disclosure of documents to the Government (i.e., the SEC and/or the USAO) constituted a waiver of work product protection for those documents[3]

---

      [3]      The Court notes that plaintiff also has questioned whether Quest's letters to the Government even qualify as work product insofar as they were created with the

(continued...)

MINUTES FORM 11                                                                           Initials of Deputy Clerk     klg
CIVIL-GEN

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES--GENERAL

Case No.: SACV 06-6863-DOC (RNBx)                                              July 10, 2009
**Middlesex Retirement System v. Quest Software, Inc., et al.**                Page 4

---

      According to plaintiff, this issue relates to the documents that are referenced in the Quest Privilege Log dated November 12, 2008 by "control numbers" 3281-3284 and 3329.[4]  (See Jt Stip at 8). However, according to Quest, it already has produced Documents 3283 and 3284. (See Jt Stip at 46 n.14). Therefore, the propriety of Quest's

---

     [3](...continued)
intent to disclose them to the Government. (See Jt Stip at 8-9). If Quest were asserting attorney-client privilege, the Court would be inclined to agree. See United States v. Bergonzi, 216 F.R.D. 487, 494 (N.D. Cal. 2003) (finding that the attorney-client privilege did not apply to communications created with the intent to disclose them to the Government), appeal dismissed as moot, 403 F.3d 1048 (9th Cir. 2005). However, it does not follow from the fact that the letters were created with the intent to disclose them to the Government that they do not constitute work product prepared in anticipation of litigation. See Bergonzi, 216 F.R.D. at 494-95 (rejecting this same argument); see also In re International Systems and Controls Corp. Securities Litigation, 693 F.2d 1235, 1239 n.4 (5th Cir. 1982) ("From the moment management learned of the SEC investigation, it could almost count on some form of shareholder's derivative or class action suit."). Accordingly, the Court concurs with Quest that plaintiff's argument really goes to the waiver issue, not the issue of whether the documents otherwise qualify as work product.

     [4]    Quest maintains that Document 3329 is the same as Document 3282 and thus "an inadvertent duplicate entry." (See Jt Stip at 46 n.14). The Court notes, however, that the description of the two documents is different in that Document 3329 references enclosed transcripts whereas Document 3282 does not. The Court also notes that Quest only asserted work product protection with respect to Document 3282, whereas Quest asserted both work product protection and attorney-client privilege with respect to Document 3329. Although the parties did not brief the propriety of Quest's invocation of the attorney-client privilege with respect to Document 3329, the Court finds that any attorney-client privilege otherwise applicable to Document 3329 was waived by its disclosure to the Government.

MINUTES FORM 11                                                        Initials of Deputy Clerk    klg
CIVIL-GEN

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES--GENERAL

Case No.: SACV 06-6863-DOC (RNBx)                                              July 10, 2009
**Middlesex Retirement System v. Quest Software, Inc., et al.**                     Page 5

---

invocation of work product protection to justify the withholding of those documents has been rendered moot.

The Ninth Circuit recognizes that a waiver of the attorney-client privilege by the voluntary disclosure of the privileged information to a third party is not necessarily a waiver of work-product protection. See Transamerica Computer Co., Inc. v. International Business Machines Corp., 573 F.2d 646, 648 n.1 (9th Cir. 1978); see also, e.g., Goff v. Harrah's Operating Co., Inc., 240 F.R.D. 659, 661 (D. Nev. 2007); Ashanti v. CA Dept. of Corrections, 2006 WL 2695337, *4 (E.D. Cal. Sept. 20, 2006); Chubb Integrated Systems Ltd. v. National Bank of Washington, 103 F.R.D. 52, 63 (D.D.C. 1984); Ceco Steel Products Corp. v. H.K. Porter, Inc., 31 F.R.D. 142, 143 (N.D. Ill. 1962); Connecticut Mut Life Ins Co v. Shields, 16 F.R.D. 5, 7-8 (S.D.N.Y. 1954).

Thus, the waiver issue here turns on whether the disclosure to the Government substantially increased the opportunity for potential adversaries like plaintiff and its counsel to obtain that work product. See, e.g, Transamerica Computer Co., Inc., 573 F.2d at 648 n.1; Goff, 240 F.R.D. at 661; 8 Wright, Miller & Marcus, Federal Practice and Procedure, Civil 2d § 2024, at 367-69 (1994 & 2009 Supp.).

