1   BLAKE MUIR HARPER, SBN: 115756
    e-mail: bmh@hulettharper.com
2   SARAH P. WEBER, SBN: 239979
    e-mail: sweber@hulettharper.com
3   HULETT HARPER STEWART LLP
    525 B Street, Suite 760
4   San Diego, CA 92101
    Telephone: (619) 338-1133
5   Facsimile: (619) 338-1139

6

7   MARIAN P. ROSNER (admitted *pro hac vice*)
    e-mail: mrosner@wolfpopper.com
    PATRICIA I. AVERY (admitted *pro hac vice*)
8   e-mail: pavery@wolfpopper.com
    CHET B. WALDMAN (admitted *pro hac vice*)
9   e-mail: cwaldman@wolfpopper.com
    ANTHONY D. GREEN (admitted *pro hac vice*)
10  e-mail: agreen@wolfpopper.com
    WOLF POPPER LLP
11  845 Third Avenue
    New York, New York 10022
12  Telephone: (212) 759-4600
    Facsimile: (212) 486-2093
13  Firm E-mail:     IRRep@wolfpopper.com

14  Attorneys for Lead Plaintiff

15              UNITED STATES DISTRICT COURT
                CENTRAL DISTRICT OF CALIFORNIA
16                   SOUTHERN DIVISION

| | |
|---|---|
| 17  MIDDLESEX RETIREMENT SYSTEM, on behalf of itself and all others similarly situated, | Case No. 06-06863-DOC(RNBx) |
| 18 | CLASS ACTION |
| 19              Plaintiff, | |
| 20       v. | **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |
| 21  QUEST SOFTWARE, INC., VINCENT C. SMITH, M. BRINKLEY | |
| 22  MORSE, MICHAEL J. LAMBERT, DOUGLAS F. GARN, DAVID M. | **REDACTED PUBLIC VERSION** |
| 23  DOYLE, JERRY MURDOCK, JR., and KEVIN BROOKS, | |
| 24 | Hearing: |
| 25              Defendants. | Date:   August 31, 2009 |
| 26 | Time:   8:30 a.m. Judge:  Hon. David O. Carter Ctrm:   9D |
| 27 | |
| 28 | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.    PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    Middlesex's Claims Are Typical of Those of the Class and
            It Is More Than An  Adequate Class Representative . . . . . . . . . . . . . 2

      1.    Middlesex Has Standing As A Purchaser to Maintain this Lawsuit  . . 2

            a.    Middlesex Is A Typical Institutional Investor . . . . . . . . . . . . . 2

            b.    Middlesex Has Standing As A Purchaser of Quest Stock . . . . . 4

            c.    Defendants' Standing Argument Contradicts the PSLRA . . . . . 8

            d.    Whether An Investment Advisor May Also Have Standing Is
                  Irrelevant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      B     Defendants' Reliance On Old Investigations Of Middlesex
            Do Not Support Its Argument That Middlesex Is An
            Inadequate Representative  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      C.    Defendants' Other Attacks on Middlesex's Adequacy Are Specious  17

      D.    Monitoring Relationships Do Not Render A Plaintiff Inadequate  . . 21

III.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

1

# TABLE OF AUTHORITIES

2

## FEDERAL CASES

3

Page

4

*Alba v. Papa John's USA,*
   2007 U.S. Dist. LEXIS 28079 (C.D. Cal. Feb. 7, 2007) . . . . . . . . . . . . . . 19

5

*In re Am. Italian Pasta Co. Sec. Litig.,*
   2007 U.S. Dist. LEXIS 21365 (W.D. Mo. Mar. 26, 2007) . . . . . . . . . . 22-23

6

7

*Bear, Stearns & Co. v. Buehler,*
   432 F. Supp. 2d 1024 (C.D. Cal. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

8

*Blue Chip Stamps v. Manor Drug Stores,*
   421 U.S. 723, 95 S. Ct. 1917, 44 L. Ed. 2d 539 (1975) . . . . . . . . . . . . . 4, 5

9

10

*In re Caremark Int'l Sec. Litig.,*
   1996 U.S. Dist. LEXIS 8751 (N.D. Ill. June 24, 1996) . . . . . . . . . . . . . . . 9

11

*Cobb v. Avon Products, Inc.,*
   71 F.R.D. 652 (W.D. Pa. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

12

*Congregation of the Passion, Holy Cross Province v. Kidder Peabody & Co.,*
   800 F.2d 177 (7th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

13

14

*Cox v. Bateman Eichler, Hill Richards, Inc.,*
   765 F. Supp. 601 (N.D. Cal. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

15

*Cruz v. Dollar Tree Stores, Inc.,*
   2009 U.S. Dist. LEXIS 46855 (N.D. Cal. May 26, 2009) . . . . . . . . . . 12-13

16

17

*Cummings v. Connell,*
   316 F.3d 886 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18

*In re Diasonics Sec. Litig.,*
   599 F. Supp. 447 (N.D. Cal. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

19

20

*In re DVI Inc. Sec. Litig.,*
   249 F.R.D. 196 (E.D. Pa. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

21

*Eggleston v. Chicago Journeymen Plumbers' Local Union,*
   657 F.2d 890 (7th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

22

*Employers-Teamsters Local Nos. 175 & 505 Pension Trust Fund v.*
*Anchor Capital Advisors,*
   498 F.3d 920 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

23

24

*In re First Am. Corp. ERISA Litig.,*
   2009 U.S. Dist. LEXIS 53427 (C.D. Cal. June 10, 2009) . . . . . . . . . . . . . 19

25

26

*Fry v. UAL Corp.,*
   136 F.R.D. 626 (N.D. Ill. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

27

28

*Holloway v. Full Spectrum Lending,*
　　2007 U.S. Dist. LEXIS 59934 (C.D. Cal. June 26, 2007) . . . . . . . . . . . . . 19

*Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Svc'g & Securitization, LLC,*
　　616 F. Supp. 2d 461 (S.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . 23, 24, 25, 27

*Jones v. Ford Motor Credit Co.,*
　　2005 U.S. Dist. LEXIS 5381 (S.D.N.Y. Mar. 31, 2005) . . . . . . . . . . . . . 17

*Kline v. Wolf,*
　　702 F.2d 400 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Koppel v. 4987 Corp.,*
　　191 F.R.D. 360 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . 12, 17

*McCall v. Drive Fin. Servs., L.P.,*
　　236 F.R.D. 246 (E.D. Pa. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Monster Worldwide, Inc. Sec. Litig.,*
　　251 F.R.D. 132 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . 1, 12, 25, 27

*In re NeoPharm, Inc. Sec. Litig.,*
　　225 F.R.D. 563 (N.D. Ill. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 22