In the Court's view, the disclosure of the work product in question to the Government did substantially increase the opportunity for potential adversaries like plaintiff and its counsel to obtain that work product.

In the first place, the Court disagrees with Quest that the SEC and/or the USAO were not its adversaries. The only reason the Government was seeking documents from Quest was to determine whether Quest and/or its executives had committed violations of the federal securities laws. The fact that litigation had not yet commenced is not dispositive. See, e.g., United States v. Massachusetts Institute of Technology, 129 F.3d 681, 687 (1st Cir. 1997) ("The audit agency was reviewing MIT's expense submissions. MIT doubtless hoped that there would be no actual controversy between it and the Department of Defense, but the potential for dispute and even litigation was certainly there. The cases treat this situation as one in which the work product protection is deemed forfeit."); In re Steinhardt Partners, L.P., 9 F.3d 230, 234 (2d Cir. 1993); Westinghouse Elec. Corp. v. Republic of Philippines, 951 F.2d 1414, 1428 (3d Cir. 1991) ("Westinghouse was the target of investigations conducted by the agencies. Under these circumstances, we have no difficulty concluding that the SEC and the DOJ were

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES--GENERAL

Case No.: SACV 06-6863-DOC (RNBx)　　　　　　　　　　　　　　　　July 10, 2009
**Middlesex Retirement System v. Quest Software, Inc., et al.**　　　　　　　Page 6

------------------------------------------------------------------------------------------------------------------

Westinghouse's adversaries."); In re Subpoenas Duces Tecum, 738 F.2d 1367, 1372 (D.C. Cir. 1984) (finding that there was "no question" that target of SEC investigation was SEC's adversary); see also Bergonzi, 216 F.R.D. at 498 (rejecting contention that the Government was not the company's adversary).

　　　　Second, the Court disagrees with Quest that the production to the Government by the Special Committee, Quest, and the individual defendants was not truly voluntary. The production was made because the producing parties determined that it was in their best interests to **voluntarily** produce the documents in question to the Government. Nor does it make any difference to the Court that the witness interview transcripts were produced to the SEC pursuant to a subpoena. According to Quest, the interview transcripts reflect "attorneys' mental thoughts, impressions, and conclusions in the forms of the questions asked of the interviewees." (See Jt Stip at 47 n.15). If a court had agreed, any motion by the SEC to compel their production would have been denied. See, e.g., Hickman v. Taylor, 329 U.S. 495, 509-11, 67 S. Ct. 385, 91 L. Ed. 2d 451 (1947); In re Grand Jury Proceedings, 867 F.2d 539, 541 (9th Cir. 1989) (affirming district court's order providing that attorney subpoenaed to appear before grand jury had the right not to disclose "opinion work product").

　　　　Finally, the Court attaches no significance to the so-called confidentiality agreement. As Quest concedes, the confidentiality agreement expressly provided that the SEC could utilize the documents to the extent that the SEC determined that disclosure was required by law or would be in the furtherance of the SEC's discharge of its duties and responsibilities. Thus, to the extent that the work product voluntarily produced to the SEC reflected violations of the federal securities laws, the SEC was under no obligation to keep the work product confidential. See In re Qwest Communications Intern. Inc., 450 F.3d 1179, 1194 (10th Cir.) (rejecting selective waiver argument where documents disclosed to SEC and the DOJ under confidentiality agreement that permitted the Government agencies to use documents as required by law and in furtherance of the discharge of their obligations), cert. denied, 549 U.S. 1031 (2006); see also, e.g., In re Columbia/HCA Healthcare Corp. Billing Practices Litigation, 293 F.3d 289, 305-07 (6th Cir. 2002) (holding that work product protection waived by disclosure to the Government, notwithstanding existence of "confidentiality agreement"), cert. dismissed by 539 U.S. 977 (2003); Westinghouse, 951 F.2d at 1431 (holding that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES--GENERAL

Case No.: SACV 06-6863-DOC (RNBx)　　　　　　　　　　　　　　　　　July 10, 2009
**Middlesex Retirement System v. Quest Software, Inc., et al.**　　　　　　　　Page 7

-----------------------------------------------------------------------------------------------------------------------

confidential agreement did not preserve work product protection where "Westinghouse deliberately disclosed work product to two government agencies investigating allegations against it"); Bergonzi, 216 F.R.D. at 494 (finding waiver of work product protection where internal audit report disclosed to the SEC and USAO pursuant to a confidentiality agreement containing a provision that permitted the SEC, in its discretion, to "determine that disclosure is otherwise required by federal law or in furtherance of [the Government's] discharge of its duties and responsibilities.").