*Northstar Fin. Advisors, Inc. v. Schwab Investments,*
　　609 F. Supp. 2d 938 (N.D. Cal. 2009) . . . . . . . . . . . . . . . . . . . . . . . 11

*Nursing Home Pension Fund v. Oracle Corp.,*
　　2006 U.S. Dist. LEXIS 94470 (N.D. Cal. Dec. 20, 2006) . . . . . . . . . . . . . 5

*Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys.,*
　　2004 U.S. Dist. LEXIS 27008 (C.D. Cal. 2004) . . . . . . . . . . . . . . . . . . 23

*Retsky Family Ltd. Pshp. v. Price Waterhouse LLP,*
　　1999 U.S. Dist. LEXIS 11351 (N.D. Ill. July 23, 1999) . . . . . . . . . . . . . . 9

*Ross v. Abercrombie & Fitch Co.,*
　　257 F.R.D. 435 (S.D. Ohio 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Sley v. Jamaica Water & Utilities, Inc.,*
　　77 F.R.D. 391 (E.D. Pa. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Smith v. Suprema Specialties, Inc.,*
　　206 F. Supp. 2d 627 (D.N.J. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Sprint Commc'ns Co. v. APCC Services, Inc.,*
　　__ U.S.__, 128 S.Ct. 2531, 171 L.Ed.2d 424 (2008) . . . . . . . . . . . . . . . 11

*Surowitz v. Hilton Hotels Corp.,*
　　383 U.S. 363, 86 S. Ct. 845, 15 L. Ed. 2d 807 (1966) . . . . . . . . . . . . . . 19

*In re Terayon Commun's Systems, Inc. Sec. Litig.,*
　　2003 U.S. Dist. Lexis 2852 (N.D. Cal. Feb. 24, 2003) . . . . . . . . . . . . . . 9

*Tsirekidze v. Syntax-Brillian Corp.*,
    2009 U.S. Dist. LEXIS 61145 (D. Ariz. July 17, 2009) . . . . . . . . . . . . . . . 19

*Umbriac v. American Snacks, Inc.*,
    388 F. Supp. 265 (E.D. Pa. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Vannest v. Sage, Rutty & Co., Inc.*,
    991 F. Supp. 155 (W.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re VeriSign, Inc.*,
    2005 WL 88969 (N.D. Cal. Jan. 13, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re Vicuron Pharms., Inc. Sec. Litig.*,
    233 F.R.D. 421 (E.D. Pa. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10

*In re Worldcom, Inc. Sec. Litig.*,
    219 F.R.D. 267 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
    549 F.3d 100 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## OTHER AUTHORITIES

*Bragdon v. Telxon Corp.*, No. 98-CV-2876 (N.D. Ohio Apr. 23, 1998),
Secretary of Labor's Memorandum as Amicus Curiae in Support of
FSBA's Motion for Appointment as Lead Plaintiff . . . . . . . . . . . . . . . . . . . . . . . 21

## STATUES AND RULES

15 U.S.C. §77z-1(a)(3)(B)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Employee Retirement Income Security Act of 1974 ("ERISA")
    § 404(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 10, 21, 22

Federal Rules of Civil Procedure, Rule 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Mass. Gen. L. Ch. 32, §23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7, 14

Private Securities Litigation Reform Act of 1995 (" PSLRA ") . . . . . . . . . . . 8, 9, 10

Securities Exchange Act of 1934
    §10(b); Rule 10b-5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 10

1    **I.    PRELIMINARY STATEMENT**

2          As established in its motion for class certification, Lead Plaintiff Middlesex

3    Retirement System ("Middlesex") is a more than adequate class representative in this

4    case and has been previously certified as a class representative in another stock option

5    backdating case, *In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 133-34

6    (S.D.N.Y. 2008), where it achieved a settlement of $47.5 million.   Nonetheless,

7    Defendants raise a series of misguided arguments to avoid class certification here.[1]

8          Contrary to Defendants' strained contentions, Plaintiff has standing to bring this

9    litigation under the federal securities laws.  Plaintiff's use of an investment advisor to

10   make its purchases of Quest Software, Inc. ("Quest") stock is typical of institutional

11   investors and, ███████████████████████████████

12   █████████████████████████████████████████.

13       The citation by Defendants ███████████████

14   ███████████████████████████████████████████

15   █████████████████████████, are irrelevant to Middlesex's proven

16   ability to adequately represent the Class.  In addition, ██████████████

17   ███████████████████████████████████████████

18   ███████, illustrates Defendants' desperation to avoid class certification. Defendants'

19   contention that ████████████████████████████████

20   ███████████████████████████████████████████

21   ─────────────────────────
     [1]  Courts have acknowledged the often dubious motives of defendants challenging
22   class certification: "defendants who take such a position on class certification . . . are
     realistically not concerned with the 'best' representation for the plaintiff class but
23   rather their goal is to ensure 'no' representation".  *Sley v. Jamaica Water & Utilities,*
24   *Inc.*, 77 F.R.D. 391, 394 (E.D. Pa. 1977).  *See Eggleston v. Chicago Journeymen*
     *Plumbers' Local Union*, 657 F.2d 890, 895 (7th Cir. 1981) ("[I]t is often the defendant,
25   preferring not to be successfully sued by anyone, who supposedly undertakes to assist
26   the court in determining whether a putative class should be certified.   When it
     comes...to determining whether 'the representative parties will fairly and adequately
27   protect the interests of the class,' . . ., it is a bit like permitting a fox, although with a
28   pious countenance, to take charge of the chicken house").

1    ███████████ The use of monitoring agreements by institutional investors to protect
2    their investments is quite common and is encouraged by the same authorities cited
3    above. ███████████████████████████████████████████
4    █████████████████████.

5        Defendants' hyperbole aside, Middlesex's claims are typical of the claims of the
6    Class and it is more than adequate to serve as Class representative.[2]

7    **II.    ARGUMENT**

8    **A.    Middlesex's Claims Are Typical of Those of the Class and It Is More Than**
9    **An Adequate Class Representative**

10        **1.    Middlesex Has Standing As A Purchaser to Maintain this Lawsuit[3]**

11            **a.    Middlesex Is A Typical Institutional Investor**

12        Defendants' factual descriptions of Plaintiff's investment practices are distorted,
13    misleading, and irrelevant to class certification.    The actual record shows that
14    Defendants' arguments against Middlesex are based on a misconception and

15    [2] ████████████████████████████████████████
16    █████████████████████████████████████████████
17    █████████████████████████████████████████████
18    █████████████████████████████████████████████
19    █████████████████████████████████████████████
20    █████████████████████████████████████████████
21    █████████████████████████████████████████████
22    █████████████████████████████████████████████
23    █████████████████████████████████████████████
24    █████████████████████████████████████████████
25    ██████████████████████████ References to Defendants' Memorandum in
26    opposition to class certification are to "Defts. at __".