The Court therefore finds and concludes that the answer to the question posed by Issue No. 2 is yes.

> Issue No. 3: Whether the disclosure of attorney-client communications of the Special Committee and its counsel to Quest's counsel, directors, officers, and/or employees constituted a waiver of the attorney-client privilege as to those documents

According to plaintiff, this issue relates to the documents that are referenced in the Quest Privilege Log dated November 12, 2008 by "control numbers" 181, 1879-1885, 1887, 1889, and 1891-1900. (See Jt Stip at 13). However, according to Quest, it already has produced Documents 1879-1881 and 1893-1900. (See Jt Stip at 39-40).[5] Therefore, the propriety of Quest's invocation of the attorney-client privilege to justify the withholding of those documents has been rendered moot.

The Court notes that Quest is not contending that the attorney-client privileged communications between the Special Committee and its counsel that were shared with Quest's Board and/or other Quest employees and/or Quest's counsel were shared for the primary purpose of facilitating the Special Committee's counsel's providing of legal advice to the Special Committee. See, e.g., North Pacifica, LLC v. City of Pacifica, 274 F. Supp. 2d 1118, 1128 (N.D. Cal. 2003) (noting that "the key question for the instant case is whether any particular communication made during the closed sessions of the City Council, with legal counsel present, was related primarily to the seeking of legal advice"); United States v. Chevron Texaco Corp., 241 F. Supp. 2d 1065, 1076 (N.D. Cal.

---

[5]　According to Quest, it also has produced Documents 1882-1885, 1887, 1889, and 1891-1892 in redacted form. (See Jt Stip at 40).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES--GENERAL

Case No.: SACV 06-6863-DOC (RNBx)                               July 10, 2009
<u>Middlesex Retirement System v. Quest Software, Inc., et al.</u>                Page 8

---

2001) ("In order to show that a communication relates to legal advice, the proponent of the privilege must demonstrate that the 'primary purpose' of the communication was securing legal advice."). Rather, according to the Special Committee's counsel, "whenever the Special Committee communicated with members of Quest's Board of Directors or other Quest employees, it did so in furtherance of those individual Board members' or those employees' fiduciary duties to the Company in order for those individuals to make appropriate **business decisions**, including, among other things, disclosures mandated by the applicable federal securities laws, rules and regulations; NASDAQ reporting requirements; and California state law." (<u>See</u> Ephross Decl. at ¶ 8). The Court therefore concurs with plaintiff that the documents in question are not protected by the attorney-client privilege. <u>See</u> <u>S.E.C. v. Microtune, Inc.</u>, - F.R.D. -, 2009 WL 1574872, at *5 (N.D. Tex. June 4, 2009); <u>S.E.C. v. Roberts</u>, 254 F.R.D. 371, 383 (N.D. Cal. 2008); <u>In re OM Securities Litigation</u>, 226 F.R.D. 579, 590-92 (N.D. Ohio 2005).[6]

Accordingly, the Court finds and concludes that the answer to the question posed

---

[6] The Court has reviewed the sole case cited by Quest for the proposition that, under the "common interest" exception to the rule that the disclosure of attorney-client privileged communications to a third party waives the privilege, discussions between a Special Committee and its counsel and a corporation and its counsel are protected. Contrary to Quest's characterization, <u>In re BCI West, L.P.</u>, 2000 U.S. Dist. LEXIS 12590 (S.D.N.Y. Aug 31, 2000) had nothing to do with the "common interest" exception. Moreover, the issue in that case was not whether privileged communications between the Special Committee and its counsel were waived by the disclosure of those communications to the corporation and its counsel. Rather, the issue was whether, because the Special Committee's counsel had communications with the Board and management, the attorney-client privilege was waived with respect to communications between the Special Committee's counsel and the Special Committee. Here, in any event, the Court concurs with plaintiff that the Special Committee did not have the requisite "common interest" with the persons it was investigating and with whom the privileged communications in question were shared.