27    [3]  Defendants' arguments are further suspect since Defendants never raised any
standing issue on either of their motions to dismiss and apparently did not raise
28    Plaintiff's standing in their answers filed with this Court.

1   misunderstanding about how institutional investors invest their funds.

2       Massachusetts law mandates the use of investment advisors and consultants in

3   the management of pension fund assets. *See*, *e.g.*, Mass. Gen. L. Ch. 32, §23.



19  ⁴ As the Court recognized in *In re Worldcom, Inc. Sec. Litig.*, 219 F.R.D. 267, 282

20  (S.D.N.Y. 2003), "[s]uch investors are likely to use advisors..."



1  ██████████████████████████████████████████████████

2  ██████████████████████████████████████████████████

3  ████████████████████████

4  ████████████████████████████████████████████████

5  ██████████████████████████████████████████████████

6  ██████████████████████████████████████████████████

7  ██████████████████████████████████████████████████

8  ██████████████████████████████████████████████████

9  ██████████████████████████████████████████████████

10 ██████████████████████████████████████████████████

11 ██████████████████████████████████████████████████

12 █████████████████████████████████████

13    **b.    Middlesex Has Standing As A Purchaser of Quest Stock**

14    There is no question that Middlesex purchased Quest stock and that the purchase

15 was made using Middlesex's funds.  Defendants' contention that Plaintiff was not a

16 "purchaser" and does not have standing to sue under *Blue Chip Stamps v. Manor Drug*

17 *Stores*, 421 U.S. 723, 752, 95 S. Ct. 1917, 44 L. Ed. 2d 539 (1975), because it used an

18 ─────────────────────

19 [6] ██████████████████████████████████████████████████

20 ██████████████████████████████████████████████████

21 ██████████████████████████████████████████████████

22 ██████████████████████████████████████████████████

23 ████████████████████████████████████████

24 [7] Defendants manufacture irrelevant questions (Defts' at 12) ████████████

25 ██████████████████████████████████████████████████

26 ██████████████████████████████████████████████████

27 ██████████████████████████████████████████████████

28 ██████████████████████████████████████████████████

1  investment advisor to make the purchase, is incorrect. *Blue Chip* stands for the simple

2  proposition that one must be a purchaser or seller of a security, as opposed to someone

3  who merely held or considered buying or selling stock, in order to have standing to sue

4  for securities fraud. How the decision was made to purchase the stock was never an

5  issue in *Blue Chip* because there was no purchase there.

6      Defendants' attempt to extend *Blue Chip's* standing holding to this case, relying

7  on *Congregation of the Passion, Holy Cross Province v. Kidder Peabody & Co.*, 800

8  F.2d 177 (7th Cir. 1986), is unavailing. This Circuit and District have never adopted

9  *Congregation*, and relevant case law readily rejects it.[8]  *E.g., Ross v. Abercrombie &*

10  *Fitch Co.*, 257 F.R.D. 435 (S.D. Ohio 2009) ("[t]here is no evidence that the Court

11  intended or anticipated *Blue Chip Stamps* to preclude the claims of plaintiffs who rely

12  upon professional investment advisors" [footnote omitted]). *See also Vannest v. Sage,*

13  *Rutty & Co., Inc.*, 991 F. Supp. 155, 160 (W.D.N.Y. 1997) ("I do not believe that

14  *Congregation* should be expanded beyond its own facts and its own holding. Other

15  courts have not done so and on the facts of the case before me, I also believe

16  *Congregation* should not bar plaintiffs' actions.... Section 10(b) was enacted to address

17  precisely the type of claims asserted by these plaintiffs and ***it makes little sense that***

18  ***these plaintiffs should be deprived of a cause of action under Section 10(b) simply***

19  ***because an agent acted on their behalf.***") (Internal citations omitted, emphasis added.)

20      The court in *Nursing Home Pension Fund v. Oracle Corp.*, 2006 U.S. Dist.

21  LEXIS 94470, at *22 (N.D. Cal. Dec. 20, 2006), rejected a similar attack on plaintiff's

---

[8] *Congregation* merely held that someone trying to sue his/her own investment advisor who had made no specific misrepresentations in the sale or purchase of stock lacked standing under § 10(b) because such a relationship was governed by state fiduciary law, not federal securities law. *See generally Bear v. Buehler*, 432 F. Supp. 2d 1024, 1027 (C.D. Cal. 2000). *Congregation* is simply inapplicable. Middlesex is not trying to sue its investment advisor (e.g., Seligman) under Rule 10b-5. Defendants are apparently arguing for the expansion of *Congregation* to also prevent standing under Rule 10b-5 for beneficial owners of stock to sue corporations whose stock they purchased, merely because they relied on an investment advisor to make investment decisions.

1    standing (because that plaintiff "could advise and/or restrict Turner Investments in

2    terms of which securities to purchase or sell").[9] Middlesex's involvement was greater.

3        The only Ninth Circuit District Court cases cited by Defendants, *In re VeriSign,*

4    *Inc.*, 2005 WL 88969 (N.D. Cal. Jan. 13, 2005), and *Cox v. Bateman Eichler, Hill*

5    *Richards, Inc.*, 765 F. Supp. 601 (N.D. Cal. 1990), both found that, even assuming this

6    proferred law on standing, plaintiffs met the burden.  In *VeriSign, Congregation* was

7    only accepted *arguendo*, and the Court distinguished its plaintiff from *Congregation*

8    because the "investment managers only exercised discretion within the guidelines set

9    by" the plaintiff and, further, that plaintiff "monitored its assets on a quarterly basis to

10   ensure that Sheet Metal's investment managers stayed within the guidelines" – ***both***

11   ***of which occurred here.***   *Cox*, 765 F. Supp. at 608, similarly distinguished

12   *Congregation*, stating that the plaintiff had "set forth specific guidelines and gave

13   express instructions on the permissible scope of investments."

14       Middlesex has done far more.  Even a non-exhaustive list indicates Middlesex

15   satisfies its burden: ███████████████████████████████████████

16   ████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████

21     [9]  What is more, the Court, in rejecting *Congregation*, stated:

22          Defendants *have failed to point to any cases that support their claims that*

23          *[plaintiff's] alleged delegation of complete investment authority to*
       *[investment advisors] renders it an inadequate class representative. Katz*

24          *v. Comdisco, Inc.*[,117 F.R.D. 403 (N.D. Ill. 1987),] lends little support

25          to Defendants' argument.  The court in *Katz* concluded that lack of
       standing is a unique defense that precludes a named plaintiff from

26          representing a class.  *Id.* at 407. ***However, the plaintiff in Katz lacked***

27          ***standing because he had suffered no financial loss as a result of the***
       ***defendant's alleged misrepresentations. Id. Unlike the plaintiff in Katz,***

28          ***[this plaintiff] suffered financial loss. Id.*** at *22-23 (emphasis added).