MINUTES FORM 11                                          Initials of Deputy Clerk    klg
CIVIL-GEN

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES--GENERAL

Case No.: SACV 06-6863-DOC (RNBx)                              July 10, 2009
    **Middlesex Retirement System v. Quest Software, Inc., et al.**                Page 9

---

by Issue No. 3 is yes.[7]

      <u>Issue No. 4: Whether documents disclosed to Deloitte qualify for work product protection and, if so, whether the disclosure of those documents to Deloitte constituted a waiver of such work product protection</u>

      According to plaintiff, this issue relates to the documents that are referenced in the Deloitte privilege log in rows 3-22, 24, 26-40, 43-45, 47-83, 85, 86, 92, 93, and 100-121; and to the documents that are referenced in the Deloitte redaction log in rows 3-62, 67, 68, 72-74, 78-91, 93, 99, 102, 109-121, and 124-126. (<u>See</u> Joint Stip at 18).

      To the extent that any of these withheld or redacted documents were prepared by Deloitte during the course of its audit work (including notes made by Deloitte of meetings with the Special Committee's counsel,[8] the Court finds that the documents do not qualify for work product protection because Quest has failed to make the requisite showing that those documents were created because of the prospect of litigation. <u>See</u> <u>In re Grand Jury Subpoena</u>, 357 F.3d 900, 907 (9th Cir. 2004). The Court likewise finds with respect to any documents prepared by the Special Committee or its counsel specifically in response to requests by Deloitte for information during the course of its audit work. <u>See</u> <u>In re Diasonics Securities Litigation</u>, 1986 WL 53402, *1 (N.D. Cal.

---

      [7]      As Quest points out, Document 181 also was withheld on the basis that it qualified for work product protection. The Court has reviewed the cases cited by Quest for the proposition that "work product, and especially opinion work product, remains protected when shared between a Special Committee and a corporation." (<u>See</u> Jt Stip at 40). Since Document 181 does not purport to have been prepared by counsel for the Special Committee, the Court is dubious about whether that document constitutes "opinion work product." Moreover, to the extent that Document 181 merely contains factual information, work product protection would not be absolute. Therefore, the Court has decided to accede to the request made by plaintiff in footnote 5 of the Joint Stipulation with respect to Document 181.

      [8]      The Court concurs with plaintiff that the privilege log is inadequate with respect to its description of notes in rows 55-63.

MINUTES FORM 11                                                                                  Initials of Deputy Clerk     klg
CIVIL-GEN

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES--GENERAL

Case No.: SACV 06-6863-DOC (RNBx)                                                                     July 10, 2009
    **Middlesex Retirement System v. Quest Software, Inc., et al.**                 Page 10

------------------------------------------------------------------------------------------------------------------

June 15, 1986).

        The Court cannot determine from the descriptions in the privilege log which of the withheld and/or redacted documents fall into the latter category. Nor is it necessary for the Court to do so because the Court concurs with plaintiff that, even if some of the documents disclosed to Deloitte qualify for work product protection, the disclosure of those documents to Deloitte constituted a waiver of such work product protection.

        The Court is mindful that there is a split of authority over whether the disclosure of work product to an independent auditor such as Deloitte here waives work product protection. Some courts have concluded that disclosures to outside auditors do not have the requisite adversarial relationship for waiver. See, e.g., S.E.C. v. Schroeder, 2009 WL 1125579, *9 (N.D. Cal. April 27, 2009), objections overruled by 2009 WL 1635202 (June 10, 2009); In re JDS Uniphase Corporation Securities Litigation, 2006 WL 2850049, *1-*2 (N.D. Cal. Oct. 5, 2006); S.E.C. v. Roberts, 254 F.R.D. 371, 381-82 (N.D. Cal. 2008); Merrill Lynch & Co. v. Allegheny Energy, Inc., 229 F.R.D. 441, 447-48 (S.D.N.Y. 2004). Other courts have concluded that disclosures to outside auditors do amount to a waiver. See, e.g., Medinol, Ltd. v. Boston Scientific Corp., 214 F.R.D. 113, 116 (S.D.N.Y. 2002); Samuels v. Mitchell, 155 F.R.D. 195, 200 (N.D. Cal. 1994); In re Diasonics Securities Litigation, 1986 WL 53402 at *1. Since the Ninth Circuit has not ruled on this issue (and indeed there are Ninth Circuit district court cases going both ways), it would appear to be within the Court's discretion to choose which line of authority to follow.