1  █████████████████████████████████████████████████████

2  █████████████████████████████████████████████████████

3  ██████████████████████████████████████████████

4     ███████████████████████████████████████████████████

5  ███████████████████████████████████████████████████

6  ███████████████████████████████████████████████████

7  ███████████████████████████████████████████████████

8  ███████████████████████████████████████████████████

9  ███████████████████████████████████████████████████

10  ██████  In order to carry out its fiduciary duties, it was necessary for Middlesex to

11  hire advisors.  In accordance with traditional practices, those investment advisors make

12  decisions to purchase stock. ██████████████████████████

13  ████████████████████████████████████████████████

14  ──────────────────────

15  10 ██████████████████████████████████████████████████

16  ███████████████████████████████████████████████████

17  ███████████████████████████████████████████████████

18  ███████████████████████████████████████████████████

19  ████████████████████████████████████████████

20

21  11 █████████████████████████████████████████████████████

22  ████  ████████████████████████████████████████████

23  ███████████████████████████████████████████████

24  ███████████████████████████████████████████████

25  ███████████████████████████████████████████████

26  ██████████  ███████████████████████████████████

27  ███████████████████████████████████████████

28  █████████████████████████████

1  Hence, nothing precludes Middlesex from its classic status as a purchaser of stock.

2         **c.**    **Defendants' Standing Argument Contradicts the PSLRA**

3        Defendants' standing argument is both outdated and ignores the purposes of the

4  Private Securities Litigation Reform Act ("PSLRA").  One of its main objectives *is to*

5  *encourage institutional investors to serve as lead plaintiffs in securities class actions*.

6  Institutional investors invest through investment advisors, just as Plaintiff did here.

7  As the Court stated in dismissing challenges to class certification in *In re Worldcom,*

8  *Inc. Sec. Litig.*, 219 F.R.D. at 281-82:

9       Defendants contend that the claims of all of the named plaintiffs are

10       atypical and subject to unique defenses because they . . . relied on the

11       advice of highly sophisticated investment managers. . .

12       This argument can be swiftly rejected.  Each of these methods of making

13       investment decisions is representative of methods used by many other

14       investors. . . *None of the different strategies that these institutional*

15       *plaintiffs, each of whom is a fiduciary, used to make investment*

16       *decisions on behalf of their beneficiaries suggests that these plaintiffs*

17       *will be vulnerable at trial to a unique defense. . . that are at issue here,*

18       *or that will threaten to become the focus of the litigation.*

19       *...The PSLRA was designed to "increase the likelihood that institutional*

20       *investors will serve as lead plaintiffs."* S. Rep. No. 104-98, at 11 (1995);

21       *see also* HR Conf. Rep. No 104-369, at 6 (1995).  *Such investors are*

22       *likely to use advisors, ...*[12]

23       More broadly, *In re NeoPharm, Inc. Sec. Litig.*, 225 F.R.D. 563, 567-68 (N.D.

24

25  [12]  *See also In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 204-05 (E.D. Pa. 2008) ("If an institutional investor cannot be a class representative simply because it turned over

26  day-to-day investment decisions to professional money managers or advisors, few if any institutional investors could be class representatives in any securities action. Such

27  a result is contrary to the intentions of Congress embodied in the PSLRA that

28  institutional investors should oversee more securities actions." [Citation omitted]).

Ill. 2004), recognized modern-day institutional investor behavior, and the mandates of the PSLRA, post-dating the cases on which Defendants rely, *Fry v. UAL Corp.*, 136 F.R.D. 626 (N.D. Ill. 1991), and *In re Caremark Int'l Sec. Litig.*, 1996 U.S. Dist. LEXIS 8751 (N.D. Ill. June 21, 1996) (miscited by Defendants as decided in 2006):

> Contrary to both *Fry* and *Caremark*, which dealt with individuals, in this case Operating Engineers is an institutional investor, specifically a pension fund. Under the [PSLRA], Congress "anticipated and intended" large institutional investors to oversee securities cases. *See e.g., In re Cendant Corp. Litig.*, 264 F.3d 201, 243-44 (3d Cir. 2001)....to prohibit such an institutional investor from serving as a class representative merely because it delegated investment responsibilities to a money manager would appear [to] be in tension with the PSLRA. *See, e.g., In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 282 (S.D.N.Y. 2003) ....

*Neopharm*, 225 F.R.D. at 567. As in *Neopharm*, guidelines were promulgated, periodic reviews conducted, investment advisors used, and counsel retained to monitor portfolio and provide advice. *See Retsky Family Ltd. P'shp. v. Price Waterhouse LLP*, 1999 U.S. Dist. LEXIS 11351, at *20-1 (N.D. Ill. July 23, 1999) (rejecting *Caremark*); *In re Terayon Commun's Systems, Inc. Sec. Litig.*, 2003 U.S. Dist. Lexis 2852, at *10-12 (N.D. Cal. Feb. 24, 2003) (rejecting argument based on *Fry* and *Caremark*).

Indeed, it would be a breach of fiduciary duty for Middlesex not to delegate the authority to make investments of its beneficiaries' money to an investment advisor. *See In re Vicuron Pharms., Inc. Sec. Litig.*, 233 F.R.D. 421, 427 (E.D. Pa. 2006) ("Indeed, the trustees or directors of investment funds would likely violate their fiduciary duties if they invested the assets of the pensions without professional guidance.").[13] Delegating this duty and overseeing the delegates is the most

---

[13] While Defendants cite this case, it actually holds that an institutional investor has standing despite "'abdicat[ing]' their investment decisions to money managers or other (continued...)

1  responsible thing Middlesex could possibly do. 

2

3

4

5

6

7    **d.    Whether An Investment Advisor May Also Have Standing Is**

8    **Irrelevant**

9    Defendants' attempt to coopt cases suggesting that an investment advisor may

10  be found to be a 'purchaser' does not support its position that Middlesex was not a

11  'purchaser' here.  First, the Ninth Circuit has not ruled on the issue as to whether an

12  investment advisor has standing to sue companies under SEC Rule 10b-5 to the

13  exclusion of the actual buyer.  *See Employers-Teamsters Local Nos. 175 & 505*

14  *Pension Trust Fund v. Anchor Capital Advisors*, 498 F.3d 920 (9th Cir. 2007)

15  (Although investment advisor had been appointed lead plaintiff, case was voluntarily

16  dismissed and arguments from putative class member to be appointed class

17  representative involving a challenge to the ruling that the investment advisor had

18  standing as a 'purchaser' were not reached because the statute of limitations had run).