        As in the case of the documents disclosed to the Government, it seems to the Court that the waiver issue here turns on whether the disclosure of the work product to Deloitte substantially increased the opportunity for potential adversaries like plaintiff and its counsel to obtain that work product. In the Court's view, it follows from the nature of Deloitte's role as an independent auditor that the disclosure of the work product to Deloitte did substantially increase the opportunity for potential adversaries like plaintiff and its counsel to obtain that work product. As the Supreme Court observed in United States v. Arthur Young & Co., 465 U.S. 805, 817-18, 104 S. Ct. 1495, 79 L. Ed. 2d 826 (1984), where the issue was whether work-product immunity should be afforded to accountants' tax accrual workpapers under the Hickman rationale:

        "The Hickman work-product doctrine was founded upon the private

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES--GENERAL

Case No.: SACV 06-6863-DOC (RNBx)　　　　　　　　　　　　　July 10, 2009
**Middlesex Retirement System v. Quest Software, Inc., et al.**　　　　　Page 11

---

attorney's role as the client's confidential advisor and advocate, a loyal representative whose duty it is to present the client's case in the most favorable possible light. An independent certified public accountant performs a different role. By certifying the public reports that collectively depict a corporation's financial status, the independent auditor assumes a public responsibility transcending any employment relationship with the client. The independent public accountant performing this special function owes ultimate allegiance to the corporation's creditors and stockholders, as well as to investing public. This 'public watchdog' function demands that the accountant maintain total independence from the client at all times and requires complete fidelity to the public trust. To insulate from disclosure a certified public accountant's interpretations of the client's financial statements would be to ignore the significance of the accountant's role as a disinterested analyst charged with public obligations."

A further consideration is that, given the nature of its role, Deloitte was under no obligation to keep confidential any work product disclosed to it that Deloitte determined it needed to publicly disclose in the performance of its audit function. See 2 Epstein, The Attorney-Client Privilege and the Work Product Doctrine, 1060 (5th ed. 2007) ("Further and more generalized dissemination is thus a necessary although not inevitable correlation to such disclosure [of work product to an independent auditor of a publicly held company] and it is potentially so broad as to vitiate any meaning to the protection.").

Accordingly, the Court finds and concludes that the answer to the second question posed by Issue No. 4 is yes.

*************************

In view of the foregoing rulings, plaintiff's Motion to Compel Production is granted as follows:

　　　1.　　The Motion is granted with respect to all the documents sought by plaintiff, except for Document 181. Quest is ordered to produce those documents (including those that Quest maintains it already has produced, as well as unredacted versions of those that Quest maintains it already has

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES--GENERAL**

Case No.: SACV 06-6863-DOC (RNBx)                                              **July 10, 2009**
<u>**Middlesex Retirement System v. Quest Software, Inc., et al.**</u>                    **Page 12**

---

produced in redacted form) within ten (10) days of the service date of this ruling. However, if Quest timely files objections to this part of the Court's ruling within the 10-day period, then compliance with this order shall be stayed pending the District Judge's ruling with respect to all documents that are the subject of Quest's objections.

  2. Within ten (10) days of the service date of this ruling, Quest is ordered to lodge a copy of Document 181 for the Court's <u>in camera</u> review and to concurrently file under seal a memorandum, limited to three (3) pages in length, that re-articulates the basis for Quest's contention that Document 181 is entitled to work product protection. If the Court determines that the document in whole or in part is entitled to qualified work product protection, the Court will afford plaintiff the opportunity to make the requisite showing under Fed. R. 26(b)(3)(A). However, if Quest timely files objections to this part of the Court's ruling within the 10-day period, then compliance with this order shall be stayed pending the District Judge's ruling with respect to Document 181.


cc: Judge Carter