19  Second, some courts have restricted investment advisors from having standing as a

20  [13] (...continued)

21  professionals and their control of the litigation to class counsel" because, to hold

22  otherwise, would be "contrary to the intentions of Congress embodied in the PSLRA
that institutional investors should oversee more securities actions."  *Id.*, at 427.

23  [14] The remaining cases cited by Defendants generally concern individual investors or

24  small groups.  An institutional investor is in a very different position.  Defendants'

25  reliance on *Pinter v. Dahl*, 486 U.S. 622, 638, 108 S. Ct. 2063, 100 L. Ed. 2d 658

26  (1988), *see* Defts. at 8, is misguided.  *Pinter's* import is that the securities laws are to
protect investors, not to provide an escape route for Defendants here who admit they

27  failed to disclose their options backdating, material information which resulted in the
restatement of their financials for essentially Quest's entire public life, turning profits

28  into losses and magnifying the losses.

1  'purchaser' unless they were given express written authority to sue on its' clients'

2  behalf, ████████████████████████████████████████████. *See*

3  *Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 634-35 (D.N.J. 2002).[15]

4  **B.**   **Defendants' Reliance On Old Investigations Of Middlesex Do Not Support**

5          **Its Argument That Middlesex Is An Inadequate Representative**

6  ████████████████████████████████████████████████

7  ██████████████████████████Defendants argue that

8  Middlesex has a "history" of breaches of fiduciary duty which they contend show that

9  Middlesex is inadequate to represent the Class.  (Defts. at 19-21.)  Defendants'

10  argument is not only hypocritical[16] (Defendants do not want an "adequate" class

11  representative, they want *no* representative), but a total misrepresentation of the facts

12  ████████████████████████████████████. Indeed,

13  the Court need not speculate as to whether Middlesex will be an adequate Class

14  representative because it has already demonstrated its adequacy in this litigation.[17]

---

15  [15] Defendants' argument is further erroneous given the Supreme Court's ruling in

16  *Sprint Communications Co. v. APCC Services, Inc.*, __ U.S.__, 128 S.Ct. 2531, 171

17  L.Ed.2d 424 (2008), that it is unlikely that even granting authority to sue is enough to

18  give an investment advisor standing unless that investment advisor has **legal right to**
    **the claim** transferred to it to assert a claim for an injury originally suffered by another.

19  *See W.R. Huff Asset Mgmt., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 107-11 (2d

20  Cir. 2008); *Northstar Fin. Advisors, Inc. v. Schwab Investments*, 609 F. Supp. 2d 938,
    942 (N.D. Cal. 2009) ("Under *Huff*, which this Court finds persuasive, Northstar

21  cannot bring claims on behalf of its clients simply by virtue of its status as an

22  investment advisor.  The assignment of claims from one of Northstar's clients would,
    however, cure this deficiency.").

23  [16] *See, e.g., Kline v. Wolf*, 702 F.2d 400, 402 (2d Cir. 1983) ("[A] court must be wary

24  of a defendant's efforts to defeat representation of a class on grounds of inadequacy
    when the effect may be to eliminate any class representation."); *In re Diasonics Sec.*

25  *Litigation*, 599 F. Supp. 447, 451-52 (N.D. Cal. 1984); *Umbriac v. American Snacks,*

26  *Inc.*, 388 F. Supp. 265, 275 (E.D. Pa. 1975).

27  [17] ██████████████████████████████████████████

28                                                    (continued...)



1   *See, e.g.*, *See Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003)("this circuit

2   does not favor denial of class certification on the basis of speculative conflicts"). In

3   addition, Middlesex has demonstrated adequacy as a class representative in another

4   complex options backdating securities class action, *Monster*, over defendants' self-

5   serving argument that it was inadequate to represent the class therein, and went on to

6   obtain a $47.5 million recovery for that class. *Monster*, 251 F.R.D. 132.

7       Contrary to Defendants' contention, ████████████████.

8   ████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████

11  ████████████████████████████████. *Koppel v. 4987 Corp.*, 191

12  F.R.D. 360, 368 (S.D.N.Y. 2000) ("in order 'to defeat class representation [on

13  inadequacy grounds], any allegations concerning the representative's adequacy must

14  be relevant to the claims in the litigation' and must be 'directed at improper or

15  questionable conduct arising out of or touching upon the very prosecution of the

16  lawsuit'")(citations omitted); *see also Cruz v. Dollar Tree Stores, Inc.*, 2009 U.S. Dist.

---

17

18  [17] (...continued)

19  ████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████

28  ████████████████████████████████████████████████

1  LEXIS 46855, at *19-20 (N.D. Cal. May 26, 2009) (finding speculative claims that the

2  proposed representatives were not trustworthy or credible were insufficient to render

3  them inadequate class representatives).

4        Unable to demonstrate legitimate issues regarding Plaintiff, ████████

5  ████████████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████████████████

9  ████████████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████

12       ████████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████████████

14 ██████████████████████████████████████████████████████Defendants'

15 argument is meritless.  Defendants, of course, neglect to disclose to the Court that

16 ████████████████████████████████████████████████████████████████

17 ████████████████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████████████████

21 ████████████████████████████████████████████████████████████████

---

22 [18] Needless to say, press reports such as those trumpeted by Defendants, were loud and

23 frantic, and as equally misguided as Defendants' arguments.

24 [19] ████████████████████████████████████████████████████████████

25 ████████████████████████████████████████████████████████████████

26 ████████████████████████████████████████████████████████████████

27 ████████████████████████████████████████████████████████████████

28 ████████████████████████████████████████████████████████████████

1    ██████████████████████████ Thus, Defendants' statements (e.g., Defts' at 3-4)

2    about Middlesex's actions and losses are misleading.[20]

3    ██████████████████████████████████████████████

4    ████████████████████████████████████████████████

5    █████████████████████████████████████████

6    ██████████████████████████████████████████████

7    ████████████████████████████████████████████████

8    ████████████████████████████████████████████████.[21]

9    While the hoopla and press surrounding the investigation made negative comments,

10   ████████████████████████████████████████████████

11   ████████████████████████████████████████████████

12   ████████████████████████████████████████████████

13   ████████████████████████████████████████████████

14   ████████████████████████████████████████████████

15   ████████████████████████████████████████████████

16   ─────────────────────

     [20] ████████████████████████████████████████████

17   ████████████████████████████████████████████████

18   ████████████████████████████████████████████████

19   ████████████████████████████████████████████████

20   ████████████████████████████████████████████████

21   ████████████████████████████████████████████████

22   █████████████████████████████████████████

23   [21] ███████████████████████████████████████████

24   ████████████████████████████████████████████████

25   ████████████████████████████████████████████████

26   ████████████████████████████████████████████████

27   ████████████████████████████████████████████████

28   ███████████████████████████████████████████████





(Even Defendants' own repeated tout of a tabloid internet report, Boston.com [Blair Decl. Exh. L], from long before this case, states that the Massachusetts Attorney General's office found "no evidence" of self-dealing by Middlesex. *Id.*)



1

2      Defendants make a mountain out of a molehill

12      *Koppel*, 191 F.R.D. at 369 (declining to accept defendants'

13   inadequacy argument where the alleged misconduct, extortion, by the proposed class

14   representative was "too unsubstantiated and attenuated, in time and subject matter, to

15   seriously call into question...[the proposed class representative's]...ability to

16   pursue...[the]...litigation and protect the interests of the proposed class").[24]

17   **C.    Defendants' Other Attacks on Middlesex's Adequacy Are Specious**

18          Defendants' arguments that Middlesex is "in no position to adequately monitor

19   the conduct of this complex litigation" are refuted by the actual history of this litigation

---

[24] Illustrating Defendants' desperate argument that these investigations should prevent Middlesex from representing the Class, numerous courts have even allowed convicted criminals to represent class members, where there is no nexus between the conviction and the class claims. *E.g., McCall v. Drive Fin. Servs., L.P.*, 236 F.R.D. 246, 251 (E.D. Pa. 2006) ("most courts have rejected challenges to class representatives based on allegations of 'unrelated unsavory, unethical, or even illegal conduct.'" [citation omitted]); *Jones v. Ford Motor Credit Co.*, 2005 U.S. Dist. LEXIS 5381 (S.D.N.Y. Mar. 31, 2005). Defendants citation to *Cobb v. Avon Products, Inc.*, 71 F.R.D. 652, 655 (W.D. Pa. 1976), is misplaced. In *Cobb*, the proposed representative brought suit for being terminated from her position and filed a Title VII action for sex and race discrimination. Unlike here, the plaintiff's deception in *Cobb* was substantiated and directly related to her termination and the subject matter of her lawsuit.

1 ████████████████████████

2      Defendants' charge that Middlesex is inadequate ███████████████████

3 ████████████████████████████████████████████████████████

4 ██████████████████████████████████ is inapposite, and inaccurate.[25] The

5 Agreement cited by defendants (Blair Decl., Ex. M at 449), has no such cost-benefit

6 analysis requirement.

7 ████████████████████████████████████████████████████████

8 ████████████████████████████████████████████████████████

9 ████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████████

17 ████████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████████

19 [25] ████████████████████████

20 ████████████████████████████████████████████████████████

21 ████████████████████████████████████████████████████████

22 ████████████████████████████████████████████████████████

23 ████████████████████████████████████████████████████████

24 [26] ████████████████████████████████████████████████████

25 ████████████████████████████████████████████████████████

26 ████████████████████████████████████████████████████████

27 ████████████████████████████████████████████████████████

28 ████████████████████████

Doc. 165035

[REDACTED].[27]

Contrary to Defendants' preposterous suggestion that Middlesex is somehow guilty of "violating its own litigation policy" by "blindly following Wolf Popper's recommendation"), [REDACTED]

[REDACTED]

[REDACTED].[28]

---

[27] This is more than sufficient to establish adequacy. *See In re First Am. Corp. ERISA Litig.*, 2009 U.S. Dist. LEXIS 53427, at *18-19 & n.6 (C.D. Cal. June 10, 2009) (citing cases, including *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373, 86 S. Ct. 845, 15 L. Ed. 2d 807 (1966)); *Holloway v. Full Spectrum Lending*, 2007 U.S. Dist. LEXIS 59934, at *23-24 (C.D. Cal. June 26, 2007) (Carter, J.) (finding adequacy where, despite defendant's challenges, "the record ... shows that Holloway understands the essentials of the case and that she has been actively involved in its prosecution," and engagement letter contained "nothing nefarious"); *Alba v. Papa John's USA*, 2007 U.S. Dist. LEXIS 28079, at *28-29 (C.D. Cal. Feb. 7, 2007) (even where plaintiffs testified they did not know the costs and fees associated with the case, did not know how experienced their attorneys were, or what their role was in making decisions in the lawsuit, court concluded they were adequate representatives); *Tsirekidze v. Syntax-Brillian Corp.*, 2009 U.S. Dist. LEXIS 61145, at *15-17 (D. Ariz. July 17, 2009) (finding adequacy where representative's testimony showed unfamiliarity with numerous aspects of the litigation, concluding that "Although Haddad is less familiar with the facts of this action than he should be, his unfamiliarity is not so striking that lead plaintiff is unqualified to represent the class.").

[28] [REDACTED]

(continued...)

Doc. 165035

1     Defendants' arguments that Plaintiff is inadequate ███████████████

2   ████████████████████████████████████████████████████████████

3   ██████████████████████████████████████████████████████████ are

4   erroneous. ███████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████████

12  █████████████████████████████████ There cannot be any legitimate question

13  that the Board has authorized this action.

14      █████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████

23  ————————————————
    [28] (...continued)

24  ████████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████████

28  ██████████████████████████████████████████

1 ████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████████

5 ████████████████████████████████████████████████████████

6 █████. Without question, Defendants' arguments do not render Middlesex

7 inadequate to serve as class representative.

8 **D.    Monitoring Relationships Do Not Render A Plaintiff Inadequate**

9 Defendants' argument that Middlesex is an inadequate representative █████

10 ██████████████████████████████is distorted and inaccurate. Portfolio

11 monitoring services do not in and of themselves raise any conflict of interest for

12 institutional investors. This is especially so where the institutional investor, like

13 Middlesex, always retained the right to pursue litigation with any counsel it wanted to.

14 Portfolio monitoring agreements have been approved, if not encouraged by, case

15 law, the U.S. Department of Labor, Massachusetts law, ████████████

16 ████████████████████. For example, the Secretary of Labor has strongly

17 indicated that pension funds should have some type of portfolio monitoring system to

18 determine whether it is appropriate to take legal action. *See Bragdon v. Telxon Corp.*,

19 No. 98-CV-2876, Secretary of Labor's Memorandum as Amicus Curiae in Support of

20 FSBA's Motion for Appointment as Lead Plaintiff, at 7 (N.D. Ohio Apr. 23, 1998)

21 (Green Decl. Exh. A at 8) ("in a class action context, a fiduciary must determine

22 whether it would be in the best interest of the plan to serve as the lead plaintiff").[29] As

23 a result, today, most significant pension funds have monitoring counsel. (████

24 ████████████████████████████████████████████████

25 [29] ████████████████████████████████████████████████

26 ████████████████████████████████████████████████

27 ████████████████████████████████████████████████

28 ████████████████████████████████████████████████

Doc. 165035

1  ████████████████████████████████████████ Insofar as the

2  Employee Retirement Income Security Act of 1974 ("ERISA") §404(a)(1)(A) requires

3  that plan fiduciaries act in the plan's interests for purpose of, *inter alia*, "defraying the

4  reasonable expenses of the plan," the impetus for providing monitoring at no cost is

5  generally driven by the client's concerns.[30]

6  ████████████████████████████████████████

7  ████████████████████████████████████████

8  ████████████████████████████████████████

9  ████████████████████████████████████████

10 ████████████████████████████████████████

11 ██████████████████████

12    Case law also supports Plaintiff's position.  For example, in *In re Am. Italian*

13 [30] ████████████████████████████████████████

14 ████████████████████████████████████████

15 ████████████████████████████████████████

16 ████████████████████████████████████████

17 ████████████████████████████████████████

18 ████████████████████████████████████████

19 ████████████████████████████████████████

20 ████████████████████████████████████████

21 [31] ████████████████████████████████████████

22 ████████████████████████████████████████

23 ████████████████████████████████████████

24 ████████████████████████████████████████

25 ████████████████████████████████████████

26 ████████████████████████████████████████

27 ████████████████████████████████████████

28 ████████████████████████████████████████

1  *Pasta Co. Sec. Litig.*, 2007 U.S. Dist. LEXIS 21365 (W.D. Mo. Mar. 26, 2007), the

2  court rejected defendants' contention that lead plaintiff and lead counsel

3  were"inadequate" because of a "prior, long-standing relationship in which Class

4  Counsel monitors Lead Plaintiff's investments and advises it of any litigation that may

5  affect them." *Id.* at *22. In explaining that the "Court does not share Defendants'

6  concerns," the court held (at *22):

7          The existence of a prior relationship between Lead Plaintiff and Class

8          Counsel is not a problem; in fact, given the extensive investments

9          inherent in the operation of a pension fund, the Court is not surprised

10         Lead Plaintiff has arranged for a law firm to keep it apprised of events

11         (including lawsuits) that might be of interest. Arguably, a pension fund's

12         failure to take steps to be aware of existing or prospective litigation that

13         affects its investments would be an abdication of duty.

14         Disregarding all this authority, and even the documents Defendants rely on,

15  Defendants cite but a single case from outside this Circuit, decided on a lead plaintiff

16  motion, which is alone in its rationale, and has never, to Plaintiff's knowledge (and

17  apparently Defendants' as well since they cite none), been cited by any other court.

18  *See Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Svc'g &*

19  *Securitization, LLC,* 616 F. Supp. 2d 461 (S.D.N.Y. 2009). Indeed, even the court in

20  *Iron Workers* recognized that courts – including those in this District – reject the

21  notion that acting as portfolio monitor and litigation counsel in any way adversely

22  affects a plaintiff's (or counsel's) adequacy. *Id.* at 465, *citing Plumbers & Pipefitters*

23  *Local 572 Pension Fund v. Cisco Sys.*, 2004 U.S. Dist. LEXIS 27008, at *12-13 (C.D.

24  Cal. 2004) ("Nothing about these [monitoring agreements] renders Carpenters

25  inadequate as a class representative.")

26         In *Iron Workers*, the court voiced concern over the monitoring agreement

27  because it found that the evidence showed that plaintiff Iron Workers Fund had entered

28  into a contractual arrangement whereby, "if Coughlin Stoia recommended bringing a

1    securities class action and the Fund approved doing so, Coughlin Stoia *would be*

2    *retained*" as litigation counsel.  *Id.* at 464.   As was testified in that case, "the

3    monitoring counsel will also be the counsel who represents [the Fund] if a lawsuit is

4    brought."  *Id.*



16         *Iron Workers* is also distinguishable because it was decided on a *lead plaintiff*

17    motion, wherein the court had to choose between two competing applicants, and decide

18    which was "the *most* adequate."  15 U.S.C. §77z-1(a)(3)(B)(i) and (iii)(I)); *Iron*

19    *Workers*, 616 F. Supp. 2d at 463-64 (emphasis added).  In the context of a lead plaintiff

1   motion, the court in *Iron Workers* was concerned about a theoretical conflict
2   potentially manifesting itself, whereby monitoring counsel might be arguably
3   incentivized to bring a frivolous case the client might not otherwise bring – which is
4   the only articulable, potential conflict that could arise from a situation where the same
5   counsel serves as monitor and litigation counsel.  Here, Defendants never made this
6   argument at the lead plaintiff stage, and, by now, it is more than clear that this action
7   is not frivolous, as Plaintiff has *twice* defeated Defendants' motions to dismiss.[34]

8        The ultimate reason the court in *Iron Workers* appointed MissPERS over the
9   Iron Workers Fund as lead plaintiff was that the court determined that Iron Workers'
10  testifying representative had less experience in securities class actions than MissPERS,
11  leading it to conclude that, "[a]ccordingly, the Court need not determine whether there
12  here exists a conflict of interest." *Id.* at 466.  In contrast, the MissPERS representative
13  demonstrated "sophisticated knowledge" in evaluating potential securities lawsuits.[35]
14  *Id.*  Here, there can be no doubt that Mr. Gibson has demonstrated sophisticated
15  knowledge in evaluating securities lawsuits, that he is extremely knowledgeable about
16  this lawsuit, and has been involved in every significant step along the way.

17       The death knell to Defendants' argument is their failure to inform this Court that
18  the ***very same judge*** who decided *Iron Workers* (Defendants' sole authority), ***certified***
19  ***Middlesex as an adequate class representative*** in *Monster*,  251 F.R.D. 132, also a
20  stock option backdating case, defended by one of the same Defendants' counsel as in
21  this case (Dechert LLP), in which Middlesex obtained for the class an outstanding

---

23  [34]  Defense counsel here knew about Middlesex's portfolio monitoring arrangements
24  with counsel (which were never concealed) from Dechert LLP's role as lead defense
25  counsel in *In re Monster Worldwide, Inc. Sec. Litig.*, 07-Civ. 2237 (JSR), in which
    Middlesex was certified as the class representative.

26  [35]  That Defendants are further wrong is demonstrated by the fact that MissPERS,
27  which was the lead plaintiff appointed by the court in *Iron Workers*, itself has portfolio
28  monitoring agreements, including with Wolf Popper. *Id.* at 466.  Thus, the court was
    obviously not of the belief that such agreements per se create any conflict of interest.

1   $47.5 million recovery. █████████████████████████████

2   ███████████████████████████████████████████████████████

3   ████████████████████████. Tellingly, notwithstanding that Middlesex had the same

4   portfolio monitoring arrangements as when this case was initiated, defendants made

5   no argument challenging adequacy on class certification on the grounds of "conflict"

6   due to its monitoring agreement.. *See Monster*, 251 F.R.D. 132, *passim*. The only

7   reason Defendants raise it is because they have nothing legitimate to argue against

8   class certification here.

9         Defendants strain to manufacture other conflict issues where there are none.

10  Defendants suggest that Wolf Popper's purported "incentive" to recoup its time and

11  effort in monitoring Middlesex's portfolio "may be at odds" with Middlesex's

12  beneficiaries and absent class members (Defts. at 16) – but never explain how, in a

13  case which is now clearly shown as meritorious, these individuals are ill-served.

14  Defendants cannot even pose a hypothetical, theoretical conflict.

15        Next, defendants indicate that Middlesex and Wolf Popper have not agreed on

16  a contingency arrangement in this matter, and therefore Middlesex is unable to

17  compare Wolf Popper with other firms "who may have more cost-effective methods

18  of pursuing the litigation." Defts. at 16. ███████████████████████████

19  ████████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████████

25  ██████████████████████████████████████████████In any event,

26  conducting the litigation on a contingent basis means the action is being prosecuted

27  essentially for free for Middlesex, and any contingent fee would only be awarded from

28  a class recovery that counsel must first obtain for the class, and is scrutinized by the

1  Court, thus defendants cannot articulate how Middlesex could have struck a better

2  bargain for itself or other class members.[36]

3      Defendants' claim that the "evaluation of a monitoring firm's recommendation

4  and oversight of any litigation is not 'entrusted to a group of lawyers'" here, apparently

5  referring to in-house counsel (Defts. at 17), is equally misguided.  Not only is there

6  no such requirement,[37] defendants ignore that Mr. Gibson, who oversaw the process

7  for Middlesex, is a highly-experienced lawyer specializing in public pension law for

8  over thirty-four years, and a past president of the Massachusetts Association of Public

9  Pension Attorneys, who brings a wealth of expertise to bear on Middlesex's

10  discharging of its fiduciary responsibilities.  █████████████

11  ████████████████████████████████████

12  ████████████████████ ███████████████

13  ████████████████████████████████████

14  ██████████████████████████

15      In short, what Defendants are really complaining about is the fact that Plaintiff

16  is fulfilling its duties and responsibilities as a lead plaintiff.  Plaintiff is eminently

17  qualified to be appointed class representatives, just as it was in *Monster*.

18

19

---

20  [36] It reveals the two-faced nature of Defendants' argument that they complain first that

21  Middlesex obtained portfolio monitoring for free, and complain later that Middlesex

22  should have shopped the case around more to get a better price.

23  [37] *Iron Workers* only noted this as one of many factors militating in favor of selecting

24  MissPERS as lead plaintiff, but clearly not as a requirement. *Id.* at 466.  Of course,

25  there is no requirement that there be a "group" of lawyers -- the size of in-house

26  counsel's staff is naturally dependent on the size of the institution, which may keep a

lean staff so as to minimize costs.

27  [38] ████████████████████████████████

28  ██████████████████████████████████

**III.**   **CONCLUSION**

For the foregoing reasons, Plaintiff requests entry of an Order certifying this action as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) and appointing Plaintiff as representative of the Class, Wolf Popper as Class Counsel, and Hulett Harper as Liaison Counsel.

Dated: August 18, 2009

Respectfully submitted,

WOLF POPPER LLP

By _____
Marian P. Rosner
Patricia I. Avery
Chet B. Waldman
Anthony D. Green
845 Third Avenue
New York, New York 10022
Telephone: (212) 759-4600
Facsimile: (212) 486-2093
E-mail:      IRRep@wolfpopper.com

*Lead Counsel*

HULETT HARPER STEWART LLP
BLAKE MUIR HARPER
SARAH P. WEBER
525 B Street, Suite 760
San Diego, CA 92101
Telephone: (619) 338-1133
Facsimile: (619) 338-1139
E-mail: bmh@hulettharper.com

*Liaison Counsel*

**PROOF OF SERVICE**

*Middlesex Retirement Sys. v. Quest Software Inc., Case No.06-06863-DOC(RNBx)*

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to this action. I am employed with Wolf Popper LLP, whose offices are located in the City and State of New York. My business address is: 845 Third Avenue, New York, NY 10022.

That on August 18, 2009, I served the foregoing document(s) entitled: **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** in this action, in particular on the following counsel for Defendant:

| | | |
|---|---|---|
| COOLEY GODWARD KRONISH LLP<br>Koji F. Fukumura<br>4401 Eastgate Mall<br>San Diego, CA 92121-1909 | DECHERT LLP<br>Richard J. Cutler<br>Frederick G. Herold<br>Robert A. Robertson<br>4675 MacArthur Court<br>Suite 1400<br>Newport Beach, CA 92660-8842<br>*-and-*<br>Andrew J. Levander<br>Michael Z. Goldman<br>30 Rockefeller Plaza<br>New York, NY 10112 | SHEPPARD MULLIN, RICHTER & HAMPTON LLP<br>Robert D. Rose<br>Vincent J. Brown<br>501 West Broadway, 19th Floor<br>San Diego, CA 92101-3598 |
| STROOCK AND STROOCK AND LAVAN LLP<br>Zulaikha Aziz<br>Wrenn E. Chais<br>Cary J. Economou<br>2029 Century Park East<br>Los Angeles, CA 90067 | MUNGER TOLLES AND OLSON<br>Shoshana E. Bannett<br>Brad D. Brian<br>Luis Li<br>355 South Grand Avenue<br>Los Angeles, CA 90071 | LATHAM AND WATKINS LLP<br>Terri Lea Lilley<br>355 South Grand Avenue<br>Los Angeles, CA 90071-1560 |

BY ELECTRONIC MEANS: I caused a redacted version of the above-referenced document to be uploaded onto the ECF system for the United States District Court, Central District of California, Southern Division; and caused an unredacted version to be e-mailed to the above counsel; and a copy sent via overnight delivery to Cooley Godward Kronish LLP, the counsel that served Defendants' opposition papers

1   on this motion.

2          I declare under penalty of perjury under the laws of the United States and the

3   State of California that the foregoing is true and correct.  Executed at New York, New

4   York.

5   Dated: August 18, 2009

6

7                                                    Anthony D. Green

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28